IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

In re:

**EMERALD GRANDE, LLC**

      **Debtor,**　　　　　　　　　　　　　　　　　　　　　**Chapter 11**

### EMERGENCY MOTION OF THE DEBTORS TO AUTHORIZE USE OF CASH COLLATERAL AND TO INSTRUCT TENANTS TO PAY RENT TO THE DEBTORS

Emerald Grande, LLC ("Debtor"), by its undersigned proposed counsel, moves this Court for entry of an Order authorizing the use of Cash Collateral (defined below) and instructing Debtor's tenants (the Tenants") to pay rent to the Debtor. In support of this motion, the Debtor states as follows:

1. On January 11, 2017 ("Petition Date"), Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code ("Bankruptcy Code").

2. Debtor continues to manage and operate its business and property as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code. No trustee, examiner, or committee of creditors has been appointed in this case.

3. Debtor is a Georgia limited liability company, whose principal place of business until December 1st, 2016, was at 205 Marion Square, Fairmont, West Virginia, 26554. Presently, the Debtor's principal place of business is in Bonita Springs, Florida.

4. Debtor owns and operates two hotel properties, the La Quinta Inn and Suites adjacent to the Elkview Crossings Shopping Mall, Elkview, West Virginia and the La Quinta Inn

and Suites adjacent to the Merchant's Walk Shopping Mall, Summersville, West Virginia. Debtor also owns a real estate development in Charleston (Kanawha City), West Virginia.

## EVENTS THAT LED TO THE BANKRUPTCY FILING

5.     On October 17, 2014, Debtor obtained a loan from Carter Bank & Trust ("Carter Bank") evidenced by a promissory note payable to the order of Carter Bank in the original principal amount of $10,850,000.00 (the "Note"), which was secured by (i) a deed of trust and assignment of rents on Debtor's La Quinta Inn hotel property in Elkview, West Virginia ("Elkview Hotel"), and (ii) a deed of trust and assignment of rents on Debtor's La Quinta Inn hotel property in Summersville, West Virginia ("Summersville Hotel").

6.     The address for the Summersville Hotel is 106 Merchant's Walk, Summersville, West Virginia 26651.  The address for the Elkview Hotel is 101 Crossing Shopping Mall, Elkview, West Virginia, 25071.

7.     William A. Abruzzino and Rebecca Abruzzino personally guaranteed repayment of the Note.

8.     In addition to the Hotel Loans, Debtor has obtained two loans from First Bank of Charleston: (i) a credit line loan in the original principal amount of $2,400,000 secured by Debtor's commercial development located on MacCorkle Ave and 57th Street, Charleston South Annex, Charleston, West Virginia ("Charleston Property"), and (ii) credit line loan in the amount of $400,000 secured by a second priority loan on the Charleston Property ("First Bank Loans").

9. At the Charleston Property, the Debtor has entered into lease agreements with the following Tenants, all of whom are currently occupying their leased spaces and paying rent and other additional rent under the leases:;

   a. Lease with Loma Brothers, Inc. dated November 3, 2010 relating to La Carretta Mexican Restaurant;

   b. Lease with Zhen Yu Weng dated April 2, 2009 relating to Fujiyama Japanese Steakhouse;

   c. Lease with Wireless Zone, a division of Legacy Holdings Group, LLC dated July 31, 2013 relating to a Verizon cellular store;

(collectively "Leases"). The rent and additional rent and other payments being made pursuant to the Leases are referred to hereafter collectively as "Rents."

10. The Rents are currently being paid to an account at First Bank of Charleston which drafts the account to pay the First Bank Loans consistent with the applicable loan documents and security interests.

11. On June 23, 2016, thunderstorms brought torrential rain to much of West Virginia, resulting in accumulations of up to 10 in (250 mm) in 12-24 hours. According to meteorologists at the National Weather Service, this rainfall qualifies as a 1,000 year event. The tremendous rainfall produced widespread and destructive flash floods in the state. The Elk River rose to an all-time high of 33.37 ft (10.17 m), surpassing the previous record of 32 ft (9.8 m) set in 1888. As a result, unprecedented flooding hit Kanawha County, leaving massive destruction in its wake. The flood waters of Little Sandy Creek, a tributary of the Elk River, washed away the culvert and bridge connecting the Elkview Hotel and the adjacent Elkview Crossings Shopping Mall, to the public road.

12. Since this flood, there has been no suitable public access to Elkview Hotel and the hotel has not operated and is not generating any income.

13. The flood did not affect the operations of the Summersville Hotel and it has continued to operate as normal.

14. Tara Retail Group, LLC ("Tara"), an affiliated company of Debtor, owns the Elkview Crossings Shopping Mall property. After the flood, the tenants at the Crossings Mall ceased making lease payments. As a result, Tara defaulted on its loan agreement with U.S. Bank, as trustee. Tara undertook efforts to re-construct the bridge and culvert to restore access to the Elkview Crossings Shopping Mall and the Elkview Hotel, including negotiations with its lender, U.S. Bank, as trustee. However, U.S. Bank refused to add the missed loan payments to the end of the loan term, instead insisting that Tara must make up the missed loan payments over the ensuing 12 months. As the rents from the Crossings Mall were insufficient to amortize the missed payments over 12 months, Tara's negotiations with U.S. Bank as trustee to rebuild the bridge broke down.

15. Eventually, U.S. Bank, as trustee, filed a lawsuit in the southern district of West Virginia against Tara, alleging default under the loan between Tara and U.S. Bank and seeking the appointment of a receiver to restore access to the shopping center and manage the tenant relationships. See Civil Action No. 16-cv-09232. The Court granted U.S. Bank's request and appointed a receiver by order entered on December 23, 2016. The receiver has obtained construction bids and is working to re-store access to the Crossings Mall, which will include the Elkview Hotel.

16. Because the Elkview Hotel has not generated income since the flood, Debtor has been unable to meet its monthly payment obligations with respect to the Note.

17. Debtor also owed the 2015 real estate taxes on the Elkview Hotel and the Summersville Hotel. The tax lien on the Elkview Hotel was sold in November of 2016. The tax lien on the Summersville Hotel was sold on November of 2016. Debtor has not yet redeemed these taxes.

18. Carter Bank declared Debtor in default on the Note, accelerated the balance owed, and demanded immediate payment in full from Debtor.

19. Based on this alleged default, Carter Bank initiated foreclosure on the Summersville Hotel pursuant to the terms of the deed of trust. The foreclosure was scheduled for Wednesday, January 11, 2017, at 10:00 a.m., at the front door of the Nicholas County Courthouse in Summersville, West Virginia. To Debtor's knowledge, foreclosure has not been noticed for the Elkview Hotel.

20. Also based on this alleged default, Carter Bank thereafter filed a civil action against the Guarantors in the Circuit Court of Martinsville, Virginia.

21. Because of the impending foreclosure on the Summersville Hotel, Debtor was forced to file for protection under Chapter 11 of the Bankruptcy Code.

22. Debtor' financial distress is a direct consequence of the complications from the June, 2016 flooding. The lack of income from the Elkview Hotel placed significant stress on Debtor's overall financial performance. Restoration of access to the Elkview Hotel is still

5

several months away. Nevertheless, much, if not all, of Debtor's financial problems will be resolved once access is restored and the Elkview Hotel can resume normal operations.

23. Debtor is current on its payment obligations on the First Bank of Charleston loan; however, Debtor owes unpaid taxes on the Charleston Property, which need to be redeemed.

## JURISDICTON AND LEGAL AUTHORITY

24. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

25. The statutory predicate for the relief sought are §§ 361 and 363 of the Bankruptcy Code.

## RELIEF REQUESTED AND GROUNDS FOR RELIEF

**Continued Use Cash Collateral**

26. Pursuant to § 363 of the Bankruptcy Code, the Debtor seeks to use Cash Collateral (as defined by the Bankruptcy Code) in the ordinary course of its business.

27. Under 11 U.S.C. § 363(c)(2), Debtor "may not use, sell, or lease cash collateral ... unless (A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section." Pursuant to section 363(e), "at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest."

28. In addition to the other items of Cash Collateral under section 363, the Cash Collateral specific to the Debtor consists of the following: (i) the daily room rentals and other revenues received from the Summersville Hotel ("Hotel Revenue")[1]; (ii) Leases and Rents assigned to First Bank of Charleston under the deeds of trust and assignments of rent applicable to the First Bank Loans.

**Hotel Revenue**

29. The Hotel Revenue is deposited into Debtor's bank account with United Bank. Notwithstanding any security interest in the Hotel Revenue Carter Bank may have, the Hotel Revenue is still property of the Debtor's estate and constitutes cash collateral. *See In re Ocean Place Dev., LLC*., 447 B.R. 726, 738 (Bankr. D.N.J. 2011) ("Accordingly, the hotel revenues are available for use as cash collateral in the Debtor's reorganization efforts so long as Carter Bank & Trust remains adequately protected."); *see also In re HT Pueblo Properties, LLC*, 462 B.R. 812, 820 (Bankr.D.Col.2011); *In re Oceanview/Virginia Beach Real Estate Associates*, 116 B.R. 57, 59 (Bankr.E.D.Va.1990); *In re Hari Ram, Inc.*, 507 B.R. 114, 122 (Bankr. M.D. Pa. 2014).

30. As to the issue of adequate protection, Carter Bank is adequately protected by the equity cushion relative to the Note. As this Court has held, an equity cushion can provide sufficient adequate protection. *See In re Eskim, LLC*, No. 08-509, 2008 WL 4093574, at *5 (Bankr. N.D.W. Va. Aug. 28, 2008) (in context of motion to lift stay).

31. To the extent that the value of Carter Bank's collateral should decrease, Carter Bank can be provided with adequate protection through the grant of superpriority administrative claim, which will have priority of the kind specified in § 507(b) of the Bankruptcy Code over any and all administrative expenses specified in § 507(a)(1).

---

[1] There are no current receipts from the operation of the Elkview Hotel.

32. Moreover, it is important to understand that Debtor's default and financial distress was caused by the flood; once the bridge reconstruction is completed and the Elkview Hotel can re-open, Debtor's financial position will improve greatly, enabling it to propose a plan of reorganization.

**Leases and Rents**

33. The Rents under the Leases are paid by the Tenants directly into an account at First Bank of Charleston. Even if First Bank of Charleston is under-secured in connection with the First Bank Loans, which Debtor does not believe to be the case, First Bank of Charleston is adequately protected in that the value of the property subject to the bank's security interest is stable and not diminishing.

34. This Court has held that such rents remain cash collateral in a debtor's subsequent chapter 11 case. *In re Hrapchak,* 2008 WL 1780939 *6 (N.D. W.Va. 2008) ("the rights to collect rents is given as security and the rents themselves constitute property of the bankruptcy estate pursuant to 11 U.S.C. 541(a) of the Bankruptcy Code.").

35. As to the issue of adequate protection, with respect to the Charleston Property, First Bank of Charleston is adequately protected by the equity cushion relative to the Charleston Property. As this Court has held, an equity cushion can provide sufficient adequate protection. *See In re Eskim, LLC*, No. 08-509, 2008 WL 4093574, at *5 (Bankr. N.D.W. Va. Aug. 28, 2008) (in context of motion to lift stay).

36. To the extent that the value of First Bank of Charleston's collateral should decrease, First Bank of Charleston can be provided with adequate protection through the grant of

superpriority administrative claim, which will have priority of the kind specified in § 507(b) of the Bankruptcy Code over any and all administrative expenses specified in § 507(a)(1).

## RELEASE OF LEASES AND RENTS

37. By this Motion, the Debtor also seeks to have the notices sent by First Bank of Charleston to the Tenants to pay their respective rents directly to First Bank of Charleston revoked and released, and for the Tenants be directed to pay all outstanding and future rents to the Debtor, without any liability to First Bank of Charleston.

38. Additionally, the Debtor seeks to have all rents that may be paid to First Bank of Charleston after the Petition Date immediately paid and turned over to the Debtor.

39. The Rents paid by the Tenants are required by the Debtor to fund its operations in the ordinary course, and the loss of such funds would be fatal to the Debtors and any prospects for successful reorganization.

## REQUEST FOR INTERIM RELIEF

40. Rule 4001(b)(2) of the Federal Rules of Bankruptcy Procedure provides, in part, that "[t]he court may commence a final hearing on a motion for authorization to use cash collateral no earlier than 14 days after service of the motion." However, the court may conduct a preliminary hearing "before such 14 day period, but the court may authorize the use of only that amount of cash collateral that is necessary to avoid immediate and irreparable harm to the estate pending a final hearing." Fed.R.Bankr.P. 4001(b)(2). Attached hereto as Exhibit A is a budget prepared by the Debtor, forecasting its sources and uses of cash in the next thirty (30) days.

41.     The Debtors' inability to use Cash Collateral would cause immediate and irreparable harm to the estate. If the Debtors cannot pay their employees and vendors, the Debtors will simply have no business to reorganize. As such, the Debtors request that, pending final hearing on this Motion, they be permitted to use Cash Collateral to pay their ordinary course post-petition claims and obligations.

42.     Nothing contained in this motion is an admission of the validity of any claim against the Debtor, a waiver of the Debtor's or any other party's rights to dispute any claim, or an approval or assumption of any agreement, contract, or lease under section 365 of the Bankruptcy Code. If this Court grants the relief requested in this motion, any Court-authorized payment is not an admission of the validity of any claim or a waiver of the Debtor's or any other party's rights to subsequently dispute such claim. In addition, authorization to pay the claims described in this motion shall not be deemed a direction to the Debtor to pay such claims and such payments shall be made in the Debtor's sole discretion.

## RESERVATION OF RIGHTS

43.     Nothing contained in this motion is an admission of the validity of any claim against Debtor, a waiver of the Debtor's or any other party's rights to dispute any claim, or an approval or assumption of any agreement, contract, or lease under section 365 of the Bankruptcy Code. If this Court grants the relief requested in this motion, any Court-authorized payment is not an admission of the validity of any claim or a waiver of the Debtor's or any other party's rights to subsequently dispute such claim. In addition, authorization to pay the claims described in this motion shall not be deemed a direction to the Debtors to pay such claims and such payments shall be made in the Debtor's sole discretion.

## **NOTICE**

44. Copies of this Motion were served by e-mail, facsimile or overnight mail on the following parties: (1) the Office of the United States Trustee for the District of West Virginia; (2) Jonathan L. Hauser, Esq.; (3) Carter Bank & Trust; (4) First Bank of Charleston; (5) Marc R. Weintraub, Esq. and by regular mail to Debtor's remaining creditors. In light of the fact that no trustee, examiner or committee of creditors has been appointed in this case, Debtor submits that no further notice be given.

**WHEREFORE**, the Debtor respectfully requests entry of an Order, substantially in the form attached hereto: (i) granting authorization to use the Cash Collateral; (ii) releasing the Leases and Rent from payment directly to the lender; (iii) directing the such leases and rents be paid to the Debtor; and (iv) directing that any leases and rents paid to First Bank of Charleston post-petition be immediately paid and turned over to the Debtor; and granting the Debtors such other relief as is just and proper.

Respectfully submitted,

**EMERALD GRANDE, LLC**

/s/ Steven L. Thomas
Steven L. Thomas (WVSB # 3738)
Thomas H. Ewing (WVSB # 9655)
Kay Casto & Chaney PLLC
P.O. Box 2031
Charleston, West Virginia 25327
Tel: (304) 345-8900
Fax: (304) 345-8909
sthomas@kaycasto.com;
tewing@kaycasto.com
  *Proposed Counsel to Emerald Grande, LLC*