Order Entered.

*Patrick M. Flatley*
Patrick M. Flatley
United States Bankruptcy Judge

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| In re: ) | |
| ) | |
| EMERALD GRANDE, LLC, ) | Case No. 17-bk-21 |
| ) | |
| Debtor. ) | Chapter 11 |
| ) | |
| ) | |

## MEMORANDUM OPINION

The Debtor objects to the amended proof of claim for $2,089,773.28 filed by Premier Bank.[1] Specifically, the Debtor seeks the disallowance of a portion of Premier's claim for post-petition attorney fees. Premier contends that the court should overrule the Debtor's objection because its fees were reasonable and necessary to protect its interests in the case. In fact, Premier contends that its participation in this case benefited the whole of the Debtor's bankruptcy estate.

For the reasons stated herein, the court will enter a separate order sustaining the Debtor's objection, in part; disallowing $111,467.11 from Premier's proof of claim for fees and expenses associated with challenging the administrative expense claim made in this case by Tara Retail Group, LLC, and seeking the dismissal or conversion of the Debtor's case; and setting a telephonic hearing to complete the record regarding the explicit amount of fees and expenses to be disallowed from Premier's proof of claim for monitoring the Tara Retail bankruptcy case and performing certain clerical work.

### I.  BACKGROUND

The Debtor owns and leases commercial real estate generally identified as the Kanawha City Property, and it owns and operates two hotels, both of which heretofore operated as La Quinta franchisees. Premier's claim arises from certain financing obtained by the Debtor in connection

---

[1] To be clear, First Bank of Charleston filed the proof of claim at issue here, but it merged into Premier Bank during the pendency of this dispute such that Premier is the party at this stage of the case.

1

with its operation of the Kanawha City Property.  In support of its claim against the Debtor, Premier attached to its proof of claim several agreements between it and the Debtor, including construction loan agreements, promissory notes, and security instruments related thereto.  Specifically, the bulk of Premier's claim is comprised of two loans: a 2009 construction loan (Loan No. 330005) for $2,400,000, and a 2014 construction loan (Loan No. 351018) for $400,000.  The Kanawha City Property and the revenue therefrom serve as collateral securing Premier's claim against the Debtor.

On January 11, 2017, the Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code, and Premier filed its proof of claim on May 18, 2017.  On March 12, 2018, Premier amended its proof of claim to include, among other things, the attorney fees at issue in the Debtor's claim objection.  Specifically, Premier attached to its amended proof of claim a summary illustrating that of the $2,089,773.28 claim, $1,580,306.80 is attributable Loan Number 330005, $354,505.27 is attributable to Loan Number 351018, and $154,961.21 is attributable to accrued attorney fees and expenses.  The court conducted an evidentiary hearing in July 2018, and the parties simultaneously submitted post-trial briefs thereafter.  Since then, the United States Court of Appeals for the Fourth Circuit issued its opinion in *SummitBridge Nat'l Invs. III, LLC v. Faison (In re Faison)*, 915 F.3d 288, which significantly narrows the extant dispute.  *See infra.* n.2.

## II. ANALYSIS

The Debtor contends that the court should disallow a portion of Premier's proof of claim because it includes attorney fees that Premier cannot collect based upon the relevant terms of the respective loan agreements and security interests.[2]  Specifically, the Debtor challenges Premier's attorney fees related to challenging the administrative expense claim made in this case by Tara Retail Group, LLC; monitoring the Tara Retail bankruptcy case; seeking the dismissal or

---

[2] To be clear, the Debtor seeks relief under both §§ 502(b) and 506(b) of the Bankruptcy Code, and the parties devoted a fair amount of their briefing to the Debtor's argument under § 506(b)— that Premier cannot collect certain of the fees as an over-secured creditor due to the unreasonableness of the fees.  Notably, however, the Fourth Circuit recently made clear that only § 502(b) permits the disallowance of proofs of claim while § 506(b) simply involves the calculation of a creditors allowed secured claim based upon the value of its collateral.  *SummitBridge Nat'l Invs. III, LLC v. Faison (In re Faison)*, 915 F.3d 288, 294-95 (4th Cir. 2019).  The court therefore finds that only the Debtor's contest under § 502(b) is ripe because the Debtor has long conceded the over-secured nature of Premier's claim.

conversion of the Debtor's case; and performing certain clerical work.[3] Notably, the Debtor does not challenge attorney fees related to Premier negotiating the Debtor's use of its cash collateral, fees regarding insurance protecting the property, monitoring this case, filing its proof of claim, and generally fees incurred regarding the disclosure statement and plan process here.

In support of its objection, the Debtor contends that the relevant loan documents permit Premier to collect only those fees it incurred in connection with the enforcement of the loan documents or collection thereunder in the event of the Debtor's nonpayment.  In that regard, the Debtor directs the court to provisions allowing the collection of attorney fees in nine documents evidencing Premier's claim.  Premier generally contends that its attorney fees are collectible because it incurred the fees to protect its interests, enforce its rights under the loan documents, and collect the amounts due and owing to it.  In support thereof, Premier offers the testimony of its officer, Anthony Marks, whose testimony it asserts evidences its entitlement to fees.  Specifically, Premier listed in its post-trial brief ten excerpts from Mr. Marks's testimony that it asserts support its amended proof of claim for attorney fees.  Those excerpts include statements regarding certain purported defaults prepetition and others that arose postpetition, the Debtor's purported failure to adequately provide for Premier's claim in its proposed Chapter 11 plans, issues regarding the maintenance of insurance and payment of taxes for the Kanawha City Property, the need for expert assistance in monitoring this case and that of Tara Retail, and issues regarding the Debtor's use of its cash collateral.

"A claim or interest, proof of which is filed under [§] 501 . . . is deemed allowed[] unless a party in interest . . . objects."  11 U.S.C. § 502(a).  Notably, a proof of claim is allowed unless it falls within one of the nine enumerated exceptions under §502(b).  *See SummitBridge*, 915 F.3d at 294 ("[§] 506(b) has nothing to do with the allowance or disallowance of claims.").  When such an objection is lodged, "the court . . . shall allow such claim . . . except to the extent that—(1) such

---

[3] Regarding the hours billed by Premier's counsel contesting the administrative expense claim of Tara and seeking the conversion or dismissal of this case, there is a *de minimis* difference in the aggregate sum in those regards.  Specifically, the Debtor asserts that Premier incurred 123.9 total hours of billable time, and Premier contends that it incurred 121.7 hours.  Despite the minimal difference in time spent, the Debtor asserts that the court should disallow $126,696.75 of fees for those services while Premier asserts that its counsel incurred fees and expenses totaling $111,467.11.  Based upon the record before the court, the court will use Premier's calculation of fees and expenses in determining an amount to disallow in those regards.

claim is unenforceable against the debtor and property of the debtor, under any agreement . . . for a reason other than because such claim is contingent or unmatured." 11 U.S.C. § 502(b).

Here, the Debtor contends that certain of Premier's attorney fees are disallowable under §502(b)(1) because they are not enforceable against the Debtor as a matter of contract. Based upon the Debtor's allegations, the court must examine the relevant documents creating the Debtor's relationship with Premier. In that regard, there are four different provisions among the nine documents providing for Premier's collection of attorney fees. Based upon the court's review, the two Construction Loan Agreements and two Commercial Security Agreements have identical provisions in that regard, while the two Promissory Notes have slightly different language, and the Credit Line Deed of Trust and Deed of Trust each have their own, distinct provisions in that regard.

Considered as a whole, the court finds that the provisions allow Premier to collect attorney fees it incurs in connection with the enforcement of the agreements or the collection of the Notes if the Debtor does not pay. Specifically, the construction loan agreements and commercial security agreements include provisions for Premier's legal expenses "incurred in connection with the enforcement of this Agreement," and such costs and expenses include those incurred "for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction) . . . ." The promissory notes permit Premier to "hire or pay someone else to help collect [the notes] if [the Debtor] does not pay," and the Debtor therein agrees to pay fees in that regard, "including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction) . . . ." The credit line deeds of trust are the broadest among the loan documents regarding Premier collecting its attorney fees and expenses. For example, the 2009 credit line deed of trust provides Premier with the ability to collect "costs and expenses of preserving and protecting [its collateral]" and "costs and expenses paid or incurred to . . . enforce [its] security interests and liens . . . or to defend any claims made or threatened against [it] arising out of the transactions contemplated hereby . . . ." Similarly, the 2014 credit line deed of trust entitles Premier to recover "all reasonable expenses [it] incurs that in [its] opinion are necessary at any time for the protection of its interest or the enforcement of its rights . . . ." Again, such expenses include "fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction) . . . ." Notably, the common example of enforcement used in certain of the instruments is a motion to modify the automatic stay.

Having considered the parties' respective arguments in light of the foregoing, the court finds it appropriate to sustain the Debtor's objection, at least in part.[4]  Specifically, the court finds that Premier's attorney fees associated with its opposition of Tara's administrative expense, monitoring the Tara bankruptcy case, seeking the conversion or dismissal of the Debtor's case, and for other clerical work incidental to its participation in this case were not "incurred in connection with the enforcement of" the relevant loan documents or "to help collect [Premier's claim against the Debtor] . . . ."  In that regard, the court is satisfied from the record before it that Premier is oversecured by the value of its collateral and is receiving monthly debt service from the Debtor.

Even if Premier is an interested party with standing to contest Tara Retail's administrative expense and seek the conversion or dismissal of the Debtor's case, its participation in those regards must be in furtherance of enforcing *its* loan documents or collecting *its* claim against the Debtor for the attorney fees to be collectable against the Debtor.  Here, even considering the nonmonetary "defaults" alleged by Premier, the record does not support its opposition to Tara Retail's request for authorization of an administrative expense, or its desire to convert or dismiss the case, as constituting the enforcement of its loan documents or collection of its claim.

Regarding the Tara Retail's application for administrative expense, the court agrees with the Debtor that Premier is unaffected by the prospective administrative expense.  Although Premier noted concerns regarding an alleged "generalized insecurity" concerning the Debtor, it is receiving contractual monthly debt service.  Moreover, its concerns regarding the Debtor's alleged lack of a capital reserve or its preservation of tenant relationships are too speculative to support its fees incurred in opposition to the Tara Retail administrative expense as being chargeable against the Debtor.  There is no evidence before the court that the Debtor's maintenance of Premier's debt, which is serviced based solely upon rents from the Kanawha City Property, is in jeopardy.  The court is not unsympathetic with Premier and is not suggesting, perhaps as the Debtor suggests, that Premier cannot participate in critical aspects of the Debtor's Chapter 11 case.  But whether it can

---

[4] Premier specifically points the court to Mr. Marks's conclusions that Premier's legal fees and expenses were "in the bank's view, necessary for the enforcement of [its] rights under the loan documents," "intended to enforce the loan documents," and "intended to collect on the [Debtor's] obligations to the bank."  Although Mr. Marks's testified on topics relevant to the court's consideration, his opinions and statements are not entitled to deference regarding the legal conclusions to be drawn from terms of the loan documents; that is the province of the court.

participate is a question vastly different from whether it can collect its attorney fees associated with such participation based upon the relevant loan documents.

Similarly, the court finds that Premier's prosecution of its motion to dismiss or convert was not based upon its enforcement of its loan documents or collection of its claim. Most, if not all, of the evidence presented in support of conversion or dismissal involved the Debtor's operation of the hotels that serve as Carter Bank's collateral. Despite that, Premier was the movant that presented the evidence and elicited the testimony at the dismissal hearing. In fact, lead counsel for Carter Bank did not attend the evidentiary hearing on the motions, although it was present through local counsel. Moreover, aside from Premier attempting to foreclose based upon one of the nonmonetary defaults identified by Mr. Marks, its position vis-à-vis the Debtor would be unchanged by the dismissal of the case and, in fact, would likely deteriorate by the conversion of the case to Chapter 7 if the trustee shuttered the Kanawha City Property. The court therefore cannot see how seeking dismissal or conversion of the case, particularly given the evidence it heard, was in furtherance of Premier enforcing its loan documents or collecting its claim against the Debtor.

Finally, the court finds that its analysis in the preceding two paragraphs likewise supports its disallowance of Premier's attorney fees for what is characterized as clerical work. At bottom, simply participating as a creditor in a bankruptcy case does not translate, at least in the court's view, to enforcing loan documents or collecting against the Debtor. Rather, the nature and substance of its participation is the crucial focus. Here, that focus does not center on the enforcement of the loan documents or collection, and the court will disallow Premier's proof of claim for attorney fees related to contesting the Tara Retail administrative expense claim, monitoring the Tara Retail case, seeking conversion of dismissal of this case, and clerical work.

To be clear once again, the court is not suggesting that such advocacy by Premier is without merit, rather only that fees incurred in support thereof are chargeable to its own tab and not that of the Debtor. Notably, however, the court's disposition here is based solely upon the Debtor's objection vis-à-vis the loan agreements. In that regard, fees incurred for generally "policing" a case do not, in the court's view, fall within the purview of enforcing loan documents. By its decision, the court makes no determination regarding the appropriateness of the fees incurred or the payment of those fees by Premier based upon its retainer agreement with counsel.

### III. CONCLUSION

Based upon the foregoing, the court will enter a separate order sustaining, in part, the Debtor's objection to Premier's amended proof of claim.  Specifically, the court will disallow legal fees and expenses incurred by Premier in conjunction with it challenging the administrative expense claim made in this case by Tara Retail Group, LLC, monitoring the Tara Retail bankruptcy case, seeking the dismissal or conversion of the Debtor's case, and performing certain clerical work.  Notably, however, the record is incomplete regarding the amount of fees and expenses incurred regarding Premier's monitoring of the Tara Retain bankruptcy case and the clerical services performed by Premier's counsel.  For example, Premier combines the monitoring of this case and of Tara in one category for "Bankruptcy Monitoring," and does not include a "Clerical" category.  The court will therefore schedule a telephonic hearing to attempt to complete the record as necessary to disallow a discrete portion of Premier's proof of claim.