# EXHIBIT A

## Sale Order

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

In re:

EMERALD GRANDE, LLC

Debtor.

Case No. 1:17-bk-00021

Chapter 11

ORDER (A) AUTHORIZING THE SALE OF THE PROPERTY
FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND OTHER
INTERESTS, (B) AUTHORIZING AND APPROVING THE DEBTOR'S
PERFORMANCE UNDER THE TEN-X MARKETING AGREEMENT AND
PURCHASE AND SALE AGREEMENT, (C) APPROVING THE ASSUMPTION AND
ASSIGNMENT OF CERTAIN OF THE DEBTOR'S EXECUTORY CONTRACTS AND
UNEXPIRED LEASES RELATED THERETO AND REJECTION OF OTHERS, (D)
APPROVING THE CARTER BANK SETTLEMENT AND TARA SETTLEMENT,
(E) APPROVING THE EXPENSE REIMBURSEMENT
AND (E) GRANTING RELATED RELIEF

Upon the *Debtor's Motion Pursuant To Sections 105(A), 363 And 365 Of The Bankruptcy Code For Entry Of An Order (A) Authorizing The Sale Of The Property Free And Clear Of Liens, Claims, Encumbrances, And Other Interests, (B) Authorizing And Approving The Debtor's Performance Under The Ten-X Marketing Agreement And Purchase And Sale Agreement, (C) Approving The Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases, And Rejection Of Others, (D) Approving The Carter Bank Settlement And Tara Settlement, (E) Approving The Expense Reimbursement And (F) Granting Related Relief Property* [Doc. No. 881] (the "**Sale Motion**") filed by Emerald Grande, LLC (the "**Debtor**"), seeking, among other things, entry of an order (this "**Order**"), pursuant to sections 105(a), 363 and 365 of title 11 of the

United States Code (the "**Bankruptcy Code**"), Rules 2002, 6004, 6006, 9007, 9014, and 9019 of

the Federal Rules of Bankruptcy Procedure (as amended from time to time, the "**Bankruptcy**

**Rules**"), and Rule 9013-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court

for the Northern District of West Virginia (the "**Local Rules**") authorizing and approving the sale

of the Property in connection with the Elkview Hotel free and clear of all liens, claims, and

interests, to the maximum extent permitted by applicable law and pursuant to the PSA, the

assumption and assignment of certain executory contracts and unexpired leases of the Debtors,

and a settlement of certain claims in connection therewith.

The Court has considered (i) the Sale Motion and the exhibits thereto, (ii) the Ten-X

Marketing Agreement and PSA, whereby the Debtor has agreed, among other things, to sell the

Property at auction to the Purchaser, including the Assumed Operating Agreements that will be

assumed and assigned to the Purchaser on the terms and conditions set forth in the PSA

(collectively, the "**Sale Transaction**"); (iii) the evidence presented by the Debtor and admitted by

this Court in support of the relief sought in the Sale Motion, including without limitation, the

proffered testimony of Eric Belfrage; and (v) the arguments and representations of counsel made,

and any other evidence proffered and adduced, at the Sale Hearing.  All interested parties were

afforded an opportunity to appear and be heard with respect to the Sale Motion.  All responses and

objections to the Sale Motion have been duly noted in the record, including the objection of Comm

2013 CCRE12 Crossings Mall Road, LLC ("**Comm 2013**") (the "**Comm 2013 Objection**")

pursuant to which Comm 2013 asserted interests and liens in the Property subject to the Easements,

as defined more specifically in the Comm 2013 Objection (Comm 2013's interest with respect to

the Property shall be referred to herein as the "**Easement Interests**") and that the proposed sale

should remain subject to those Easement Interests.  Due and proper notice of the Sale Motion, the

Ten-X Marketing Agreement, the PSA, and the form of this Order has been provided. All
Objections have been withdrawn, were resolved, or are overruled on the merits, as provided in this
Order.

Upon consideration of the foregoing, along with the record of the Sale Hearing and the
record in these chapter 11 cases, the Court determines that the relief requested in the Sale Motion
and granted herein is in the best interests of the Debtor, the Debtor's estate, creditors, stakeholders,
and all other parties in interest in these chapter 11 cases. Accordingly,

**THE COURT HEREBY FINDS AND DETERMINES THAT**:

**I.      Jurisdiction, Final Order and Statutory Predicates**

A.      The Court has jurisdiction to hear and determine the Motion pursuant to 28 U.S.C.
§§ 157(b)(1) and 1334(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N)
and (O). Venue is proper in this District and in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.      This Order constitutes a final and appealable order within the meaning of 28 U.S.C.
§ 158(a). Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary
under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made
applicable by Bankruptcy Rule 7054, the Court expressly finds that there is no just reason for delay
in the implementation of this Order, and expressly directs entry of judgment as set forth herein.

C.      The statutory predicates for the relief requested in the Motion are sections 105(a),
363(b), (f), and (m), and 365 of the Bankruptcy Code, Bankruptcy Rules 2002(a)(2), 6004(a), (b),
(c), (e), (f) and (h), 6006(a), (c) and (d), 9007, 9014, and 9019, and Local Rules 6004-1 and 9013-1.

D.      The findings of fact and conclusions of law set forth herein constitute the Court's
findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this
proceeding pursuant to Bankruptcy Rule 9014.

E.      To the extent any of the following findings of fact constitute conclusions of law,

they are hereby adopted as such. To the extent any of the following conclusions of law constitute

findings of fact, they are hereby adopted as such. Any findings of fact or conclusions of law stated

by the Court on the record at the Sale Hearing are hereby incorporated, to the extent they are not

inconsistent herewith.

F.      The Purchaser will be acting in good faith pursuant to section 363(m) of the

Bankruptcy Code in Closing the Sale Transaction.

## II.    Notice of the Sale Transaction, the Cure Amounts, and Sale Motion

G.      Actual written notice of the Sale Motion, the Sale Transaction, the Carter Bank

Settlement, the Tara Settlement, the assumption and assignment of the Executory Contracts and

Unexpired Leases (including the Operating Agreements) to be assumed by the Debtor and assigned

to the Purchaser pursuant to PSA (which are identified on Exhibit 1 of this Order and which may

be hereafter revised under the terms of the PSA, and rejection of the Franchise Agreements, to the

extent necessary, has provided a reasonable opportunity to object or be heard with respect to the

Sale Motion and the relief requested therein to all known interested persons and entities, including,

but not limited to the following parties: (1) the Office of the United States Trustee; (2) the Office

of the United States Attorney for the Northern District of West Virginia; (3) counsel to Carter

Bank; (4) the Internal Revenue Service; (5) all persons known by the Debtor to have expressed an

interest to the Debtor in a transaction with respect to the Debtor's Hotels during the previous eight

months; (6) all entities known by the Debtor that may have a lien, claim, encumbrance, or other

interest in the Debtor's assets (for which identifying information and addresses are available to the

Debtor); (7) all non-Debtor parties to the Operating Agreements and all non-Debtor parties to the

Executory Contracts and Unexpired Leases that the Debtor assumed and assigned to the Purchaser

4

pursuant to the PSA (collectively, the "**Contract Counterparties**"); (8) all of the Debtor's known creditors, including La Quinta and its counsel, (9) all parties that have requested notice in these cases under Bankruptcy Rule 2002.

H.    The Debtor has served Notice upon the Purchaser and the Contract Counterparties notifying them: (1) that the Debtor seeks to assume and assign such Executory Contracts or Unexpired Leases (including the Operating Agreements) on the Closing Date; and (ii) of the relevant Cure Amounts, if any, required to be paid in connection with the assumption and assignment of the Executory Contracts and Unexpired Leases (including the Operating Agreements) (the "**Assumption Notice**"). Pursuant to Bankruptcy Rule 6006(c), the Court finds that the service of such Assumption Notice was good, sufficient and appropriate under the circumstances and no further notice need be given in respect of establishing the Cure Amounts, if any, for the Executory Contracts and Unexpired Leases (including the Operating Agreements). The Purchaser and the Contract Counterparties have had an opportunity to object to the Cure Amounts set forth in the Assumption Notice.

I.    All interested parties have received timely, adequate and proper notice of the Sale Transaction, and the Sale Hearing.

J.    The Assumption Notice has provided Purchaser and the Contract Counterparties with proper notice of the potential assumption and assignment of the Executory Contracts and Unexpired Leases (including the Operating Agreements) and any Cure Amount relating thereto, and the procedures set forth therein with regard to any such Cure Amount to satisfy the provisions of section 365 of the Bankruptcy Code and Bankruptcy Rule 6006.

K.    Proper, timely, adequate, and sufficient notice of the Sale Motion, the Sale Hearing, the Sale Transaction, the Carter Bank Settlement, and the Tara Settlement has been provided in

5

accordance with sections 102(1), 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, 9014 and 9019. The notices described in this Section II were good, sufficient and appropriate under the circumstances, and no other or further notice of the Motion, the Sale Hearing, the Sale Transaction, or the assumption, assignment and sale of the Executory Contracts and Unexpired Leases (including the Operating Agreements) is required.

L.    The disclosures made by the Debtor concerning the Sale Motion, the PSA, the Sale Transaction, the Carter Bank Settlement, the Tara Settlement, and the Sale Hearing were good, complete and adequate. Due, timely, and sufficient notice of the Carter Bank Settlement and the Tara Settlement was provided by the Debtor, and no separate notice of the Tara Settlement is required to be given in the case styled *In re Tara Retail Group, LLC* chapter 11 case (Case No. 17-00057) (the "**Tara Case**"), pursuant to Bankruptcy Rule 2002 (a)(3).

III.    **Good Faith of Purchaser**

M.    The Purchaser at auction is not an "insider" of the Debtor, as that term is defined in section 101(31) of the Bankruptcy Code.

N.    The Purchaser at auction is purchasing the Property in good faith and is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code, and is therefore entitled to the full protection of that provision, and otherwise has proceeded in good faith in all respects in connection with this proceeding in that, *inter alia*: (a) the Purchaser recognized that the Debtor was free to deal with any other party interested in acquiring the Property; (b) all payments to be made by the Purchaser and other agreements or arrangements entered into by the Purchaser in connection with the Sale Transaction have been disclosed; (d) the Purchaser has not violated section 363(n) of the Bankruptcy Code by any action or inaction; (e) no common identity of directors or controlling stockholders exists between the Purchaser and the Debtor; (f) the Purchaser

6

in no way caused the Chapter 11 Cases; and (g) the execution of the PSA and any other agreements
or instruments related thereto was at arms' length and in good faith.

## IV.    Highest and Best Offer

O.    Prior to electing to sell the Property at auction, the Debtor solicited offers to acquire
the Property from a wide variety of parties. The Debtor has determined that the sale of the Property
at auction and the PSA is, in its reasonable discretion, the best way to sell the Property with the
highest likelihood of closing. The marketing process conducted by CBRE afforded a full, fair and
reasonable opportunity for any person or entity to make a higher or otherwise better offer to
purchase the Property prior to auction. Such process was duly noticed and conducted in a non-
collusive, fair and good faith manner and a reasonable opportunity has been given to any interested
party to make a higher and better offer for the Property.

P.    The consideration provided by the Purchaser at auction under the PSA, including
the assumption of the Assumed Liabilities constitutes the highest and best offer for the Property,
and will provide a greater and/or more certain recovery for the Debtor's estate than would be
provided by any other available alternative. The Debtor's determination that the sale at auction
pursuant to the PSA constitutes the best method of selling the Property constitutes a valid and
sound exercise of the Debtor's business judgment consistent with its fiduciary duties.

Q.    No other person or entity or group of entities has offered to purchase the Property
for greater and/or more certain economic value to the Debtor's estate than the Purchaser at auction.

R.    Approval of the Sale Motion, the sale at auction pursuant to the PSA and the
consummation of the transactions contemplated therein, are in the best interest of the Debtor, its
creditors, its estate and other parties in interest.

S.      The Debtor has demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the Sale Transaction prior to and outside of a plan of reorganization.

**V.      No Fraudulent Transfer; No Successor Liability**

T.      The Ten-X Marketing Agreement and PSA were not entered into for the purpose of hindering, delaying or defrauding creditors under the Bankruptcy Code or under the laws of the United States, or any state, territory, or possession, or the District of Columbia (including, without limitation, the Uniform Fraudulent Conveyance Act and the Uniform Fraudulent Transfer Act). The consideration to be provided by the Purchaser pursuant to the PSA is fair and adequate and constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, and any state, territory, possession, or the District of Columbia (including, without limitation, the Uniform Fraudulent Conveyance Act and the Uniform Fraudulent Transfer Act).

U.      No employee of the Debtor as of the Closing who becomes an employee of the Purchaser immediately following the Closing may be considered to have experienced an employment loss for purposes of any statute or contract requiring prior notice and/or payment of severance benefits in the event of employment loss.

**VI.      Validity of Transfer**

V.      The Debtor, Ten-X and the Purchaser each have full power and authority to execute and deliver the Ten-X Marketing Agreement, the PSA and all other documents contemplated thereby, and no further consents or approvals are required for the Debtor or the Purchaser to consummate the transactions contemplated by the Sale Motion.

W.      The Property constitutes property of the Debtor's estate and title thereto is presently

vested in the Debtor's estate within the meaning of section 541(a) of the Bankruptcy Code. The

transfer of the Property to the Purchaser will be as of the Closing Date a legal, valid, and effective

transfer of such assets, and vests or will vest the Purchaser with all right, title, and interest of the

Debtor to the Property free and clear of (a) all Liens, (b) all claims, including, without limitation,

all "claims" within the meaning of sections 101(5) and 102(2) of the Bankruptcy Code and all

interests, encumbrances, rights of setoff, recoupment, netting and deductions (collectively,

"**Claims**"), and (c) all liabilities, whether imposed by agreement, understanding, law, equity or

otherwise and whether known or unknown, fixed or contingent or arising prior to or subsequent to

the commencement of the Chapter 11 Cases, or individually, the "**Adverse Interests**"), except for

(i) any Permitted Exceptions and Assumed Liabilities as defined in the PSA and (ii) Comm 2013's

Easement Interests.

**VII.    Section 363(f) Is Satisfied**

X.      The Purchaser at auction would not be willing to enter into the PSA and would not

consummate the transactions contemplated thereby (by paying the Purchase Price, the Lien

Release Price and the other payments contemplated by the PSA and assuming the Assumed

Liabilities) if the sale of the Property to the Purchaser, and the assumption, assignment and sale of

the Executory Contracts and Unexpired Leases (including the Operating Agreements) to the

Purchaser, were not, except (i) as otherwise provided in the PSA with respect to the Assumed

Liabilities and Permitted Exceptions and (ii) with respect to the Easement Interests of Comm 2013,

free and clear of all Adverse Interests of any kind or nature whatsoever, or if the Purchaser would,

or in the future could be liable for any of such Adverse Interests, including, but not limited to,

Adverse Interests in respect of the following: (1) all mortgages, deeds of trust and security

9

interests; (2) any pension, welfare, compensation or other employee benefit plans, agreements, practices and programs, including, without limitation, any pension plan of any Debtor; (3) any other employee, worker's compensation, occupational disease or unemployment or temporary disability related claim, including, without limitation, claims that might otherwise arise under or pursuant to (a) the Employee Retirement Income Security Act of 1974, as amended, (b) the Fair Labor Standards Act, (c) Title VII of the Civil Rights Act of 1964, (d) the Federal Rehabilitation Act of 1973, (e) the National Labor Relations Act, (f) the Worker Adjustment and Retraining Act of 1988, (g) the Age Discrimination and Employee Act of 1967 and Age Discrimination in Employment Act, as amended, (h) the Americans with Disabilities Act of 1990, (i) the Consolidated Omnibus Budget Reconciliation Act of 1985, (j) state discrimination laws, (k) state unemployment compensation laws or any other similar state laws, or (l) any other state or federal benefits or claims relating to any employment with any of the Debtor or any of its respective predecessors; (4) any bulk sales or similar law; (5) any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended; (6) any environmental law(s); and (7) any theories of successor or transferee liability.

Y.    The Debtor may sell the Property free and clear of all Adverse Interests against the Debtor, its estates or any of the Property (except for (i) any Assumed Liabilities and Permitted Exceptions under the PSA and (ii) Easement Interests of Comm 2013) because, in each case, one or more of the standards set forth in section 363(f)(1) - (5) of the Bankruptcy Code has been satisfied. Those holders of Adverse Interests against or in the Debtor, its estates or any of the Property who did not timely object, or who withdrew its objections, to the Sale or the Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code. Those holders of such Adverse Interests who did object (except Comm 2013) fall within one or more of the other

10

subsections of section 363(f) and are adequately protected by having its Adverse Interests, if any, in each instance against the Debtor, its estates or any of the Property, attach to the net cash proceeds of the Sale Transaction ultimately attributable to the Property in which such creditor or interest holder alleges an interest, in the same order of priority, with the same validity, force and effect that such creditor or interest holder had prior to the Sale Transaction, subject to any claims and defenses the Debtor and its estate may possess with respect thereto.

**VIII.    Assumption and Assignment of the Executory Contracts and Unexpired Leases, Including the Operating Agreements and Rejection of the Franchise Agreements.**

Z.    The assumption and assignment of the Executory Contracts and Unexpired Leases, including the Operating Agreements, pursuant to the terms of this Order and the PSA is integral to the PSA and is in the best interests of the Debtor and its estate, creditors, interest holders and other parties in interest, and represents the reasonable exercise of sound and prudent business judgment by the Debtor.

AA.    The amounts set forth on Exhibit 1 annexed hereto, if any, are the sole amounts necessary under sections 365(b)(1)(A) and (B) and 365(f)(2)(A) of the Bankruptcy Code to cure all monetary defaults and pay all actual pecuniary losses under the Executory Contracts and Unexpired Leases, including the Operating Agreements.

BB.    Pursuant to the terms of the PSA, the Purchaser and/or the Debtor have: (1) cured and/or provided adequate assurance of cure of any defaults existing prior to the Closing Date under any of the Executory Contracts and Unexpired Leases, including the Operating Agreements, within the meaning of section 365(b)(1)(A) of the Bankruptcy Code; and (2) provided compensation or adequate assurance of compensation to any party for actual pecuniary loss to such party resulting from a default prior to the Closing Date under any of the Executory Contracts and Unexpired

11

Leases, including the Operating Agreements, within the meaning of section 365(b)(1)(B) of the

Bankruptcy Code, and adequate assurance of future performance under the relevant Executory

Contracts and Unexpired Leases within the meaning of sections 365(b)(1)(C), 365(b)(3) (to the

extent applicable) and 365(f)(2)(B) of the Bankruptcy Code.

CC.    No default exists in the Debtor's performance under the Executory Contracts and

Unexpired Leases (including the Operating Agreements) as of the Closing Date other than the

failure to pay Cure Amounts or defaults that are not required to be cured as contemplated in section

365(b)(1)(A) of the Bankruptcy Code.

IX.    **Compelling Circumstances for an Immediate Sale**

DD.    To maximize the value of the Debtor's assets, it is essential that the Sale

Transaction occur within the time constraints set forth in the Ten-X Marketing Agreement and

PSA. The consummation of the Sale Transaction is necessary both to preserve and maximize the

value of the Debtor's assets for the benefit of the Debtor, its estate, its creditors, and all other

parties in interest in the Chapter 11 Cases, and to provide the means for the Debtor to maximize

creditor recoveries.

EE.    The consummation of the transaction is legal, valid and properly authorized under

all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a),

363(b), 363(f), 363(m), 365(b) and 365(f), and all of the applicable requirements of such sections

have been complied with in respect of the transaction.

X.    **The Settlement with Carter Bank and Tara is in the Best Interests of the Debtor's
Estate**

FF.    The (i) payment to Carter Bank of the Lien Release Price, (ii) the payment to Tara

of the Easement Access Agreement Amount, and (iii) Carter Bank Release was within the sound

12

exercise of the Debtor's business judgment and is in the best interests of the Debtor and its estate. The Carter Bank Settlement and Tara Settlement result in significant value to the Debtor and its estate.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.      The relief requested in the Sale Motion is granted and approved, and the Sale Transaction contemplated thereby and by the Ten-X Marketing Agreement and PSA is approved as set forth in this Order.

2.      All objections to the Sale Motion or the relief requested therein that have not been withdrawn, waived, or settled as announced to the Court at the Sale Hearing, by stipulation filed with the Court, or as set forth in this Order, and all reservations of rights included therein, are hereby overruled on the merits or the interests of such objections have been otherwise satisfied or adequately provided for.

3.      The PSA and all other ancillary documents, and all of the terms and conditions thereof, are hereby approved as set forth herein.

4.      Pursuant to section 363(b) of the Bankruptcy Code, the Debtor is authorized, empowered and directed to take any and all actions necessary or appropriate to (a) consummate the Sale of the Property to the Purchaser pursuant to and in accordance with the terms and conditions of the PSA, (b) Close the Sale Transaction as contemplated in the PSA and this Order, (c) effectuate the Carter Bank Settlement and the Tara Settlement, and (d) execute and deliver, perform under, consummate, implement and close fully the PSA, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the PSA and the Sale Transaction, including any other ancillary documents, or as may be reasonably

13

necessary or appropriate to the performance of the obligations as contemplated by the PSA and such other ancillary documents. Without limiting the generality of the foregoing, the Debtor is authorized to take all such other and further actions as may be necessary or appropriate to fulfill its obligations under the PSA.

5.    This Order shall be binding in all respects upon the Debtor, including the Debtor's estate, all holders of equity interests in any Debtor, all holders of any Claim(s) (whether known or unknown) against any Debtor, any holders of Adverse Interests against or on all or any portion of the Property, all Contract Counterparties, the Purchaser and all successors and assigns of the Purchaser, the hotel and any trustee, if any, subsequently appointed in the Debtor's Chapter 11 Case or upon a conversion to chapter 7 under the Bankruptcy Code of the Debtor's Chapter 11 Case. This Order and the PSA shall inure to the benefit of the Debtor, its estate, its creditors, the Purchaser and its respective successors and assigns.

6.    Any amounts payable by the Debtor under the PSA or any of the documents delivered by the Debtor in connection with the PSA, shall be paid in the manner provided in the PSA without further order of the Bankruptcy Court. Without limiting the generality of the foregoing, the payment to Carter Bank of the Lien Release Price and the payment to Tara of the Easement Access Agreement Amount is expressly authorized, and the Debtor is directed to remit, or cause to be remitted, the same, without further order of the Bankruptcy Court.

7.    Pursuant to sections 105(a), 363(b), 363(f), 365(b) and 365(f) of the Bankruptcy Code, the Debtor is authorized to transfer the Property on the Closing Date pursuant to the terms of the Ten-X Marketing Agreement and PSA. Such Property shall be transferred to the Purchaser upon and as of the Closing Date and such transfer shall constitute a legal, valid, binding and effective transfer of the Property and shall be free and clear of all Adverse Interests, except (i)

14

Assumed Liabilities and Permitted Exceptions under the PSA and (ii) Easement Interests of Comm 2013. Upon the Closing, the Purchaser shall take title to and possession of the Property subject only to the Assumed Liabilities, Permitted Exceptions, and Easement Interests of Comm 2013. Pursuant to section 363(f) of the Bankruptcy Code, the transfer of title to the Property (specifically including the Hotels, the Operating Agreements, and the Executory Contracts and Unexpired Leases assumed and assigned to the Purchaser) shall, except for Assumed Liabilities, Permitted Exceptions, Easement Interests of Comm 2013, be free and clear of all Adverse Interests. Adverse Interests shall attach solely to the net cash proceeds of the Sale Transaction with the same validity, priority, force and effect that they now have as against the Property, subject to any claims and defenses the Debtor and its estate may possess with respect thereto.

8.      Except as expressly provided by the PSA with respect to Assumed Liabilities and Permitted Exceptions, and except with respect to Comm 2013's Easement Interests, all persons and entities holding Adverse Interests in all or any portion of the Property arising under or out of, in connection with, or in any way relating to the Debtor, the Property, the operation of the Debtor's business prior to the Closing Date or the transfer of the Property to the Purchaser, hereby are forever barred, estopped and permanently enjoined from asserting against the Purchaser or its successors or assigns, its property or the Property, such persons' or entities' Adverse Interests in and to the Property. On the Closing Date, each creditor (and, the Purchaser, on behalf of each creditor) is authorized to execute such documents and take all other actions as may be deemed by the Purchaser to be necessary or desirable to release Liens or Claims on the Property, if any, as provided for herein, as such liens or claims may have been recorded or may otherwise exist.

9.      A certified copy of this Order may be filed with the appropriate clerk to act to cancel any of applicable Adverse Interests.

15

10.    If any person or entity which has filed statements or other documents or agreements evidencing Adverse Interests in, all or any portion of the Property shall not have delivered to the Debtor prior to the Closing Date, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements, and any other documents necessary or desirable to the Purchaser for the purpose of documenting the release of all Adverse Interests (other than Assumed Liabilities, Permitted Exceptions, or Easement Interests of Comm 2013), which the person or entity has or may assert with respect to all or any portion of the Property, the Purchaser and the Debtor are hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of such person or entity with respect to the Property.

11.    This Order is and shall be binding upon and govern the acts of all persons and entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal and local officials, and all other persons and entities who may be required by operation of law, the duties of its office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the PSA.

12.    Upon the Closing of the Sale Transaction, the Debtor is authorized and directed to assume and assign the Operating Agreements to the Purchaser under the PSA, along with any and all other applicable Executory Contracts and Unexpired Leases, free and clear of all Adverse Interests, as described herein. The payment of the applicable Cure Amounts (if any) by the

16

Purchaser or the Debtor, as applicable and as required by the PSA, shall (a) effect a cure of all defaults existing thereunder as of the Closing Date, (b) compensate for any actual pecuniary loss to such Contract Counterparties resulting from such default, and (c) together with the assignment by the Debtor to and the assumption of the Executory Contracts and Unexpired Leases (including the Operating Agreements) by the Purchaser, constitute adequate assurance of future performance thereof. The Debtor shall then have assumed the Executory Contracts and Unexpired Leases and the Operating Agreements and shall have assigned the same to Purchaser. Pursuant to section 365(f) of the Bankruptcy Code, the assignment by the Debtor of the Executory Contracts and Unexpired Leases and the Operating Agreements shall not be a default thereunder. After the payment of the relevant Cure Amounts by the Purchaser or Debtor, as applicable and as required by the PSA, neither the Debtor nor the Purchaser shall have any further liabilities to the Contract Counterparties other than the Purchaser's obligations under the Executory Contracts and Unexpired Leases and Operating Agreements that accrue and become due and payable on or after the Closing Date.

13.    Any provisions in any Executory Contract or Unexpired Lease (specifically including the Operating Agreements) that prohibits or conditions the assignment of the same or allows the party to such Executory Contract or Unexpired Lease (including the Operating Agreements) to terminate, recapture, impose any penalty, condition on renewal or extension or modify any term or condition upon the assignment of such Executory Contract or Unexpired Lease (specifically including the Operating Agreements), constitute unenforceable anti-assignment provisions that are void and of no force and effect. All other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtor and assignment to the Purchaser of the Executory Contracts and Unexpired Leases (including the Operating

17

Agreements) have been satisfied. Upon the Closing, in accordance with sections 363 and 365 of the Bankruptcy Code, the Purchaser shall be fully and irrevocably vested with all right, title and interest of the Debtor under the Executory Contracts and Unexpired Leases, including the Operating Agreements.

14.     The Debtor's interest in the Franchise Agreement with La Quinta Franchising LLC ("La Quinta") is rejected, pursuant to 11 U.S.C. §365, without the need for further court order, effective as of closing of the Sale Transaction. Up until the time of rejection, the Debtor shall remain obligated to perform under the Franchise Agreement, including the payment of franchise fees due thereunder. Upon rejection, La Quinta shall be entitled, but not required, to terminate the Franchise Agreement without further order of the Court. The sale pursuant to this Sale Order does not include or otherwise contemplate a transfer, sale or assumption/assignment of the Debtor's Franchise Agreement with La Quinta. Neither this Order nor the PSA shall operate to transfer or confer upon the Purchaser any rights to, or ownership in, the Franchise Agreement, or to otherwise use the protected intellectual property of La Quinta including the La Quinta® Marks and the La Quinta® System, trademarks, service marks, and logos, or to otherwise continue operations as a La Quinta® guest lodging facility. Any continued operation of the Property as a "La Quinta" ® is conditioned upon separate agreement between the Purchaser and La Quinta. The Purchaser may negotiate with La Quinta with respect to continuing operations however, any authority to conduct continued operations is contingent upon the consent of, and an agreement with, La Quinta and/or any applicable related entity, which consent and/or agreement is subject to the sole discretion of La Quinta and/or any related entity.

15.     La Quinta expressly preserves its rights under the Franchise Agreement and applicable law to seek allowance and payment for any unpaid amounts due and owing in connection with the

18

Franchise Agreement, including without limitation, pursuant to 11 U.S.C. §503(b)(1)(A) without wavier of any other right La Quinta may possess for non-payment. La Quinta shall have thirty (30) days from the Closing to file a claim for rejection damages in this case, which time may be extended by Stipulation between the Debtor and La Quinta without further order of the Court.

16.    In the event the Purchaser does not make arrangements with La Quinta for a new franchise agreement, or otherwise reach an agreement with respect to continued operation of the Hotel as a La Quinta property following the Closing, the Purchaser shall, within ten (10) days of demand by La Quinta, at its sole cost and expense, satisfy any non-monetary post-termination obligations to La Quinta pursuant to the terms set forth in the Franchise Agreement including, but not limited to, the de-identification of the Facility from its appearance as a "La Quinta"® guest-lodging facility. In the event that the post-termination non-monetary obligations to La Quinta are not performed as set forth in the Franchise Agreement, La Quinta reserves all rights with respect thereto.

17.    Nothing herein shall be deemed as a waiver of La Quinta's rights under the Franchise Agreement, or limit La Quinta to the relief granted herein, or serve to waive, extinguish, or compromise any monetary claims of La Quinta against the Debtor, any guarantors, or other individuals/entities. The rights, if any, of La Quinta to prosecute an administrative claim, a rejection claim, an unsecured claim and/or any other claim are expressly preserved.

18.    Upon the Closing and the payment of the relevant Cure Amounts, if any, the Purchaser shall be deemed to be substituted for the Debtor as a party to the applicable Executory Contracts and Unexpired Leases, including the Operating Agreements, and the Debtor shall be relieved, pursuant to section 365(k) of the Bankruptcy Code, from any further liability under the same.

19

19.    Upon the payment of the applicable Cure Amounts, if any, the Executory Contracts and Unexpired Leases, including the Operating Agreements, will remain in full force and effect, and no default shall exist under the same nor shall there exist any event or condition which, with the passage of time or giving of notice, or both, would constitute such a default.

20.    Pursuant to sections 105(a), 363 and 365 of the Bankruptcy Code, all Contract Counterparties are forever barred and permanently enjoined from raising or asserting against the Purchaser any assignment fee, default, breach or claim or pecuniary loss, or condition to assignment, arising under or related to the Executory Contracts and Unexpired Leases (including the Operating Agreements) existing as of the Closing Date or arising by reason of the Closing.

21.    Effective upon the Closing Date and except as otherwise provided by stipulations filed with or announced to the Court with respect to a specific matter or as set forth in the PSA with respect to Permitted Exceptions and Assumed Liabilities, or Easement Interests of Comm 2013, all persons and entities are forever prohibited and permanently enjoined from commencing or continuing in any manner any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral or other proceeding against the Purchaser, its successors and assigns, or the Property, with respect to any (a) Adverse Interests arising under, out of, in connection with or in any way relating to the Debtor, the Purchaser, the Property, or the operation of the Hotel prior to the Closing of the Sale Transaction, or (b) successor liability, including, without limitation, the following actions: (i) commencing or continuing in any manner any action or other proceeding against the Purchaser, its successors or assigns, assets or properties; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Purchaser, its successors or assigns, assets or properties; (iii) creating, perfecting or enforcing any Adverse Interests against the Purchaser, its successors or assigns, assets or

20

properties; (iv) asserting any setoff, right of subrogation or recoupment of any kind against any

obligation due the Purchaser or its successors or assigns; (v) commencing or continuing any action,

in any manner or place, that does not comply or is inconsistent with the provisions of this Order

or other orders of the Court, or the agreements or actions contemplated or taken in respect thereof;

or (vi) revoking, terminating or failing or refusing to renew any license, permit or authorization to

operate any of the Property or conduct any of the businesses operated with the Property.

22.       Except for the Assumed Liabilities, Permitted Exceptions or as otherwise expressly

set forth in the PSA, and except with respect to Easement Interests of Comm 2013, the Purchaser

shall not have any liability or other obligation of the Debtor arising under or related to any of the

Property or the PSA or the transactions related thereto. Without limiting the generality of the

foregoing, and except for (i) the Assumed Liabilities or Permitted Exceptions provided in the PSA

and (ii) Easement Interests of Comm 2013, the Purchaser shall not be liable for any claims or any

other Adverse Interests against the Debtor or any of its predecessors or affiliates, and the Purchaser

shall have no successor or vicarious liabilities of any kind or character, including, but not limited

to, any theory of antitrust, environmental, successor or transferee liability, labor law, *de facto*

merger or substantial continuity, whether known or unknown as of the Closing Date, now existing

or hereafter arising, whether fixed or contingent, with respect to the Debtor or any obligations of

the Debtor arising prior to the Closing Date, including, but not limited to, liabilities on account of

any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to

the operation of any of the Property prior to the Closing. The Purchaser has given substantial

consideration under the PSA for the benefit of the holders of any Adverse Interests. The

consideration given by the Purchaser shall constitute valid and valuable consideration for the

releases of any potential claims of successor liability of the Purchaser, which releases shall be

21

deemed to have been given in favor of the Purchaser by all holders of Adverse Interests against or interests in the Debtor or any of the Property.

23.      Notwithstanding anything else to the contrary herein, the Carter Bank Settlement and the Tara Settlement are authorized and approved in all respects under Rule 9019, and the Debtor, Tara Retail Group, LLC, and Carter Bank are authorized to enter into and consummate the Carter Bank Settlement and Tara Settlement.  Upon Closing of the Sale Transaction and Carter Bank's receipt of the Lien Release Price, Carter Bank shall release its liens provided for by the Security Instruments in and upon the Property, and Tara shall withdraw its administrative expense claim and receive a general unsecured claim in the amount of $120,332.25. The Debtor is authorized and directed to withdraw with prejudice the Surcharge Motion upon Closing of the Sale Transaction.

24.      For the avoidance of doubt, this Order shall have a preclusive effect on any and all manner of action and actions, cause and causes of action, suits, damages, claims, counterclaims, liabilities, costs, fees (including reasonable or actual attorneys' fees), and demands whatsoever, whether direct or indirect, liquidated or unliquidated, contingent or actual, in law or in equity, known or unknown, suspected or unsuspected, that the Debtor, for itself and its successors, assigns, agents, administrators, conservators, estates, trustee(s), representatives, insurers, employees, attorneys, owners, managers, members, beneficiaries, and all others claiming by and/or through the Debtor, had, currently has, or may in the future have, against Carter Bank, including its past, present and future officers, directors, agents, employees, legal representatives, assigns, successors, affiliates, shareholders, beneficiaries, predecessors, insurers, any business entity or division owning or controlling Carter Bank in whole or in part, and any business entity or division owned

22

or controlled in whole or in part by Carter Bank, with respect to the Property, the Loan, or the Security Agreements, which are hereby released.

25.     The Debtor is authorized and directed to, within thirty (30) days following Closing and consummation of the Sale Transaction: (a) file a chapter 11 plan and disclosure statement that (i) provides for the Carter Bank Release and (ii) classifies Carter Bank's remaining deficiency claim – *i.e.*, the difference between the amount owed by the Debtor to Carter Bank under the Security Instruments and the ultimate Lien Release Price – as a general unsecured claim, and (iii) classifies Tara's remaining deficiency claim – *i.e.*, the difference between the amount of Tara's administrative expense claim against the Debtor and the amount of the Easement Access Agreement Amount – as a general unsecured claim or (b) file a motion to dismiss the chapter 11 case.

26.     Nothing contained in any plan of reorganization or liquidation, or order of any type or kind entered in (a) these Chapter 11 Cases, (b) any subsequent chapter 7 case into which any such Chapter 11 Case may be converted, or (c) any related proceeding subsequent to entry of this Order, shall conflict with or derogate from the provisions of the PSA or the terms of this Order.

27.     No bulk sales law or any similar law of any state or other jurisdiction applies in any way to the Sale Transaction.

28.     The failure specifically to include any particular provision of the PSA in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the PSA be authorized and approved in its entirety.

29.     The PSA and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto and in accordance with the terms thereof, without further order of the Court.

23

30.    The Court shall retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order and the PSA, all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which the Debtor are a party, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale Transaction.

31.    Notwithstanding the possible applicability of Bankruptcy Rules 6004, 6006, 7062, 9014 or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable.

32.    All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

33.    To the extent that this Order is inconsistent with any prior order or pleading with respect to the Sale Motion in these Chapter 11 Cases, the terms of this Order shall govern.

34.    For the avoidance of doubt, the Comm 2013 Objection is sustained. Nothing contained in this order shall modify, alter, amend, affect or impair Comm 2013's Easement Interests, and the Sale Transaction and Property shall remain subject in all respects to Comm 2013's interests in the Property under its deed of trust, as set forth more specifically in the Comm 2013 Objection. To the extent any provision of this Order contradicts this paragraph with respect to the Easement Interests of Comm 2013, this paragraph shall control.

SUBMITTED BY:

/s/ Steven L. Thomas
Steven L. Thomas (WVSB #3738)
Kay Casto & Chaney PLLC
P.O. Box 2031
Charleston, West Virginia 25327
Tel:  (304) 345-8900
Fax:  (304) 345-8909
sthomas@kaycasto.com
  *Counsel for Emerald Grande, LLC*

/s/ Matthew R. Brooks
Matthew Ray Brooks (GA Bar No. 378018)
Harris B. Winsberg, GA Bar No. 770892
Troutman Sanders LLP
Bank of America Plaza
600 Peachtree Street NE, Ste. 3000
Atlanta, GA  30308-2216
Tel:  404.885.3000
  *Counsel for Carter Bank & Trust*

Inspected by:

/s/ Debra A. Wertman
Debra A. Wertman, Esq.
Assistant U.S. Trustee
2025 United States Courthouse
300 Virginia Street, E.
Charleston, WV  25301
Debra A. Wertman@usdoj.gov

/s/ Christopher P. Schueller
Christopher P. Schueller, Esq.
Union Trust Building
501 Grant Street, Suite 200,
Pittsburgh, PA 15219
christopher.schueller@bipc.com
  *Counsel for COMM 2013 CCRE12*
  *Crossings Mall Road LLC*

/s/ David S. Catuogno
David S. Catuogno, Esq.
K&L Gates LLP
One Newark Center, 10th Floor
1085 Raymond Blvd.
Newark, NJ  07102
david.catuogno@klgates.com
*Counsel for La Quinta Franchising LLC*

/s/ Collen C. McCulloch
Colleen C. McCulloch, Esq.
Pullin, Fowler, Flanagan, Brown & Poe PLLC
252 George Street
Beckley, WV 25801
cmcculloch@pffwv.com
*Counsel for La Quinta Franchising LLC*

# Exhibit 1 – Assumption Notice

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| In re: | Case No. 1:17-bk-00021 |
| EMERALD GRANDE, LLC, | Chapter 11 |
| Debtor. | |

### NOTICE TO COUNTERPARTIES TO POTENTIALLY
### ASSUMED EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**PLEASE TAKE NOTICE** that on January 7, 2021, Emerald Grande, LLC, as debtor and debtor-in-possession (the **"Debtor"**) in the above-captioned case, filed a motion (the **"Sale Motion"**) with the United States Bankruptcy Court for the Northern District of West Virginia (the **"Bankruptcy Court"**) seeking approval of the Sale by auction of the Property[1] pursuant to the Ten-X Marketing Agreement and PSA, of the assets set forth therein).

The United States Bankruptcy Court for the Northern District of West Virginia (the **"Bankruptcy Court"**) **will conduct a hearing to consider the relief requested in the Sale Motion on January 15, 2021 at [] a.m. (the "Sale Hearing"), or at such later date and time as may be scheduled by further Order of the Bankruptcy Court upon motion or application by the Debtor.** The Sale Hearing may be continued from time to time without further notice to creditors or parties in interest other than by announcement of the continuance in open court on the date scheduled for the Sale Hearing.

**YOU ARE RECEIVING THIS NOTICE BECAUSE YOU OR ONE OF YOUR AFFILIATES IS A COUNTERPARTY TO AN EXECUTORY CONTRACT OR UNEXPIRED LEASE WITH THE DEBTOR AS SET FORTH ON <u>EXHIBIT A</u> HERETO.[2]**

**PLEASE TAKE FURTHER NOTICE** that the Debtor may assume and assign to the Purchaser the executory contracts or unexpired leases listed on Exhibit A attached hereto (each, a **"Scheduled Contract"**) to which you are a counterparty. **If you object to the proposed assignment to the Purchaser of the Scheduled Contract(s) or object to the Purchaser's ability to provide adequate assurance of future performance with respect to any Scheduled Contracts, you must file an objection with the Bankruptcy Court prior to the hearing scheduled for January 14, 2021 at 9:30 a.m. (the "Objection Deadline"), and serve such objection on (i) counsel to the Debtor, KAY CASTO & CHANEY, PLLC, Attn: Steven L.**

---

[1] All capitalized terms not defined herein shall have the meaning given thereto in the Sale Motion.

[2] This Notice is being sent to counterparties to Executory Contracts and Unexpired Leases. This Notice is not an admission by the Debtor that such contract or lease is executory or unexpired.

Thomas, P.O. Box 2031, Charleston, West Virginia 25327 (sthomas@kaycasto.com); (ii) counsel to Carter Bank, TROUTMAN PEPPER HAMILTON SANDERS LLP, Attn: Matthew R. Brooks, 600 Peachtree St NE, Suite 3000, Atlanta, GA 30308 (matthew.brooks@troutman.com); and (iii) the OFFICE OF THE UNITED STATES TRUSTEE, U.S. Department of Justice, Attn: Debra Wertman, 300 Virginia Street East, Room 2025, Charleston WV 25301 (debra.a.wertman@usdoj.gov) in each case so as to be **actually received by no later than the Objection Deadline**.

**PLEASE TAKE FURTHER NOTICE** that if no objection to (a) the Cure Amount(s), if any; (b) the proposed assignment of the Scheduled Contract(s) to the Purchaser or (c) adequate assurance of the Purchaser's ability to perform, is filed by the Objection Deadline, you will be (i) deemed to have stipulated that the Cure Amount(s), if any, as determined by the Debtor is correct, (ii) forever barred, estopped and enjoined from asserting any additional cure amount under the Scheduled Contract(s) and (iii) forever barred from objecting to the assignment of the Scheduled Contract(s) to the Purchaser.

**PLEASE TAKE FURTHER NOTICE** that with respect to any Scheduled Contract assumed and assigned to the Purchase, all Cure Amounts shall be satisfied by payment of the Cure Amounts as soon as reasonably practicable after Bankruptcy Court approval of the Sale of the Transferred Property to the Purchaser or on such other terms as the parties to each such Scheduled Contract may otherwise agree without any further notice to or action, order or approval of the Bankruptcy Court. In addition, the assumption of each such Scheduled Contract may be conditioned upon the disposition of all issues with respect to such Scheduled Contract.

**PLEASE TAKE FURTHER NOTICE** that pursuant to the Sale Procedures Order, in the event of a dispute regarding: (a) any Cure Amount with respect to any Scheduled Contract or; (b) the ability of the Purchaser to provide adequate assurance of future performance as required by section 365 of the Bankruptcy Code, if applicable, under such Scheduled Contract; or (c) any other matter pertaining to assumption and assignment, the Cure Amounts shall be paid as soon as reasonably practicable after the Closing and following the entry of a final order resolving the dispute and approving the assumption of such Scheduled Contract; provided, however, that the Debtor, with the consent of the Purchaser, are authorized to settle any dispute regarding the amount of any Cure Amount or assignment to the Purchaser without any further notice to or action, order or approval of the Court.

**PLEASE TAKE FURTHER NOTICE THAT** notwithstanding anything herein, this Notice shall not be deemed to be an assumption, adoption, rejection or termination of the Scheduled Contracts. Moreover, the Debtor explicitly reserves its rights to reject or assume each Scheduled Contract pursuant to section 365(a) of the Bankruptcy Code, and nothing herein (a) alters in any way the prepetition nature of the Scheduled Contracts or the validity, priority or amount of any claims of a counterparty to a Scheduled Contract against the Debtor that may arise under such Scheduled Contract; (b) creates a post-petition contract or agreement; or (c) elevates to administrative expense priority any claims of a counterparty to a Scheduled Contract against the Debtor that may arise under such Scheduled Contract.

2

**PLEASE TAKE FURTHER NOTICE THAT** this Notice is subject in all respects to the terms and conditions of the Sale Motion, the Sale Procedures Order, the PSA and the Sale Procedures, which shall control in the event of any conflict; and the Debtors encourage parties in interest to review such documents in their entirety. Copies of the Sale Motion, the PSA (including exhibits thereto), the Sale Procedures, and the Sale Procedures Order, may be obtained free of charge by request in writing, by telephone, or via email from counsel to the Debtor, KAY CASTO & CHANEY, PLLC, Attn: Steven L. Thomas, P.O. Box 2031, Charleston, West Virginia 25327 (sthomas@kaycasto.com).  Alternatively, the documents may be retrieved for a small fee from PACER, at https://ecf.wvnb.uscourts.gov/.

/s/ Steven L. Thomas
Steven L. Thomas (WVSB # 3738)
Kay Casto & Chaney PLLC
P.O. Box 2031
Charleston, West Virginia 25327
Tel:  (304) 345-8900
Fax:  (304) 345-8909
sthomas@kaycasto.com
  *Counsel for Emerald Grande, LLC*

3

## EXHIBIT A

| [Counterparty Name] | [Contract / Lease] | [Cure Amount] |
|---|---|---|
| Allbridge/Bulk TV | Lease #16797 | $ 0.00 |
| Frontier Communications | Account #304-197-0266-051314-4 | $4,526.87 |
| Frontier Communications | Account #304-965-9200-053111-4 | $ 0.00 |
| Frontier Communications | Account #304-141-0022-050614-4 | $5,660.43 |
| Johnson Controls | Contract # 78004170 | $ 0.00 |
| W. Va. Division of Labor | Cert. of Operation (Elevator) EV0002583 | $ 0.00 |
| Kanawha Chas Health Dept. | Invoice # Qual202028535 | $ 0.00 |
| Kanawha Chas Health Dept. | Invoice # Qual202027979 | $ 0.00 |
| W.Va Dept. of Transportation | Account # EMECOA03 | $ 0.00 |