SIGNED: April 2, 2021

NOTICE: April 2, 2021     Doc 915     Filed 04/02/21     Entered 04/02/21 13:39:53     Page 1 of
THIS ORDER HAS BEEN ENTERED ON THE DOCKET.                                                 64
PLEASE SEE DOCKET FOR ENTRY DATE.

Paul M. Black
**UNITED STATES BANKRUPTCY JUDGE**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

In re:

**EMERALD GRANDE, LLC**                              **Case No. 1:17-bk-00021**

       **Debtor.**                                  **Chapter 11**

## ORDER (A) AUTHORIZING THE SALE OF THE TRANSFERRED PROPERTY FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, (B) AUTHORIZING AND APPROVING THE DEBTOR'S PERFORMANCE UNDER THE PURCHASE AND SALE AGREEMENT, (C) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN OF THE DEBTOR'S EXECUTORY CONTRACTS AND UNEXPIRED LEASES RELATED THERETO AND REJECTION OF OTHERS, (D) APPROVING THE CARTER BANK SETTLEMENT AND TARA SETTLEMENT, AND <u>(E) GRANTING RELATED RELIEF</u>

Upon the *Debtor's Motion Pursuant to Sections 105(a), 363 and 365 of the Bankruptcy Code for Entry of an Order A) Authorizing The Sale Of The Property In Connection With The Elkview Hotel Free And Clear Of Liens, Claims, Encumbrances, And Other Interests, (B) Authorizing And Approving The Debtor's Performance Under The Ten-X Marketing Agreement And Purchase And Sale Agreement, (C) Approving The Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases, And Rejection Of Others, (D) Approving The Carter Bank Settlement And Tara Settlement, (E) Approving The Expense Reimbursement And (F) Granting Related Relief* [Doc. 881] (the "Sale Motion")[1] filed by Emerald Grande, LLC (the

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Sale Motion or the Purchase and Sale Agreement dated as of March 25, 2021 by and among

"**Debtor**"), seeking, among other things, entry of an order (this "**Order**"), pursuant to sections 105(a), 363 and 365 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2002, 6004, 6006, 9007, 9014, and 9019 of the Federal Rules of Bankruptcy Procedure (as amended from time to time, the "**Bankruptcy Rules**"), and Rule 9013-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Northern District of West Virginia (the "**Local Rules**") authorizing and approving the sale of the Debtor's Elkview Hotel and certain associated contracts, leases and personal property (the "**Transferred Property**") free and clear of all liens, claims, and interests, to the maximum extent permitted by applicable law and pursuant to the PSA, the assumption and assignment of certain executory contracts and unexpired leases of the Debtors, and a settlement of certain claims in connection therewith.

On January 21, 2021, the Court entered its Sale Order, approving the procedures for the Sale of the Transferred Property (the "**Sale Procedures**") and granting related relief.   In accordance with the Sale Procedures and the Sale Order, and pursuant to the auction conducted on March 23-25, 2021, the Debtor has determined that Pritpal Dhindsa and Harbhajan Ghotra (the "**Purchaser**") submitted the highest and best offer for the Transferred Property, as reflected in the PSA, a copy of which is attached hereto as **Exhibit A**.

The Court has considered (i) the Sale Motion and the exhibits thereto, (ii) the PSA, whereby the Debtor has agreed, among other things, to sell the Transferred Property to the Purchaser, including the Assumed Operating Agreements that will be assumed and assigned to the Purchaser and the Real Property that will be sold to the Purchaser on the terms and conditions set forth in the PSA (collectively, the "**Sale Transaction**"); (iii) the Sale  Order; (iv) the evidence presented by

---

the Debtor and Pritpal Dhindsa and Harbhajan Ghotra (the "**Purchaser**") (as amended, modified, or supplemented, the "**PSA**"), as applicable.

the Debtor and admitted by this Court without objection in support of the relief sought in the Sale Motion, including proffers of testimony on behalf of the Debtor and live testimony; and (v) the arguments and representations of counsel made, and any other evidence proffered and adduced, at the Sale Hearing.  All interested parties were afforded an opportunity to appear and be heard with respect to the Sale Motion.  All responses and objections to the Sale Motion have been duly noted in the record, including the objection of Comm 2013 CCRE12 Crossings Mall Road, LLC ("**Comm 2013**") (the "**Comm 2013 Objection**") pursuant to which Comm 2013 asserted interests and liens in the Property subject to the Easements, as defined more specifically in the Comm 2013 Objection [ECF 846 which is incorporated by reference in ECF 889] (Comm 2013's interest with respect to the Property shall be referred to herein as the "**Easement Interests**") and that the proposed sale should remain subject to those Easement Interests.  Due notice of the Sale Motion, the PSA, the Sale Order, and the form of this Order has been provided in accordance with the Sale Order.  Except for the Comm 2013 Objection, all objections have been withdrawn, were resolved, or are overruled on the merits, as provided in this Order.

Upon consideration of the foregoing, along with the record of the Sale Hearing and the record in these chapter 11 cases, the Court determines that the relief requested in the Sale Motion and granted herein is in the best interests of the Sellers, the Debtor's estate, creditors, stakeholders, and all other parties in interest in these chapter 11 cases.  Accordingly,

**THE COURT HEREBY FINDS AND DETERMINES THAT**:

## I.    Jurisdiction, Final Order and Statutory Predicates

A.    The Court has jurisdiction to hear and determine the Motion pursuant to 28 U.S.C. §§ 157(b)(1) and 1334(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N) and (O). Venue is proper in this District and in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.       This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, the Court expressly finds that there is no just reason for delay in the implementation of this Order, and expressly directs entry of judgment as set forth herein.

C.       The statutory predicates for the relief requested in the Motion are sections 105(a), 363(b), (f), and (m), and 365 of the Bankruptcy Code, Bankruptcy Rules 2002(a)(2), 6004(a), (b), (c), (e), (f) and (h), 6006(a), (c) and (d), 9007, 9014, and 9019, and Local Rules 6004-1 and 9013-1.

D.       The findings of fact and conclusions of law set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

E.       To the extent any of the following findings of fact constitute conclusions of law, they are hereby adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are hereby adopted as such. Any findings of fact or conclusions of law stated by the Court on the record at the Sale Hearing are hereby incorporated, to the extent they are not inconsistent herewith.

F.       The Purchaser has and will be acting in good faith pursuant to section 363(m) of the Bankruptcy Code in Closing the Sale Transaction.

## II.    Notice of the Sale Transaction, the Cure Amounts, and Sale Motion

G.       Actual written notice of the Sale Motion, the Sale Transaction, the Carter Bank Settlement, the Tara Settlement, the assumption and assignment of the Executory Contracts and Unexpired Leases (including the Operating Agreements) to be assumed by the Debtor and assigned to the Purchaser pursuant to PSA (which are identified on Exhibit B of this Order and which may

4

be hereafter revised under the terms of the PSA), and rejection of the Franchise Agreements, to the extent necessary, has provided a reasonable opportunity to object or be heard with respect to the Sale Motion and the relief requested therein to all known interested persons and entities, including, but not limited to the following parties: (1) the Office of the United States Trustee; (2) the Office of the United States Attorney for the Northern District of West Virginia; (3) counsel to Carter Bank; (4) the Internal Revenue Service; (5) all persons known by the Debtor to have expressed an interest to the Debtor in a transaction with respect to the Elkview Hotel during the previous twelve months; (6) all entities known by the Debtor that may have a lien, claim, encumbrance, or other interest in the Debtor's assets (for which identifying information and addresses are available to the Debtor); (7) all non-Debtor parties to the Operating Agreements and all non-Debtor parties to the Executory Contracts and Unexpired Leases that the Debtor assumed and assigned to the Purchaser pursuant to the PSA (collectively, the "**Contract Counterparties**"); (8) all of the Debtor's known creditors, including La Quinta and its counsel, (9) all parties that have requested notice in these cases under Bankruptcy Rule 2002.

H.    The Debtor has served Notice upon the Purchaser and the Contract Counterparties notifying them: (1) that the Debtor seeks to assume and assign such Executory Contracts or Unexpired Leases (including the Operating Agreements) on the Closing Date; and (ii) of the relevant Cure Amounts, if any, required to be paid in connection with the assumption and assignment of the Executory Contracts and Unexpired Leases (including the Operating Agreements) (the "Assumption Notice"). Pursuant to Bankruptcy Rule 6006(c), the Court finds that the service of such Assumption Notice was good, sufficient and appropriate under the circumstances and no further notice need be given in respect of establishing the Cure Amounts, if any, for the Executory Contracts and Unexpired Leases (including the Operating Agreements).

The Purchaser and the Contract Counterparties have had an opportunity to object to the Cure Amounts set forth in the Assumption Notice.

I.      All interested parties have received timely, adequate and proper notice of the Sale Transaction, and the Sale Hearing.

J.      The Assumption Notice has provided Purchaser and the Contract Counterparties with proper notice of the potential assumption and assignment of the Executory Contracts and Unexpired Leases (including the Operating Agreements) and any Cure Amount relating thereto, and the procedures set forth therein with regard to any such Cure Amount to satisfy the provisions of section 365 of the Bankruptcy Code and Bankruptcy Rule 6006.

K.      Proper, timely, adequate, and sufficient notice of the Sale Motion, the Sale Hearing, the Sale Transaction, the Carter Bank Settlement, and the Tara Settlement has been provided in accordance with sections 102(1), 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, 9014 and 9019. The notices described in paragraphs A to E of this Section II were good, sufficient and appropriate under the circumstances, and no other or further notice of the Motion, the Sale Hearing, the Sale Transaction, or the assumption, assignment and sale of the Executory Contracts and Unexpired Leases (including the Operating Agreements) is required.

L.      The disclosures made by the Debtor concerning the Sale Motion, the PSA, the Sale Transaction, the Carter Bank Settlement, and the Sale Hearing were good, complete and adequate.

## III.    Good Faith of Purchaser

M.      The Purchaser is not an "insider" of the Debtor, as that term is defined in section 101(31) of the Bankruptcy Code.

N.      The Purchaser is purchasing the Transferred Property in good faith and is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code, and is therefore entitled to the full protection of that provision, and otherwise has proceeded in good faith in all

respects in connection with this proceeding in that, *inter alia*: (a) the Purchaser recognized that the Debtor was free to deal with any other party interested in acquiring the Transferred Property; (b) the PSA was subject to competing offers through a competitive auction process conducted by Ten X; (c) all payments to be made by the Purchaser and other agreements or arrangements entered into by the Purchaser in connection with the Sale Transaction have been disclosed; (d) the Purchaser has not violated section 363(n) of the Bankruptcy Code by any action or inaction; (e) no common identity of directors or controlling stockholders exists between the Purchaser and the Debtor; (f) the Purchaser in no way caused the Chapter 11 Cases; and (g) the negotiation and execution of the PSA and any other agreements or instruments related thereto was at arms' length and in good faith.

## IV.   Highest and Best Offer

O.      Prior to selecting the Purchaser as such, the Debtor solicited offers to acquire the Transferred Property from a wide variety of parties. The Debtor has determined that the PSA is, in its reasonable discretion, the highest and best offer with the highest likelihood of closing. The marketing process and auction conducted by CBRE and Ten-X afforded a full, fair and reasonable opportunity for any person or entity to make a higher or otherwise better offer to purchase the Transferred Property. Such process and auction was duly noticed and conducted in a non-collusive, fair and good faith manner and a reasonable opportunity has been given to any interested party to make a higher and better offer for the Transferred Property.

P.      The consideration provided by the Purchaser under the PSA, including the assumption of the Assumed Liabilities constitutes the highest and best offer for the Transferred Property, and will provide a greater and/or more certain recovery for the Debtor's estates than would be provided by any other available alternative. The Debtor's determination that the PSA

constitutes the best offer for the Transferred Property constitutes a valid and sound exercise of the Debtor's business judgment consistent with its fiduciary duties.

Q.     The PSA represents a fair and reasonable offer to purchase the Transferred Property under the circumstances of this Chapter 11 Case. No other person or entity or group of entities has offered to purchase the Transferred Property for greater and/or more certain economic value to the Debtor's estate than the Purchaser.

R.     Approval of the Sale Motion and the PSA and the consummation of the transactions contemplated therein, are in the best interest of the Debtor, its creditors, its estate and other parties in interest.

S.     The Debtor has demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the Sale Transaction prior to and outside of a plan of reorganization.

**V.     No Fraudulent Transfer; No Successor Liability**

T.     The PSA was not entered into for the purpose of hindering, delaying or defrauding creditors under the Bankruptcy Code or under the laws of the United States, or any state, territory, or possession, or the District of Columbia (including, without limitation, the Uniform Fraudulent Conveyance Act and the Uniform Fraudulent Transfer Act). The consideration provided by the Purchaser pursuant to the PSA is fair and adequate and constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, and any state, territory, possession, or the District of Columbia (including, without limitation, the Uniform Fraudulent Conveyance Act and the Uniform Fraudulent Transfer Act).

U.     By virtue of the consummation of the Sale, (1) the Purchaser is not a continuation of the Debtor or its respective estates, there is no continuity between the Purchaser and the Debtor, there is no common identity between the Debtor and the Purchaser, there is no continuity of

enterprise between the Debtor and the Purchaser, and the Purchaser is not a mere continuation of the Debtor or its estates, (2) the Purchaser is not holding itself out to the public as a continuation of the Debtor or its respective estates, and (3) the Sale does not amount to a consolidation, merger or de facto consolidation or merger of the Purchaser and the Debtor and/or the Debtor's estates. Accordingly, the Purchaser is not and shall not be deemed a successor to the Debtor, for any purpose or under any theory, as a result of the consummation of the Sale contemplated by the PSA.

V.       Notwithstanding the foregoing, no employee of the Debtor as of the Closing who becomes an employee of the Purchaser immediately following the Closing may be considered to have experienced an employment loss for purposes of any statute or contract requiring prior notice and/or payment of severance benefits in the event of employment loss.

**VI.    Validity of Transfer**

W.       The Debtor and the Purchaser each have full power and authority to execute and deliver the PSA and all other documents contemplated thereby, and no further consents or approvals are required for the Debtor or the Purchaser to consummate the transactions contemplated by the PSA, except as otherwise set forth in the PSA.

X.       The Transferred Property constitutes property of the Debtor's estate and title thereto is presently vested in the Debtor's estate within the meaning of section 541(a) of the Bankruptcy Code. The transfer of the Transferred Property to the Purchaser will be as of the Closing Date a legal, valid, and effective transfer of such assets, and vests or will vest the Purchaser with all right, title, and interest of the Debtor to the Transferred Property free and clear of (a) all Liens, (b) all claims, including, without limitation, all "claims" within the meaning of sections 101(5) and 102(2) of the Bankruptcy Code and all interests, encumbrances, rights of setoff, recoupment, netting and deductions (collectively, "**Claims**"), and (c) all liabilities, whether imposed by agreement, understanding, law, equity or otherwise and whether known or unknown, fixed or

contingent or arising prior to or subsequent to the commencement of the Chapter 11 Cases, or individually, the "**Adverse Interests**"), except for (i) any Permitted Exceptions and Assumed Liabilities as defined in the PSA and (ii) Comm 2013's Easement Interests.

## VII.   Section 363(f) Is Satisfied

Y.       The Purchaser would not have entered into the PSA and would not consummate the transactions contemplated thereby (by paying the Purchase Price, the Lien Release Price, which, for the avoidance of doubt shall be no less than the sum of $1,527,620,  and the other payments contemplated by the PSA and assuming the Assumed Liabilities) if the sale of the Transferred Property to the Purchaser, and the assumption, assignment and sale of the Executory Contracts and Unexpired Leases (including the Operating Agreements) to the Purchaser, were not, except (i) as otherwise provided in the PSA with respect to the Assumed Liabilities and Permitted Exceptions and (ii) with respect to the Easement Interests of Comm 2013, free and clear of all Adverse Interests of any kind or nature whatsoever, or if the Purchaser would, or in the future could be liable for any of such Adverse Interests, including, but not limited to, Adverse Interests in respect of the following: (1) all mortgages, deeds of trust and security interests; (2) any pension, welfare, compensation or other employee benefit plans, agreements, practices and programs, including, without limitation, any pension plan of any Debtor; (3) any other employee, worker's compensation, occupational disease or unemployment or temporary disability related claim, including, without limitation, claims that might otherwise arise under or pursuant to (a) the Employee Retirement Income Security Act of 1974, as amended, (b) the Fair Labor Standards Act, (c) Title VII of the Civil Rights Act of 1964, (d) the Federal Rehabilitation Act of 1973, (e) the National Labor Relations Act, (f) the Worker Adjustment and Retraining Act of 1988, (g) the Age Discrimination and Employee Act of 1967 and Age Discrimination in Employment Act, as amended, (h) the Americans with Disabilities Act of 1990, (i) the Consolidated Omnibus Budget

Reconciliation Act of 1985, (j) state discrimination laws, (k) state unemployment compensation laws or any other similar state laws, or (l) any other state or federal benefits or claims relating to any employment with any of the Debtor or any of its respective predecessors; (4) any bulk sales or similar law; (5) any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended; (6) any environmental law(s); and (7) any theories of successor or transferee liability.

Z.      The Debtor may sell the Transferred Property free and clear of all Adverse Interests against the Debtor, its estates or any of the Transferred Property (except for (i) any Assumed Liabilities and Permitted Exceptions under the PSA and (ii) Easement Interests of Comm 2013) because, in each case, one or more of the standards set forth in section 363(f)(1) - (5) of the Bankruptcy Code has been satisfied. Those holders of Adverse Interests against or in the Debtor, its estates or any of the Transferred Property who did not timely object, or who withdrew its objections, to the Sale or the Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code. Those holders of such Adverse Interests who did object (except Comm 2013) fall within one or more of the other subsections of section 363(f) and are adequately protected by having its Adverse Interests, if any, in each instance against the Debtor, its estates or any of the Transferred Property, attach to the net cash proceeds of the Sale Transaction ultimately attributable to the Transferred Property in which such creditor or interest holder alleges an interest, in the same order of priority, with the same validity, force and effect that such creditor or interest holder had prior to the Sale Transaction, subject to any claims and defenses the Debtor and its estate may possess with respect thereto.

11

**VIII.   Assumption and Assignment of the Executory Contracts and Unexpired Leases, Including the Operating Agreements and Rejection of the Franchise Agreements**

AA.     The assumption and assignment of the Executory Contracts and Unexpired Leases, including the Operating Agreements, pursuant to the terms of this Order and the PSA is integral to the PSA and is in the best interests of the Debtor and its estate, creditors, interest holders and other parties in interest, and represents the reasonable exercise of sound and prudent business judgment by the Debtor.

BB.     The amounts set forth on Exhibit B annexed hereto, if any, are the sole amounts necessary under sections 365(b)(1)(A) and (B) and 365(f)(2)(A) of the Bankruptcy Code to cure all monetary defaults and pay all actual pecuniary losses under the Executory Contracts and Unexpired Leases, including the Operating Agreements.

CC.     Pursuant to the terms of the PSA, the Purchaser and/or the Debtor have: (1) cured and/or provided adequate assurance of cure of any defaults existing prior to the Closing Date under any of the Executory Contracts and Unexpired Leases, including the Operating Agreements, within the meaning of section 365(b)(1)(A) of the Bankruptcy Code; and (2) provided compensation or adequate assurance of compensation to any party for actual pecuniary loss to such party resulting from a default prior to the Closing Date under any of the Executory Contracts and Unexpired Leases, including the Operating Agreements, within the meaning of section 365(b)(1)(B) of the Bankruptcy Code, and adequate assurance of future performance under the relevant Executory Contracts and Unexpired Leases within the meaning of sections 365(b)(1)(C), 365(b)(3) (to the extent applicable) and 365(f)(2)(B) of the Bankruptcy Code.

DD.     No default exists in the Debtor's performance under the Executory Contracts and Unexpired Leases (including the Operating Agreements) as of the Closing Date other than the

failure to pay Cure Amounts or defaults that are not required to be cured as contemplated in section 365(b)(1)(A) of the Bankruptcy Code.

## IX.    Compelling Circumstances for an Immediate Sale

EE.    To maximize the value of the Debtor's assets, it is essential that the Sale Transaction occur within the time constraints set forth in the PSA. The consummation of the Sale Transaction is necessary both to preserve and maximize the value of the Debtor's assets for the benefit of the Debtor, its estate, its creditors, and all other parties in interest in the Chapter 11 Cases, and to provide the means for the Debtor to maximize creditor recoveries.

FF.    The consummation of the transaction is legal, valid and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f), 363(m), 365(b) and 365(f), and all of the applicable requirements of such sections have been complied with in respect of the transaction.

## X.    The Settlement with Carter Bank and Tara is in the Best Interests of the Debtor's Estate

GG.    The (i) payment to Carter Bank of the Lien Release Price, (ii) the payment to Tara of the Easement Access Agreement Amount, and (iii) Carter Bank Release was within the sound exercise of the Debtor's business judgment and is in the best interests of the Debtor and its estate. The Carter Bank Settlement and Tara Settlement result in significant value to the Debtor and its estate.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.    The relief requested in the Sale Motion is granted and approved, and the Sale Transaction contemplated thereby and by the PSA is approved as set forth in this Order.

2.      Except for the Comm 2013 Objection, all objections to the Sale Motion or the relief requested therein that have not been withdrawn, waived, or settled as announced to the Court at the Sale Hearing or by stipulation filed with the Court, and all reservations of rights included therein, are hereby overruled on the merits or the interests of such objections have been otherwise satisfied or adequately provided for. For the avoidance of doubt, the Comm 2013 Objection is sustained. Nothing contained in this order shall modify, alter, amend, affect or impair Comm 2013's Easement Interests, and the Sale Transaction and Property shall remain subject in all respects to Comm 2013's interests in the Property under its deed of trust, as set forth more specifically in the Comm 2013 Objection. To the extent any provision of this Order contradicts this paragraph with respect to the Easement Interests of Comm 2013, this paragraph shall control.

3.      The PSA and all other ancillary documents, and all of the terms and conditions thereof, are hereby approved as set forth herein.

4.      Pursuant to section 363(b) of the Bankruptcy Code, the Debtor is authorized, empowered and directed to take any and all actions necessary or appropriate to (a) consummate the Sale of the Transferred Property to the Purchaser pursuant to and in accordance with the terms and conditions of the PSA, (b) Close the Sale Transaction as contemplated in the PSA and this Order, and (c) execute and deliver, perform under, consummate, implement and close fully the PSA, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the PSA and the Sale Transaction, including any other ancillary documents, or as may be reasonably necessary or appropriate to the performance of the obligations as contemplated by the PSA and such other ancillary documents.

5.      This Order shall be binding in all respects upon the Debtor, including the Debtor's estate, all holders of equity interests in any Debtor, all holders of any Claim(s) (whether known or

unknown) against any Debtor, any holders of Adverse Interests against or on all or any portion of the Transferred Property, all Contract Counterparties, the Purchaser and all successors and assigns of the Purchaser, the Hotels and any trustee, if any, subsequently appointed in the Debtor's Chapter 11 Case or upon a conversion to chapter 7 under the Bankruptcy Code of the Debtor's Chapter 11 Case. This Order and the PSA shall inure to the benefit of the Debtor, its estate, its creditors, the Purchaser and its respective successors and assigns.

6.      Any amounts payable by the Debtor under the PSA or any of the documents delivered by the Debtor in connection with the PSA, shall be paid in the manner provided in the PSA without further order of the Bankruptcy Court.   Without limiting the generality of the foregoing, the payment to Carter Bank of the Lien Release Price and the payment to Tara of the Easement Access Agreement Amount is expressly authorized, and the Debtor is directed to remit, or cause to be remitted, the same, without further order of the Bankruptcy Court.

7.      Pursuant to sections 105(a), 363(b), 363(f), 365(b) and 365(f) of the Bankruptcy Code, the Debtor is authorized to transfer the Transferred Property on the Closing Date pursuant to the terms of the PSA. Such Transferred Property shall be transferred to the Purchaser upon and as of the Closing Date and such transfer shall constitute a legal, valid, binding and effective transfer of the Transferred Property and shall be free and clear of all Adverse Interests, except (i) Assumed Liabilities and Permitted Exceptions under the PSA and (ii) Easement Interests of Comm 2013. Upon the Closing, the Purchaser shall take title to and possession of the Transferred Property subject only to the Assumed Liabilities, Permitted Exceptions, and Easement Interests of Comm 2013. Pursuant to section 363(f) of the Bankruptcy Code, the transfer of title to the Transferred Property (specifically including the Hotel, the Operating Agreements, and the Executory Contracts and Unexpired Leases assumed and assigned to the Purchaser) shall, except for Assumed

Liabilities, Permitted Exceptions, and Easement Interests of Comm 2013, be free and clear of all Adverse Interests. Adverse Interests shall attach solely to the net cash proceeds of the Sale Transaction with the same validity, priority, force and effect that they now have as against the Transferred Property, subject to any claims and defenses the Debtor and its estate may possess with respect thereto.

8. Except as expressly provided by the PSA with respect to Assumed Liabilities and Permitted Exceptions, and except with respect to Comm 2013's Easement Interests, all persons and entities holding Adverse Interests in all or any portion of the Transferred Property arising under or out of, in connection with, or in any way relating to the Debtor, the Transferred Property, the operation of the Debtor's business prior to the Closing Date or the transfer of the Transferred Property to the Purchaser, hereby are forever barred, estopped and permanently enjoined from asserting against the Purchaser or its successors or assigns, its property or the Transferred Property, such persons' or entities' Adverse Interests in and to the Transferred Property. On the Closing Date, each creditor (and, the Purchaser, on behalf of each creditor) is authorized to execute such documents and take all other actions as may be deemed by the Purchaser to be necessary or desirable to release Liens or Claims on the Transferred Property, if any, as provided for herein, as such liens or claims may have been recorded or may otherwise exist.

9. A certified copy of this Order may be filed with the appropriate clerk to act to cancel any of the applicable Adverse Interests.

10. If any person or entity which has filed statements or other documents or agreements evidencing Adverse Interests in, all or any portion of the Transferred Property shall not have delivered to the Debtor prior to the Closing Date, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and

easements, and any other documents necessary or desirable to the Purchaser for the purpose of documenting the release of all Adverse Interests (other than Assumed Liabilities, Permitted Exceptions, or Easement Interests of Comm 2013), which the person or entity has or may assert with respect to all or any portion of the Transferred Property, the Purchaser and the Debtor are hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of such person or entity with respect to the Transferred Property.

11.     This Order is and shall be binding upon and govern the acts of all persons and entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal and local officials, and all other persons and entities who may be required by operation of law, the duties of its office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the PSA.

12.     Upon the Closing of the Sale Transaction, the Debtor is authorized and directed to assume and assign the Operating Agreements to the Purchaser under Section 2.1.7 of the PSA, along with any and all other applicable Executory Contracts and Unexpired Leases, free and clear of all Adverse Interests, as described herein. The payment of the applicable Cure Amounts (if any) by the Purchaser or the Debtor, as applicable and as required by the PSA, shall (a) effect a cure of all defaults existing thereunder as of the Closing Date, (b) compensate for any actual pecuniary loss to such Contract Counterparties resulting from such default, and (c) together with the assignment by the Debtor to and the assumption of the Executory Contracts and Unexpired Leases

17

(including the Operating Agreements) by the Purchaser, constitute adequate assurance of future performance thereof. The Debtor shall then have assumed the Executory Contracts and Unexpired Leases and the Operating Agreements and shall have assigned the same to Purchaser. Pursuant to section 365(f) of the Bankruptcy Code, the assignment by the Debtor of the Executory Contracts and Unexpired Leases and the Operating Agreements shall not be a default thereunder. After the payment of the relevant Cure Amounts by the Purchaser or Debtor, as applicable and as required by the PSA, neither the Debtor nor the Purchaser shall have any further liabilities to the Contract Counterparties other than the Purchaser's obligations under the Executory Contracts and Unexpired Leases and Operating Agreements that accrue and become due and payable on or after the Closing Date.

13. To the extent that the Debtor is considered the real party in interest or otherwise has any interest in the Franchise Agreement, the Debtor's Franchise Agreement with La Quinta is rejected, pursuant to 11 U.S.C. §365, without the need for further court order, effective as of closing of the Sale Transaction. Upon rejection, La Quinta shall be entitled but not required to terminate the Franchise Agreement without further order of the Court. The sale pursuant to this Sale Order does not include or otherwise contemplate a transfer, sale or assumption/assignment of the Debtor's Franchise Agreements with La Quinta Franchising LLC ("La Quinta"). Neither this Order nor the PSA shall operate to transfer or confer upon the Purchaser any rights to, or ownership in, the Franchise Agreements, or to otherwise use the protected intellectual property of La Quinta including the La Quinta® Marks and the La Quinta® System, trademarks, service marks, and logos, or to otherwise continue operations as a La Quinta ® guest lodging facility. Any continued operation of the Property as a "La Quinta"® is conditioned upon separate agreement between the Purchaser and La Quinta. The Purchaser may negotiate with La Quinta with respect to continuing

18

operations however, any authority to conduct continued operations is contingent upon the consent of, and an agreement with, La Quinta and/or any applicable related entity, which consent and/or agreement is subject to the sole discretion of La Quinta and/or said related entity or entities.

14.     La Quinta expressly preserves its rights under the Franchise Agreement and applicable law to seek allowance and payment for any unpaid amounts due and owing in connection with the Franchise Agreement, including without limitation, claims pursuant to 11 U.S.C. §503(b)(1)(A), without wavier of any other right La Quinta may possess for non-payment

15.     In the event the Purchaser does not make arrangements with La Quinta for a new franchise agreement, or otherwise reach an agreement with respect to continued operation of the Hotel as a La Quinta property, the Debtor and/or upon demand by La Quinta, the Purchaser shall, at their sole cost and expense and consistent with its obligations under the PSA, satisfy any non-monetary post-termination obligations to La Quinta pursuant to the terms set forth in the Franchise Agreement including, but not limited to, the de-identification of the Facility from its appearance as a "La Quinta"® guest-lodging facility. In the event that the post-termination non-monetary obligations to La Quinta are not performed as set forth in the Franchise Agreement, La Quinta reserves all rights to compel the appropriate parties to perform said obligations in this Court or other court of competent jurisdiction.

16.     Nothing herein shall be deemed as a waiver of La Quinta's rights under the Franchise Agreement, or limit La Quinta to the relief granted herein, or serve to waive, extinguish, or compromise any monetary claims of La Quinta against the Debtor, any guarantors, or other individuals/entities, including but not limited to claims for liquidated damages. The rights, if any, of La Quinta to prosecute an administrative claim, a rejection claim, an unsecured claim and/or any other claim are expressly preserved, except that, consistent with the terms of this Order, La

Quinta shall not seek collection of fees or damages from the Purchaser for any amounts due from the Debtor or incurred by the Debtor in the period prior to the closing of this transaction.

17.     Any provisions in any Executory Contract or Unexpired Lease (specifically including the Operating Agreements) that prohibits or conditions the assignment of the same or allows the party to such Executory Contract or Unexpired Lease (including the Operating Agreements) to terminate, recapture, impose any penalty, condition on renewal or extension or modify any term or condition upon the assignment of such Executory Contract or Unexpired Lease (specifically including the Operating Agreements), constitute unenforceable anti-assignment provisions that are void and of no force and effect. All other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtor and assignment to the Purchaser of the Executory Contracts and Unexpired Leases (including the Operating Agreements) have been satisfied. Upon the Closing, in accordance with sections 363 and 365 of the Bankruptcy Code, the Purchaser shall be fully and irrevocably vested with all right, title and interest of the Debtor under the Executory Contracts and Unexpired Leases, including the Operating Agreements.

18.     Upon the Closing and the payment of the relevant Cure Amounts, if any, the Purchaser shall be deemed to be substituted for the Debtor as a party to the applicable Executory Contracts and Unexpired Leases, including the Operating Agreements, and the Debtor shall be relieved, pursuant to section 365(k) of the Bankruptcy Code, from any further liability under the same.

19.     Upon the payment of the applicable Cure Amounts, if any, the Executory Contracts and Unexpired Leases, including the Operating Agreements, will remain in full force and effect,

and no default shall exist under the same nor shall there exist any event or condition which, with the passage of time or giving of notice, or both, would constitute such a default.

20.     Pursuant to sections 105(a), 363 and 365 of the Bankruptcy Code, all Contract Counterparties are forever barred and permanently enjoined from raising or asserting against the Purchaser any assignment fee, default, breach or claim or pecuniary loss, or condition to assignment, arising under or related to the Executory Contracts and Unexpired Leases (including the Operating Agreements) existing as of the Closing Date or arising by reason of the Closing.

21.     Effective upon the Closing Date and except as otherwise provided by stipulations filed with or announced to the Court with respect to a specific matter or as set forth in the PSA with respect to Permitted Exceptions and Assumed Liabilities, or except with respect to Easement Interests of Comm 2013, all persons and entities are forever prohibited and permanently enjoined from commencing or continuing in any manner any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral or other proceeding against the Purchaser, its successors and assigns, or the Transferred Property, with respect to any (a) Adverse Interests arising under, out of, in connection with or in any way relating to the Debtor, the Purchaser, the Transferred Property, or the operation of the Hotels prior to the Closing of the Sale Transaction, or (b) successor liability, including, without limitation, the following actions: (i) commencing or continuing in any manner any action or other proceeding against the Purchaser, its successors or assigns, assets or properties; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Purchaser, its successors or assigns, assets or properties; (iii) creating, perfecting or enforcing any Adverse Interests against the Purchaser, its successors or assigns, assets or properties; (iv) asserting any setoff, right of subrogation or recoupment of any kind against any obligation due the Purchaser or its successors or assigns; (v)

21

commencing or continuing any action, in any manner or place, that does not comply or is inconsistent with the provisions of this Order or other orders of the Court, or the agreements or actions contemplated or taken in respect thereof; or (vi) revoking, terminating or failing or refusing to renew any license, permit or authorization to operate any of the Transferred Property or conduct any of the businesses operated with the Transferred Property.

22.     Except for the Assumed Liabilities, Permitted Exceptions or as otherwise expressly set forth in the PSA, and except with respect to Easement Interests of Comm 2013, the Purchaser shall not have any liability or other obligation of the Debtor arising under or related to any of the Transferred Property or the PSA or the transactions related thereto. Without limiting the generality of the foregoing, and except for (i) the Assumed Liabilities or Permitted Exceptions provided in the PSA and (ii) Easement Interests of Comm 2013, the Purchaser shall not be liable for any claims or any other Adverse Interests against the Debtor or any of its predecessors or affiliates, and the Purchaser shall have no successor or vicarious liabilities of any kind or character, including, but not limited to, any theory of antitrust, environmental, successor or transferee liability, labor law, *de facto* merger or substantial continuity, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether fixed or contingent, with respect to the Debtor or any obligations of the Debtor arising prior to the Closing Date, including, but not limited to, liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of any of the Transferred Property prior to the Closing. The Purchaser has given substantial consideration under the PSA for the benefit of the holders of any Adverse Interests. The consideration given by the Purchaser shall constitute valid and valuable consideration for the releases of any potential claims of successor liability of the Purchaser, which

releases shall be deemed to have been given in favor of the Purchaser by all holders of Adverse Interests against or interests in the Debtor or any of the Transferred Property.

23.    The transactions contemplated by the PSA are undertaken by the Purchaser without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale Transaction shall not affect the validity of the Sale Transaction (including the assumption and assignment of the Operating Agreements and other Executory Contracts and Unexpired Leases), unless such authorization and such Sale Transaction are duly stayed pending such appeal. The Purchaser is a good faith Purchaser within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to the full protections of section 363(m) of the Bankruptcy Code.

24.    Notwithstanding anything else to the contrary herein, the Carter Bank Settlement is authorized and approved in all respects under Rule 9019, and the Debtor is authorized and directed to enter into and consummate the Carter Bank Settlement.  Upon Closing of the Sale Transaction and Carter Bank's receipt of the Lien Release Price, which, for the avoidance of doubt shall be no less than the sum of $1,527,620, Carter Bank shall release its liens provided for by the Security Instruments in and upon the Transferred Property, and Tara shall withdraw its administrative expense claim and receive a general unsecured claim in the amount of $120,332.25. The Debtor is authorized and directed to withdraw with prejudice the Surcharge Motion upon Closing of the Sale Transaction.  For the avoidance of doubt, this Order shall have a preclusive effect on any actions or claims that the Debtor had, currently has, or may in the future have, against Carter Bank with respect to the Transferred Property.

25.     Additionally, the Debtor is authorized and directed to, within thirty (30) days following Closing and consummation of the Sale Transaction, file a chapter 11 plan and disclosure statement that (i) provides for the Carter Bank Release and (ii) classifies Carter Bank's remaining deficiency claim – *i.e.*, the difference between the amount owed by the Debtor to Carter Bank under the Security Instruments and the ultimate Lien Release Price – as a general unsecured claim, and (iii) classifies Tara's remaining deficiency claim – *i.e.*, the difference between the amount of Tara's administrative expense claim against the Debtor and the amount of the Easement Access Agreement Amount – as a general unsecured claim.

26.     Nothing contained in any plan of reorganization or liquidation, or order of any type or kind entered in (a) these Chapter 11 Cases, (b) any subsequent chapter 7 case into which any such Chapter 11 Case may be converted, or (c) any related proceeding subsequent to entry of this Order, shall conflict with or derogate from the provisions of the PSA or the terms of this Order.

27.     No bulk sales law or any similar law of any state or other jurisdiction applies in any way to the Sale Transaction.

28.     The failure specifically to include any particular provision of the PSA in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the PSA be authorized and approved in its entirety.

29.     The PSA and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto and in accordance with the terms thereof, without further order of the Court.

30.     The Court shall retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order and the PSA, all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to

24

which the Debtor are a party, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale Transaction.

31.    Notwithstanding the possible applicability of Bankruptcy Rules 6004, 6006, 7062, 9014 or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable.

32.    All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

33.    To the extent that this Order is inconsistent with any prior order or pleading with respect to the Sale Motion in these Chapter 11 Cases, the terms of this Order shall govern.


SUBMITTED BY:


/s/ Steven L. Thomas
Steven L. Thomas (WVSB #3738)
Kay Casto & Chaney PLLC
P.O. Box 2031
Charleston, West Virginia 25327
Tel:  (304) 345-8900
Fax:  (304) 345-8909
sthomas@kaycasto.com
   *Counsel for Emerald Grande, LLC*

/s/ Matthew R. Brooks
Matthew Ray Brooks (GA Bar No. 378018)
Harris B. Winsberg, GA Bar No. 770892
Troutman Sanders LLP
Bank of America Plaza
600 Peachtree Street NE, Ste. 3000
Atlanta, GA  30308-2216
Tel:  404.885.3000
   *Counsel for Carter Bank & Trust*


            Inspected by:

/s/ Shari L. Collias
Shari L. Collias, Esq.
Office of the U.S. Trustee
2025 United States Courthouse
300 Virginia Street, E.
Charleston, WV  25301
Shari.Collias@usdoj.gov

/s/ Christopher P. Schueller
Christopher P. Schueller, Esq.
Union Trust Building
501 Grant Street, Suite 200,
Pittsburgh, PA 15219
christopher.schueller@bipc.com
   *Counsel  for  COMM  2013  CCRE12
   Crossings Mall Road LLC*

/s/ David S. Catuogno
David S. Catuogno, Esq.
K&L Gates LLP
One Newark Center, 10th Floor
1085 Raymond Blvd.
Newark, NJ  07102
david.catuogno@klgates.com
*Counsel for La Quinta Franchising LLC*

/s/ Collen C. McCulloch
Colleen C. McCulloch, Esq.
Pullin, Fowler, Flanagan, Brown & Poe
   PLLC
252 George Street
Beckley, WV  25801
cmcculloch@pffwv.com
*Counsel for La Quinta Franchising LLC*

# EXHIBIT A


Congratulations on your winning bid!

**Next Steps**



1. Sign this contract package in DocuSign *within two hours*
2. Submit your Earnest Money Deposit *without delay* using the wire instructions located on the following page
3. Once the wire transfer is complete, send confirmation of your wire transfer to CommercialContracts@Ten-X.com

*IMPORTANT: It is the sender's responsibility to confirm wire instructions with the Escrow Company prior to sending a wire transfer.*

If you have any questions, please refer to the contact information below for the parties involved in this transaction.

**Escrow Company:**

Novare NSS, a division of Fidelity National Title
Maria Mena
320 Commerce Suite 150
Irvine California 92602
714-352-4088
novareescrow@novarenss.com
Maria.Mena@novarenss.com

| Event Item: | 2021-Mar-22 | Property ID: | 1000014279 |
|---|---|---|---|
| Property Name: | La Quinta Inn & Suites - Elkview, WV | | |
| Property Address: | 101 Crossings Mall Road, Elkview, WV 25071 | | |

| Buyer: | Pritpal Dhindsa and Harbhajan Ghotra, as individuals | |
|---|---|---|
| Address: | 493 Elks Dr Dickinson, ND 58601 | |
| Phone: | 206-946-2392/503-998-5941  Email: | pritpal.dhindsa@hotmail.com / hghotra@msn.com |

| Buyer's Designated Rep: | None | |
|---|---|---|
| Phone: | Email: | |

| Buyer's Counsel Firm: | | |
|---|---|---|
| Buyer's Counsel Name: | None | |
| Phone: | Email: | |

| Buyer's Brokerage Firm: | None | |
|---|---|---|
| Buyer's Broker of Record: | None | |
| Phone: | Email: | |
| Buyer's Agent (Main Contact): | None | |
| Phone: | Email: | |

| Seller: | Emerald Grande, LLC, a Georgia limited liability company | |
|---|---|---|
| Seller's Main Point of Contact: | William Abruzzino | |
| Phone: | 304-391-8811  Email: | sthomas@kaycasto.com |

| Listing Brokerage Firm: | CBRE - Columbus | CBRE - Columbus | CBRE |
|---|---|---|---|
| Listing Agent (Main Contact): | Eric Belfrage | Michael Shirey | Nicole Kostluk |
| Phone: | 614-226-9349 | 614-430-5059 | 614-430-5075 |
| Email: | eric.belfrage@cbre.com | michael.shirey@cbre.com | nicole.kostluk@cbre.com |

*Please note that the Participation Terms remain in full force and effect.*

EXHIBIT A

DocuSign Envelope ID: 46E4C99D-1F67-4814-9497-F15440BE7A17

# NOVARE
NATIONAL SETTLEMENT SERVICE

FIDELITY NATIONAL TITLE GROUP

## !!!!!!!IMPORTANT! IMPORTANT! IMPORTANT!!!!!!

**PLEASE BE SURE YOU ARE WIRING FUNDS TO THE CORRECT BANK AND ACCOUNT NUMBER BASED ON THE STATE THAT THE PROPERTY YOU ARE PURCHASING IS LOCATED!!!!**

### WIRE TRANSFER INSTRUCTIONS

BANK NAME AND ADDRESS:   Wells Fargo Bank, N.A. 464 California Street, San Francisco, CA 94104
ABA/ROUTING NO.:   121000248
ACCOUNT NAME: ADDRESS:   Novare National Settlement Service
320 Commerce #150, Irvine, CA 92602
See chart below (based on property state)

| PROPERTY STATE: | ACCOUNT NUMBER: |
|---|---|
| ARIZONA | |
| FLORIDA | |
| OHIO | |
| TEXAS | |
| VIRGINIA | |
| ALABAMA, ALASKA, ARKANSAS, CONNECTICUT, IDAHO, MASSACHUSETTS, NEW MEXICO, NEVADA, OREGON, SOUTH DAKOTA, UTAH, & WYOMING | |
| ALL OTHER STATES (except CA & MD) | |

### CALIFORNIA WIRE TRANSFER INSTRUCTIONS

BANK NAME AND ADDRESS:   City National Bank 525 South Flower Street, Los Angeles, CA 90071
ABA/ROUTING NO.:   122016066
ACCOUNT NAME:   Novare National Settlement Service
ACCOUNT NUMBER:

### MARYLAND WIRE TRANSFER INSTRUCTIONS

BANK NAME AND ADDRESS:   Bank of America 1850 Gateway Blvd. Concord, CA 94520
ABA/ROUTING NO.:   026009593
ACCOUNT NAME: ACCOUNT   Novare National Settlement Service, LLC
NUMBER:

**Please include the buyer's name and property address when wiring funds. If you need to call to verify wiring instructions, please contact Novare at 714-352-4088 and ask for Mindi Powers.**

Buyer:   Pritpal Dhindsa and Harbhajan Ghotra, as individuals

AA   101 Crossings Mall Road, Elkview, WV 25071

ELECTRONIC/ACH TRANSFERS WILL NOT BE ACCEPTED. FUNDS MUST BE WIRED. FAILURE TO WIRE FUNDS MAY DELAY THE CLOSING.

Effective 01/31/2019

EXHIBIT A

DocuSign Envelope ID: 46E4C99D-1F67-4814-9497-F15440BE7A17

ITEM NO. 1000014279

# ADDENDUM TO
# PURCHASE AND SALE AGREEMENT

**Seller:** Emerald Grande, LLC, a Georgia limited liability company

**Buyer:** Pritpal Dhindsa and Harbhajan Ghotra, as individuals

**Property Address:** 101 Crossings Mall Road, Elkview, WV 25071

This Addendum to Purchase and Sale Agreement ("Addendum"), dated effective as of _____, amends and supplements that certain purchase and sale agreement ("Agreement") between Buyer and Seller for the purchase and sale of the real property identified above.  If there is a conflict between the terms of the Agreement and the terms of this Addendum, the terms of this Addendum shall control. Any capitalized terms not otherwise defined herein shall have the meanings set forth in the Agreement.  The Agreement is hereby amended as follows:

1. SELLER'S MEMBERSHIP/FRANCHISE AGREEMENT; BUYER'S APPLICATION FOR NEW AGREEMENT. Buyer acknowledges that the Property is subject to that certain agreement made by and between La Quinta  ("Licensor") and Seller, dated as of Aug. 21, 2012 ("Existing Membership Agreement"). Buyer has the right, but not any obligation, to apply for a new Franchise Agreement with La Quinta, or any other franchisor, but in any event Buyer's inability to obtain a new franchise agreement with La Quinta or any other franchisor, or otherwise assume and assign the existing La Quinta franchise agreement, will not relieve Buyer of its obligations to consummate the closing of the sale.  Buyer shall promptly deliver to Seller copies of any correspondence between Buyer and Licensor relating to any such application.

2. MEMBERSHIP/FRANCHISE APPROVAL NOT A CLOSING CONDITION. Buyer hereby acknowledges and agrees that Buyer's obligations under the Agreement are not subject to or conditioned upon Buyer's ability to obtain a New Membership Agreement with La Quinta or any other franchisor prior to the Closing Date.

3. ASSUMPTION OF SELLER'S OBLIGATIONS UNDER MEMBERSHIP/FRANCHISE AGREEMENT. Notwithstanding any provision to the contrary in the Agreement, if Buyer is unable to enter into a New Membership Agreement prior to the Closing Date Buyer shall, at its sole cost and expense, cause all signs, equipment, and other items containing the words, trademark or insignia of Licensor on the Property to be removed, and take such other measures as required under the Membership Agreement or otherwise required by Licensor as a result of the sale of the Property to Buyer. Buyer agrees to indemnify and hold Seller harmless from and against any and all losses, claims, damages, liabilities and expenses (including reasonable attorneys' fees and costs) arising from any failure by Buyer to comply with Buyer's obligations under this Section. This Section shall survive the Closing.

**SELLER:**

Emerald Grande, LLC, a Georgia limited liability company

**BUYER:**

Pritpal Dhindsa and Harbhajan Ghotra, as individuals

_____
_William Abruzzino_

Printed Name:  William Abruzzino

Title (if applicable):  Managing Member

_____

Printed Name: _____

Title (if applicable): _____

Dated:  3-25-2021

DocuSigned by:

_Pritpal Dhindsa_

13DA470A81B74D5...

Printed Name:  Pritpal Dhindsa

Title (if applicable):  Harbhajan Ghotra

DocuSigned by:

_Harbhajan Ghotra_

78D4A07EEE92494...

Printed Name: _____

Title (if applicable): _____

Dated:  3/25/2021      3/25/2021

Addendum To Purchase Agreement (Rev. 01/01/2021)
Copyright © 2021 Ten-X, LLC. All rights reserved.

EXHIBIT A

# THIRD PARTY INTEREST ADDENDUM

**Seller:** Emerald Grande, LLC, a Georgia limited liability company

**Buyer:** Pritpal Dhindsa and Harbhajan Ghotra, as individuals

**Property Address:** 101 Crossings Mall Road, Elkview, WV 25071

This Third Party Interest Addendum ("Addendum"), dated effective as of _____, amends and supplements that certain purchase and sale agreement ("Agreement") between Buyer and Seller for the purchase and sale of the real property identified above. If there is a conflict between the terms of the Agreement and the terms of this Addendum, the terms of this Addendum shall control. Any capitalized terms not otherwise defined herein shall have the meanings set forth in the Agreement.

1.    **THIRD PARTY INTEREST.**   The transaction contemplated by the Agreement is subject to, and contingent upon, waiver or termination of the applicable third party interest checked below ("Third Party Interest") on or before the Closing Date:

☐   **Right of First Refusal:**  A right of first refusal held by _____ to purchase the Property pursuant to the terms of an agreement with Seller entered into prior to the Agreement effective date.

☒   **Court Approval:** A court approving the sale of the Property pursuant to the Agreement.

☐   **Lender Approval:** Seller's lender approving the sale of the Property pursuant to the Agreement.

☐   **Other:** _____
_____

In the event the holder of a Third Party Interest exercises its right to purchase or reject the sale of the Property, Seller shall immediately notify Buyer in writing, and the Agreement shall automatically terminate.  Upon such termination, closing agent shall return the earnest money deposit to Buyer, and Seller shall be solely responsible for all cancellation fees of closing agent and title insurance company.

**SELLER:**
Emerald Grande, LLC, a Georgia limited liability company

**BUYER:**
Pritpal Dhindsa and Harbhajan Ghotra, as individuals

Printed Name:  William Abruzzino
Title (if applicable):  Managing Member

Printed Name: _____
Title (if applicable): _____

Dated: 3-25-2021

DocuSigned by:
Pritpal Dhindsa
13DA470A81B74D5...

Printed Name:  Pritpal Dhindsa
Title (if applicable): _____

DocuSigned by:
Harbhajan Ghotra
Printed Name: 2494 Harbhajan Ghotra
Title (if applicable): _____

Dated:  3/25/2021    3/25/2021

Third Party Interest Addendum (Rev. 01/01/2019)
Copyright © 2019 Ten-X, Inc.  All rights reserved.

EXHIBIT A

DocuSign Envelope ID: 46E4C99D-1F67-4814-9497-F15440BE7A17

# ADDENDUM TO
# PURCHASE AND SALE AGREEMENT

**Seller:** Emerald Grande, LLC, a Georgia limited liability company

**Buyer:** Pritpal Dhindsa and Harbhajan Ghotra, as individuals

**Property Address:** 101 Crossings Mall Road, Elkview, WV 25071

This Addendum to Purchase and Sale Agreement ("Addendum"), dated effective as of _____, amends and supplements that certain purchase and sale agreement ("Agreement") between Buyer and Seller for the purchase and sale of the real property identified above. If there is a conflict between the terms of the Agreement and the terms of this Addendum, the terms of this Addendum shall control. Any capitalized terms not otherwise defined herein shall have the meanings set forth in the Agreement. The Agreement is hereby amended as follows:

1.     CONDITION OF THE PROPERTY:     PROPERTY SOLD "AS IS".  BUYER ACKNOWLEDGES AND AGREES THAT THE PURCHASE OF THE PROPERTY SHALL BE ON AN "AS IS", "WHERE IS", "WITH ALL FAULTS" BASIS.  IN ADDITION TO, AND WITHOUT LIMITATION OF THE FOREGOING, SELLER MAKES NO WARRANTY, EXPRESS OR IMPLIED, AS TO THE MERCHANTABILITY, TITLE, MARKETABILITY, FITNESS, OR SUITABILITY FOR A PARTICULAR PURPOSE OF THE PROPERTY OR ANY COMPONENT THEREOF, AND THE TRANSFERRED PROPERTY AND EACH COMPONENT THEREOF ARE SOLD IN AN "AS IS", "WHERE IS" CONDITION, WITH ALL FAULTS.

2.     Seller's Closing Deliverables:  Seller will deliver a limited warranty deed in form and substance customary in bankruptcy sales, in the form attached hereto, conveying the real property to Buyer, subject to the permitted exceptions

3.     Bankruptcy Court Approval: Seller is currently a chapter 11 debtor in that certain bankruptcy case pending in the United States Bankruptcy Court for the Northern District of West Virginia (the "Bankruptcy Court"), under case number 1:17-bk-00021 (the "Bankruptcy Case"). The Purchase and Sale Agreement with Joint Closing Instructions ("PSA"), including any amendments or addendums thereto, and the closing of the sale of the Property to Buyer is subject to prior approval by the Bankruptcy Court.

4.     Title to the Property: as a matter of clarification and not limitation to the "as is, where is" nature of the sale of the Property, Purchaser expressly acknowledges and agrees that permitted exceptions to title include that certain Easement and Right of Way dated February 3, 2020 and of record in the Office of the Kanawha County Clerk and that certain Confirmatory Easement and Right of Way Agreement dated February 3, 2020 and of record in the aforesaid office (collectively, the "Easement Agreements") and purchaser shall have no right to submit any title notice, terminate the Agreement, delay closing or take any other action with respect to such Easement Agreements or any matters pertaining to or arising out of the such Easement Agreements (including, without limitation, the failure of the mortgagee of the grantor under the Easement Agreements to subordinate its security interest in the burdened property to the terms of the Easement Agreements).  Buyer shall reimburse Seller at closing for all costs incurred in connection with obtaining the following reports: (i) title report, (ii) Phase 1 Environmental Site Assessment, (iii) Property Condition Assessment.

5.     Closing Cost Allocations: Buyer shall bear sole responsibility and pay all closing costs, transfer taxes, escrow agent fees and all other fees and expenses associated with the sale of the Property, excepting only fees owing to CBRE as broker to the Seller.

*(signatures on following page)*

Addendum To Purchase Agreement (Rev. 01/01/2021)
Copyright © 2021 Ten-X, LLC.  All rights reserved.

EXHIBIT A

DocuSign Envelope ID: 46E4C99D-1F67-4814-9497-F15440BE7A17

**SELLER:**

Emerald Grande, LLC, a Georgia limited liability company

**BUYER:**

Pritpal Dhindsa and Harbhajan Ghotra, as individuals

Printed Name: William Abruzzino
Title (if applicable): Managing Member

Printed Name:
Title (if applicable):

Dated: 03-25-2021

DocuSigned by:
Pritpal Dhindsa
13DA470A81B74D5...
Printed Name: Pritpal Dhindsa
Title (if applicable):

DocuSigned by:
Harbhajan Ghotra
Printed Name: Harbhajan Ghotra
Title (if applicable):

Dated: 3/25/2021    3/25/2021

Copyright © 2021 Ten-X, LLC. All rights reserved.

EXHIBIT A

DocuSign Envelope ID: 46E4C99D-1F67-4814-9497-F15440BE7A17

‟ OF DEED

**THIS DEED,** made this _____ day of _____, 2020, by and among **EMERALD GRANDE, LLC,** a Georgia limited liability company, party of the first part or "Grantor," and _____**[Buyer]**, party of the second part or "Grantee;"

**WITNESSETH:** That for and in consideration of the sum of Ten Dollars ($10.00), cash in hand paid, and other good and valuable considerations, the receipt and sufficiency of all of which are hereby acknowledged, the party of the first part does hereby **GRANT AND CONVEY** unto the party of the second part all of that certain lot or parcel of land, together with the improvements thereon and the appurtenances thereunto belonging, situate on the Waters of Little Sandy Creek, in Elk District, Kanawha County, West Virginia, more particularly described as follows:

> BEGINNING at a ½ inch by 36 inch Reinforcing Rod with a yellow plastic cap stamped "SLS Inc., 462-5634" hereinafter referred to as a Rebar, set, corner to Interstate Properties, Inc. from which a ½ inch Rebar, set at a corner of Parcel 2, bears S. 62-42-20 E. at 72.03 feet; thence with said Parcel S. 62-42-20 E. 27.22 feet to a point, corner to Parcel 2; thence with a new line along Parcel 2 S. 18-49-00 W. 221.88 feet to a point; thence N. 84-18-40 W 65.49 feet to a railroad spike, set; thence N. 27-30-40 E.25.30 feet to a ½ inch rebar, set, corner to 84 Lumber, Inc.; thence with said 84 Lumber, Inc. for the next five (5) lines; N. 66-47-40 W. 146.79 feet to a point; thence N. 76-38-30 W. 64.76 feet to a railroad spike, set; thence N. 39-16-40 E. 19.97 feet to a railroad spike, set; thence N. 23-39-40 E. 106.39 feet to a ½ inch rebar, found at a previous common corner of Moles & Arthur; thence N. 23-39-40 E. 201.26 feet to a rebar, set, corner to said 84 Lumber tract and in a line of Interstate Properties tract; thence S. 42-45-20 E. 240.78 feet to the place of beginning, **containing 1.558 acres, more or less**, as surveyed by Smith Land Surveying, Inc. in August, 1999, and as shown on the Revised Sit Plan and Plat of As-built Survey of The Crossings of Elkview dated October 7, 1998, and last revised September 1, 1999.

And being all the same property conveyed to Emerald Grande, LLC, a Georgia limited liability company, by Emerald Coast Hospitality, LLC, a Georgia limited liability company by

EXHIBIT A

DocuSign Envelope ID: 46E4C99D-1F67-4814-9497-F15440BE7A17

deed dated October 1, 2008, and recorded in the Office of the Clerk of the County Commission

of Kanawha County, West Virginia, in Deed Book 2730 at page 152.

Without limiting the generality of the appurtenances conveyed by this deed, this conveyance includes all of Grantor's right, title and interest in and to the rights, easements and rights of way granted in the following instruments:

1.     That certain Confirmatory Easement and Right of Way, dated February 5, 2020, by and among TARA RETAIL GROUP, LLC, a Georgia limited liability company, as Grantor, and EMERALD GRANDE, LLC, a Georgia limited liability company, as Grantee, of record in the Office of the Clerk of the County Commission of Kanawha County, West Virginia, in Deed Book 3053 at page 813.

2.     That certain Easement and Right of Way, dated February 5, 2020, by and among TARA RETAIL GROUP, LLC, a Georgia limited liability company, as Grantor, and EMERALD GRANDE, LLC, a Georgia limited liability company, as Grantee, of record in said Clerk's office in Deed Book 3053 at page 796.

This conveyance is subject to the matters set forth on Exhibit A attached hereto (the "Permitted Exceptions").

Grantor is a debtor in a chapter 11 bankruptcy case (case no. Case No. 1:17-bk-00021) pending in the United States Bankruptcy Court for the Northern District of West Virginia (the "Bankruptcy Court"). The Property is being conveyed by Grantor to Grantee free and clear of all liens, claims and interests pursuant to the *Order (A) Approving The Sale Procedures; (B) Approving Form And Manner Of Notices; (C) Approving Form Of Purchase And Sale Agreement; (D) Scheduling Hearing To Consider Final Approval Of Sale, Including Rejection Or Assumption And Assignment Of Related Executory Contracts And Unexpired Leases And Settlement With Carter Bank & Trust; (E) Authorizing Sale Of The Transferred Property In Connection With The Elkview Hotel Free And Clear Of All Liens, Claims, Encumbrances, And Interests; And (F) Granting Related Relief*, entered August 13, 2019 [Docket No. 678] (the "Sale Order").

EXHIBIT A

DocuSign Envelope ID: 46E4C99D-1F67-4814-9497-F15440BE7A17

Subject to the foregoing Permitted Exceptions and subject further to the lien of the 2020 real property taxes, which taxes are to be prorated between the parties hereto on a calendar year (January 1 - December 31) basis as of the date of delivery of this deed, the party of the first part **WARRANTS SPECIALLY** the property hereby conveyed.

**DECLARATION OF RESIDENCY**: Under the penalties of perjury, the party of the first part declares that it is a resident entity as defined in W. Va. Code § 11-21-71b and intends this declaration to satisfy the requirements thereof.

**DECLARATION OF CONSIDERATION:** The party of the first part does hereby declare that the total consideration paid for the property hereby conveyed is $_____.

**IN WITNESS WHEREOF**, Emerald Grande, LLC, a manager-managed Georgia limited liability company, has caused its corporate name to be affixed hereto by its duly authorized manager.

**EMERALD GRANDE, LLC**, a Georgia limited
liability company

By: _____
     William Abruzzino

Its: Manager

[Acknowledgment page follows]

3

EXHIBIT A

DocuSign Envelope ID: 46E4C99D-1F67-4814-9497-F15440BE7A17

STATE OF _____,

COUNTY OF _____, to wit:

I do hereby certify that William Abruzzino, the Manager of Emerald Grande, LLC, a manager-managed Georgia limited liability company, whose name is signed to the writing above, has this day acknowledged before me the said writing to be the act and deed of the said company.

Given under my hand this _____ day of _____, 2020.

My commission expires_____.


_____
NOTARY PUBLIC



THIS INSTRUMENT WAS PREPARED BY JONATHAN NICOL, ATTORNEY-AT-LAW, KAY CASTO & CHANEY PLLC, P.O. BOX 2031, CHARLESTON, WV 25327, WITHOUT THE BENEFIT OF A TITLE EXAMINATION CONDUCTED BY KAY CASTO & CHANEY PLLC AND NEITHER THE PREPARER NOR KAY CASTO & CHANEY PLLC BY THE PREPARATION OF THIS INSTRUMENT MAKE ANY EXPRESS OR IMPLIED WARRANTIES, REPRESENTATIONS, OR AFFIRMATIONS OF ANY KIND, NATURE, OR CHARACTER, INCLUDING, WITHOUT LIMITATION, WARRANTIES, REPRESENTATIONS, OR AFFIRMATIONS RELATING TO THE QUALITY OF TITLE, THE NATURE OF TITLE, POSSESSION, QUIET ENJOYMENT, MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, THE CONDITION OF THE PROPERTY, OR ACCESS TO THE PROPERTY.

EXHIBIT A

DocuSign Envelope ID: 46E4C99D-1F67-4814-9497-F15440BE7A17

## HOTEL AND PERSONAL PROPERTY ADDENDUM AND BILL OF SALE

**Seller:** Emerald Grande, LLC, a Georgia limited liability company

**Buyer:** Pritpal Dhindsa and Harbhajan Ghotra, as individuals

**Property Address:** 101 Crossings Mall Road, Elkview, WV 25071

This Hotel and Personal Property Addendum and Bill of Sale ("Addendum"), dated effective as of _____, amends and supplements that certain purchase and sale agreement ("Agreement") between Buyer and Seller for the purchase and sale of the real property identified above. If there is a conflict between the terms of the Agreement and the terms of this Addendum, the terms of this Addendum shall control. Any capitalized terms not otherwise defined herein shall have the meanings set forth in the Agreement. The terms of this Addendum shall survive the Closing.

1. **HOTEL PRORATIONS.** Without limiting the generality of the proration provisions of the Agreement:

   (A) Accounts Receivable from Guests. As of 12:01 p.m. on the date of Closing, Seller shall cause to be compiled a list of all accounts receivable from guests then occupying the hotel at the Property ("Hotel"), including, without limitation, room charges, telephone charges, room service charges, if any, and other similar charges (collectively, "Room Ledger Accounts"). Buyer shall own and have the right to collect the Room Ledger Accounts after Closing, provided that Buyer shall promptly pay to Seller the amount of all Room Ledger Accounts received by Buyer after Closing to the extent attributable to charges incurred prior to 12:01 p.m. on the date of Closing. All accounts receivable from guests previously occupying or using the Hotel which are not included in the Room Ledger Accounts shall remain the property of Seller, and Seller shall be entitled to collect the same for its own account.

   (B) Hotel Room/Bed Taxes. Seller shall be responsible for all state, county and local hotel room or bed taxes for the Hotel to the extent incurred prior to the date of Closing. Buyer shall be responsible for all state, county and local hotel room or bed taxes for the Hotel to the extent incurred on and after the date of Closing.

   (C) Deposits for Advance Bookings. All deposits received by Seller for reservations or agreements made in the ordinary course of business prior to the Closing for use of Hotel rooms, meeting rooms or other Hotel services after Closing ("Advance Bookings") shall be credited to Buyer at Closing. Buyer assumes all of Seller's obligations with respect to Advance Bookings and shall indemnify, defend and hold harmless Seller from any claims relating thereto.

   (D) Petty Cash. All petty cash and all cash register balances and accrued vending machine commissions on the day of Closing shall remain the property of Seller.

2. **PERSONAL PROPERTY.** Despite anything to the contrary in the Agreement, the term "Property" as used in the Agreement shall also include all items of personal property owned by Seller located on and used exclusively in connection with the ownership, use, operation or maintenance of the Property ("Personal Property") (provided, however, that no portion of the Purchase Price shall be allocated to the Personal Property).

3. **BILL OF SALE.** Upon Closing (but in no event before Closing), the following Bill of Sale shall immediately become effective without the need for any further action on the part of Seller or Buyer:

### Bill of Sale

Effective as of the date of Closing, for valuable consideration, the receipt and adequacy of which are hereby acknowledged, Seller hereby conveys to Buyer, and Buyer hereby accepts from Seller, all of Seller's right, title and interest in and to the Personal Property. SUCH CONVEYANCE AND ACCEPTANCE ARE MADE AS-IS, WITH ALL FAULTS, AND WITHOUT ANY REPRESENTATION OR WARRANTY WHATSOEVER, EXPRESS OR IMPLIED OR BY OPERATION OR LAW, INCLUDING WITHOUT LIMITATION, ANY REPRESENTATION OR WARRANTY AS TO TITLE, MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. This Bill of Sale shall extend to, be binding upon and inure to the benefit of the parties hereto, their respective successors, heirs and assigns.

*(Signatures on Following Page)*

EXHIBIT A

**SELLER:**

**BUYER:**

Emerald Grande, LLC, a Georgia limited liability company

Pritpal Dhindsa and Harbhajan Ghotra, as individuals

Printed Name: William Abruzzino

Title (if applicable): Managing Member

Printed Name: 

Title (if applicable): 

Dated: 3·25·2021

Printed Name: Pritpal Dhindsa

Title (if applicable): 

Printed Name: Harbhajan Ghotra

Title (if applicable): 

Dated: 3/25/2021      3/25/2021

EXHIBIT A

DocuSign Envelope ID: 46E4C99D-1F67-4814-9497-F15440BE7A17

# PURCHASE AND SALE AGREEMENT WITH JOINT CLOSING INSTRUCTIONS

Seller agrees to sell the Property to Buyer, and Buyer agrees to purchase the Property from Seller, in accordance with the terms of this Purchase and Sale Agreement with Joint Closing Instructions ("**Agreement**"). This Agreement is effective as of the date Seller signs this Agreement ("**Effective Date**").

1. **KEY TERMS.**

   (A) <u>Seller</u>: Emerald Grande, LLC, a Georgia limited liability company
   phone number: 304-391-8811   email address: sthomas@kaycasto.com
   mailing address: PO Box 190, Bonita Springs, FL 34133

   (B) <u>Buyer</u>: Pritpal Dhindsa and Harbhajan Ghotra, as individuals
   phone number: 206-946-2392 / 503-998-5941   email address: pritpal.dhindsa@hotmail.com / hghotra@msn.com
   mailing address: 493 Elks Dr Dickinson, ND 58601

   (C) <u>Purchase Price</u>: $2,652,250.00   (which equals Buyer's offer price of $2,575,000.00   plus a Ten-X Transaction Fee of $77,250.00   ).

   (D) <u>Earnest Money Deposit</u>: $265,225.00   (if blank, then 10% of the Purchase Price, but no less than $50,000 or more than $1,000,000).

   (E) <u>Property</u>: Address: 101 Crossings Mall Road, Elkview, WV 25071   as legally described on <u>Exhibit A</u>, including all permanent improvements thereon (but excluding any personal property unless specifically identified by addendum or amendment to this Agreement).

   (F) <u>Closing Date</u>: 45 calendar days after the Effective Date   (if blank, then (i) 30 calendar days after the Effective Date). If the Closing Date falls on a weekend or a state or federally recognized holiday, the Closing Date shall be the next business day.

   (G) <u>Closing Agent</u>: Novare NSS, a division of Fidelity National Title   contact: Maria Mena __
   address: 320 Commerce Suite 150   Irvine California 92602   phone number: 714-352-4088
   email address: novareescrow@novarenss.com   Maria.Mena@novarenss.com   .

   (H) <u>Title Insurance Company</u>: Novare NSS, a division of Fidelity National Title   .

   (I) <u>Closing Cost Allocations</u>: As described in the Section below entitled "Closing Cost Allocations".

2. **EARNEST MONEY DEPOSIT.** Buyer must deposit the Earnest Money Deposit with Closing Agent on or before 5:00 PM in the time zone where the Property is located on the first business day after Seller countersigns this Agreement. The Earnest Money Deposit is non-refundable except as set forth in this Agreement, and may be applied towards the amounts payable by Buyer under this Agreement. The escrow ("**Escrow**") for the purchase of the Property shall be opened upon Closing Agent's receipt of the Earnest Money Deposit and a fully-signed copy of this Agreement.

3. **CLOSING.** The transactions contemplated by this Agreement shall be consummated ("**Close**" or "**Closing**") on or before the Closing Date.

4. **CLOSING DELIVERIES.**

   (A) <u>Seller's Deliveries</u>. On or before the Closing Date, Seller shall deliver the following to Closing Agent ("<u>Seller's Deliveries</u>"):

      (i) The transfer deed warranting against title defects arising by, through or under Seller (in the form customarily used for similar transactions in the state where the Property is located) ("<u>Deed</u>") signed by Seller and acknowledged in accordance with the laws of the state in which the Property is located.

      (ii) A Non-Foreign Transferor Declaration signed by Seller, or evidence reasonably acceptable to Closing Agent and Buyer that Seller is exempt from the withholding requirements of the Foreign Investment in Real Property Tax Act (FIRPTA), Internal Revenue Code Section 1445.

      (iii) A counterpart of the "Settlement Statement" (defined below) signed by Seller.

      (iv) A counterpart of the assignment and assumption of leases and contracts substantially in the form attached as <u>Exhibit B</u> ("<u>Assignment of Leases and Contracts</u>") signed by Seller.

      (v) Any and all other instruments reasonably required by Closing Agent or otherwise necessary to Close the transactions contemplated by this Agreement.

EXHIBIT A

Case 1-18-cr-98021 Doc 315 Filed 04/02/21 Entered 04/02/21 13:59:53 Page 41 of 64

(B) **Buyer's Deliveries.** On or before the Closing Date, Buyer shall deliver the following to Closing Agent ("**Buyer's Deliveries**"):

   (i) An amount in immediately available "good funds" equal to the Purchase Price (less the Earnest Money Deposit already deposited with Closing Agent), plus Buyer's share of closing costs, prorations and expenses as set forth in this Agreement.

   (ii) A counterpart of the Settlement Statement signed by Buyer.

   (iii) A counterpart of the Assignment of Leases and Contracts signed by Buyer.

   (iv) Any and all other instruments reasonably required by Closing Agent or otherwise necessary to Close the transactions contemplated by this Agreement.

**5. CONDITIONS PRECEDENT TO CLOSING.**

(A) **Seller's Conditions.** Seller's obligation to Close is conditioned upon the following:

   (i) All representations and warranties of Buyer in this Agreement shall have been true in all material respects as of the Effective Date.

   (ii) Buyer shall have performed in all material respects all covenants and obligations required to be performed by Buyer on or before the Closing Date.

(B) **Buyer's Conditions.** Buyer's obligation to Close is conditioned upon the following:

   (i) All representations and warranties of Seller in this Agreement shall have been true in all material respects as of the Effective Date.

   (ii) Seller shall have performed in all material respects all covenants and obligations required to be performed by Seller on or before the Closing Date.

   (iii) Title Insurance Company is irrevocably committed to issue to Buyer an owner's title insurance policy covering the Property with standard coverage customary in the state where the Property is located, showing liability in the amount of the Purchase Price and showing insurable title to the Property vested in Buyer, subject only to the following: (a) Title Insurance Company's standard exceptions; (b) liens for all current general and special real property taxes and assessments not yet due and payable; (c) liens of supplemental taxes, if any assessed; (d) any facts not shown by public records that an accurate survey and/or a personal inspection of the Property would have disclosed; (e) the mortgage/deed of trust/deed to secure debt lien in connection with any Buyer financing; (f) any laws, regulations, or ordinances regarding the use, occupancy, subdivision, or improvement of the Property, or the effect of any non-compliance with or any violation thereof; (g) rights of existing tenants and/or occupants of the Property, if any; (h) covenants, restrictions, easements, and other matters that do not materially impair the value or use of the Property; (i) non-monetary encumbrances disclosed to Buyer in writing prior to entering into this Agreement; and (j) any other matter for which Title Insurance Company agrees to provide insurance at no additional cost to Buyer.

(C) **Duty to Cooperate in Good Faith to Resolve.** Despite anything to the contrary in this Section, if either party learns that a closing condition is unlikely to be satisfied, such party shall promptly notify the other party, and both parties shall cooperate in good faith to fairly and promptly resolve the matter, and the party whose closing condition was not satisfied shall not be relieved of its obligation to Close unless (i) the other party fails to cooperate in good faith, (ii) fair and prompt resolution is not reached after the parties have cooperated in good faith, or (iii) fair and prompt resolution of the matter on or before the Closing Date would be impracticable.

(D) **Waiver of Conditions.** Either party may waive its respective closing conditions in its sole discretion. By proceeding to Closing, each party waives its respective closing conditions and irrevocably releases the other party from any liability arising from any facts known by such waiving party that would otherwise have resulted in a failure of a closing condition.

**6. CLOSING INSTRUCTIONS TO CLOSING AGENT.** At Closing, Closing Agent is irrevocably instructed to do the following:

(A) Record the Deed.

(B) Pay all fees, costs, deed and transfer taxes for the sale of the Property which are required to be paid by Seller and Buyer under this Agreement, the portion of any fees charged by Closing Agent which are payable by Seller and Buyer (if any) and other expenses relating to the sale of the Property which are required to be paid by Seller and Buyer.

(C) Pay to Seller the balance of the Purchase Price and any other funds remaining after Closing.

EXHIBIT A

Seller and Buyer acknowledge that Closing Agent shall have no liability in connection with its activity as Closing Agent except to the extent of Closing Agent's gross negligence, willful misconduct, or willful disregard of the terms of this Agreement.

## 7. COSTS AND PRORATIONS.

(A) <u>Pre-Closing Costs</u>. Buyer and Seller acknowledge that Closing Agent may incur certain costs while processing this transaction which must be paid prior to Closing. Closing Agent is authorized and instructed to release funds for payment of such costs prior to Closing from funds deposited into Escrow by Buyer. Such funds are not refundable and Closing Agent is released from any liability for payment of any such funds pre-released through the Escrow. Closing Agent is authorized to charge the appropriate party for costs incurred, or credit the appropriate party for credits, as applicable at Closing or upon termination of this Agreement.

(B) <u>Prorations</u>. The following shall be prorated as of the date of Closing, in each case based on the number of calendar days in the applicable period and in accordance with local customs: (i) all real property taxes, assessments, utilities and other operating expenses customarily apportioned in similar situations ("<u>Property Expenses</u>"), and (ii) all rents and other income actually received and customarily apportioned in similar situations ("<u>Property Income</u>"). Despite anything to the contrary in this Agreement, insurance premiums will not be prorated, and Seller may cancel any existing insurance on the Property after Closing. If either party receives Property Income or a refund of Property Expenses attributable, in whole or in part, to the other party's period of ownership, the party that received such Property Income or refund shall immediately submit to the other party the portion attributable to such other party's period of ownership. Except as set forth in this Agreement, Seller shall not be responsible for any Property Expenses accruing after Closing. This paragraph shall survive Closing indefinitely.

(C) <u>Closing Costs</u>. Seller and Buyer shall pay closing costs as described in the Closing Cost Allocations (and Closing Agent is authorized to (i) pay Seller's costs from Seller's proceeds, and (ii) pay Buyer's costs from funds deposited into Escrow by Buyer).

(D) <u>Settlement Statement</u>. On or before the third business day prior to Closing, Closing Agent shall prepare and deliver to Seller and Buyer a settlement statement setting forth the prorations and cost allocations set forth in this Agreement ("<u>Settlement Statement</u>").

## 8. TERMINATION AND CANCELLATION OF ESCROW.

(A) <u>Termination Resulting from Breach</u>. If Closing does not or cannot occur on or before the Closing Date due to a breach of this Agreement by Buyer or Seller, then the non-breaching party may terminate this Agreement and cancel the Escrow by written notice to the breaching party and Closing Agent. If Buyer fails to timely deposit the Earnest Money Deposit, then Seller may immediately terminate this Agreement by written notice to Buyer. Upon any such termination and/or cancellation, the breaching party shall pay any cancellation fees of Closing Agent and Title Insurance Company. If Seller is the breaching party, Closing Agent shall return the Earnest Money Deposit to Buyer, and Buyer shall be entitled to pursue remedies at law or in equity. If Buyer is the breaching party, then the following shall apply:

**BUYER AND SELLER AGREE THAT IT WOULD BE EXTREMELY DIFFICULT TO DETERMINE SELLER'S ACTUAL DAMAGES RESULTING FROM A BREACH BY BUYER. IN THE EVENT OF A BREACH BY BUYER, SELLER SHALL BE ENTITLED TO AN AMOUNT EQUAL TO THE EARNEST MONEY DEPOSIT AS LIQUIDATED DAMAGES AND AS SELLER'S EXCLUSIVE REMEDY. BUYER AGREES THAT SUCH AMOUNT IS A REASONABLE PRE-ESTIMATE OF SELLER'S ACTUAL DAMAGES FOR BREACH OF THIS AGREEMENT AND IS NOT A PENALTY. IF CLOSING AGENT IS IN POSSESSION OF THE EARNEST MONEY DEPOSIT, THEN CLOSING AGENT SHALL DELIVER THE EARNEST MONEY DEPOSIT TO SELLER. DESPITE THE FOREGOING, IF APPLICABLE LAW LIMITS THE AMOUNT OF THE LIQUIDATED DAMAGES PAYABLE TO SELLER UPON A BREACH BY BUYER, SELLER SHALL ONLY BE ENTITLED TO THE AMOUNT PERMITTED BY LAW, AND ANY EXCESS SHALL BE PROMPTLY RETURNED TO BUYER.**

**SELLER'S INITIALS** _____ / _____   **BUYER'S INITIALS** _____ / _____

(B) <u>Costs Upon Termination and Cancellation of Escrow</u>. Except as otherwise set forth in this Section, upon termination of this Agreement and cancellation of Escrow pursuant to this Section, Seller and Buyer shall be jointly responsible for any cancellation fees of Closing Agent and Title Insurance Company, and all other costs incurred in connection with the transactions contemplated by this Agreement (including, without limitation, payments for loan applications, inspections, appraisals, and other reports) shall be the sole responsibility of the party incurring such costs.

(C) <u>Closing Agent Authorization</u>. If Closing Agent receives a written notice from a party to cancel the Escrow in accordance with this Section 8, and Closing Agent can confirm that the other party also received the notice, Closing Agent is authorized to comply with the notice if Closing Agent does not receive a written objection within 10 calendar days after such other party received the notice.

## 9. BUYER'S REPRESENTATIONS AND WARRANTIES. Buyer represents and warrants to Seller as follows:

Copyright © 2021 Ten-X, LLC. All rights reserved.

EXHIBIT A

(A) <u>Authority</u>. Buyer has the necessary authority to enter into and perform its obligations under this Agreement. If Buyer is an entity, the natural person signing this Agreement on behalf of Buyer represents and warrants that (i) Buyer is duly formed and in good standing and (ii) the natural person signing on behalf of Buyer has the necessary authority to bind Buyer to this Agreement.

(B) <u>Property Condition and Attributes</u>. Prior to entering into this Agreement, Buyer had the opportunity to conduct Buyer's own due diligence and investigations. Except as expressly set forth in this Agreement, Buyer's obligations under this Agreement are not contingent on any further due diligence and/or investigation. Buyer acknowledges that the square footage of the Property (including the square footage of the lot and any improvements thereon) is deemed approximate and not guaranteed. Buyer acknowledges that except as otherwise expressly set forth in this Agreement or in written disclosures to Buyer signed by Seller, (i) Seller does not make, and expressly disclaims, any representation or warranty, express or implied, regarding the Property, and (ii) Buyer acknowledges and agrees that Seller is selling the Property "As Is, Where Is, With All Faults and Limitations" and Seller shall have no liability for or any obligation to make any repairs or improvements of any kind to the Property.

(C) <u>Disclosures</u>. Prior to entering into this Agreement, Buyer has received (or, to the extent not received, Buyer irrevocably waives) all disclosure documents required to be provided by or on behalf of Seller or Seller's representatives. Reports furnished by or on behalf of Seller shall be for informational purposes only and are not made part of this Agreement unless required under applicable law.

(D) <u>Sophisticated Buyer</u>. Buyer (i) is a sophisticated purchaser, (ii) is capable of evaluating the merits and risks of purchasing the Property, (iii) understands and is able to bear the economic risks of purchasing the Property, including, without limitation, a total loss of investment and/or the risk that Buyer may be required to hold the Property indefinitely.

10. **SELLER'S REPRESENTATIONS AND WARRANTIES.** Seller represents and warrants to Buyer as follows:

(A) <u>Authority</u>. Seller has the necessary authority to enter into and perform its obligations under this Agreement. If Seller is an entity, the natural person signing this Agreement on behalf of Seller represents and warrants that (i) Seller is duly formed and in good standing and (ii) the natural person signing on behalf of Seller has the necessary authority to bind Seller to this Agreement.

(B) <u>Property Condition and Attributes</u>. Except as would not be reasonably expected to have a material adverse effect on the value or ongoing business or operation of the Property, the written information regarding the Property provided to Buyer by or on behalf of Seller, taken as a whole (i.e. including any updates or revisions provided, or any disclaimers in any information provided), fairly represents the Property. This paragraph shall not survive Closing.

(C) <u>No Violations</u>. Except as disclosed in writing to Buyer prior to signing this Agreement, Seller's execution and performance of this Agreement will not result in any breach of, conflict with, or result in the creation of any encumbrance upon the Property pursuant to any indenture, mortgage, deed of trust, note, evidence of indebtedness, right of first refusal, right of first offer, or any other agreement or instrument by which Seller is bound with respect to the Property.

(D) <u>Leases</u>. Except for the leases (including any amendments) listed in <u>Exhibit C</u> ("<u>Leases</u>"), Seller knows of no other agreement with respect to the occupancy of the Property that will be binding on Buyer after Closing, and to Seller's knowledge, the information on <u>Exhibit C</u> and copies of any Leases delivered by Seller to Buyer are true, correct and complete in all material respects. Except as disclosed in writing to Buyer prior to signing this Agreement and except as would not be reasonably expected to have a material adverse effect on the ongoing business or operation of the Property, to Seller's actual knowledge, (i) each of the Leases is in full force and effect; (ii) there are no uncured material defaults under any of the Leases or circumstances which with the giving of notice, the passage of time or both would constitute a material default under any of the Leases; (iii) there are no unsatisfied concessions, abatements, offsets, defenses or other basis for relief or adjustment under any of the Leases; (iv) there is no outstanding obligation to provide any tenant with an allowance to perform any tenant improvements; (v) no tenant has requested in writing a modification of its Lease or a release of any material obligation under its Lease, or has given written notice terminating its Lease, or has been released of any material obligation under its Lease prior to the normal expiration of the term of the Lease; (vi) no tenant is the subject of a bankruptcy or insolvency proceeding; (vii) no guarantor has been released or discharged from any obligation in connection with any Lease; and (viii) all brokerage commissions currently due and payable with respect to the Leases have been paid.

(E) <u>No Litigation</u>. Except as disclosed in writing to Buyer prior to signing this Agreement, there is no pending litigation affecting the Property or that would affect Seller's ability to perform its obligations under this Agreement.

(F) <u>No Mechanics' Liens</u>. Except as disclosed in writing to Buyer prior to signing this Agreement, there are no unsatisfied mechanics' or materialmen's lien rights concerning the Property.

11. **SELLER'S COVENANTS.**

EXHIBIT A

Filed 11/30/21    Doc 519   Filed 04/02/21   Entered 04/02/21 19:36:58   Page 44 of 64

(A) **Possession.** At Closing, Seller shall relinquish possession of the Property to Buyer (subject to the Leases) and promptly provide Buyer with all keys, codes and other means of Property access in Seller's possession.

(B) **Utilities.** Seller shall reasonably cooperate with Buyer prior to Closing to allow Buyer to obtain responsibility for and maintain access to applicable utilities following Closing.

(C) **Operation and Maintenance of Property.** Prior to Closing, Seller shall maintain, and to the extent within Seller's reasonable control, operate, the Property consistent with past practice.

(D) **Leases and Contracts.** Prior to Closing, Seller shall not enter into, terminate or amend any Lease or other material agreement with respect to the Property which would encumber or be binding upon the Property from and after Closing, without Buyer's prior written consent, which consent may not be unreasonably withheld, conditioned or delayed.

(E) **No Violations.** Prior to Closing, Seller shall comply in all material respects with the terms of the Leases and any other material document or agreement affecting the Property consistent with past practice.

(F) **Notice of Material Changes or Untrue Representations.** Prior to Closing, Seller shall promptly notify Buyer if Seller learns of any material change in any condition of the Property or any event or circumstance which makes any representation or warranty of Seller under this Agreement untrue or misleading.

12. **DISPUTE RESOLUTION.** AT THE REQUEST OF EITHER PARTY TO THIS AGREEMENT, ANY DISPUTE ARISING UNDER THIS AGREEMENT SHALL BE FIRST SUBMITTED TO MEDIATION BEFORE A PARTY INITIATES ARBITRATION OR COURT ACTION. MEDIATION FEES SHALL BE DIVIDED EQUALLY AND EACH PARTY SHALL BEAR HIS/HER/ITS OWN ATTORNEYS' FEES AND COSTS.

BUYER AND SELLER HAVE READ AND UNDERSTAND THE ABOVE PARAGRAPH AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE TRANSACTION CONTEMPLATED BY THIS AGREEMENT TO MEDIATION PRIOR TO COMMENCEMENT OF ARBITRATION OR COURT ACTION.

SELLER'S INITIALS ___/___          BUYER'S INITIALS ___/___

13. **MISCELLANEOUS.**

(A) **Survival of Representations and Warranties.** Except as otherwise set forth in this Agreement, (i) all representations and warranties of Seller and Buyer in this Agreement shall survive Closing for a period of one year, and (ii) no claim for breach of any representation or warranty in this Agreement may be made more than one year after Closing.

(B) **No Assignment or Recording.** Buyer may not assign or record all or any part of this Agreement without the express prior written consent of Seller. Despite the foregoing, Buyer may assign this Agreement to any entity wholly owned, directly or indirectly, by Buyer; provided, however, that, in such event, the undersigned Buyer shall remain liable for the obligations of Buyer under this Agreement.

(C) **Casualty and Condemnation.** If any material portion of the Property is damaged or taken by eminent domain (or is the subject of a pending taking) prior to Closing, Seller shall notify Buyer promptly after Seller obtains knowledge thereof. Within 10 business days after Buyer receives such written notice (if necessary, the Closing Date shall be extended until one business day after the expiration of such period), Buyer may, at its option, either (i) terminate this Agreement, or (ii) proceed to Closing in accordance with this Agreement. Buyer shall be deemed to have waived its right to terminate this Agreement if Buyer does not notify Seller in writing of its election to terminate this Agreement within such period. Buyer shall not be entitled to any insurance proceeds or obtain any rights with respect to any claims Seller may have with regard to insurance maintained by Seller with respect to the Property. In the event of a taking by eminent domain, Seller shall assign to Buyer at Closing all of Seller's right, title and interest in and to all awards, if any, for such taking.

(D) **Common Interest Development.** If the Property is in a common interest development, unless otherwise required by law, Buyer acknowledges that Buyer was provided for review (or, to the extent not provided, Buyer waives any right to review) the declaration of covenants, conditions, restrictions and/or bylaws and other documentation regarding such common interest development and Buyer acknowledges that Buyer has reviewed such documentation to the fullest extent Buyer deems necessary and, by signing this Agreement, Buyer accepts the declaration of covenants, conditions, restrictions and/or bylaws of the common interest community.

(E) **Local Requirements.** Some counties, cities, municipalities and other state subdivisions may require a certificate of occupancy, certificate of use or code compliance certificate and/or inspection ("**Local Requirement**") may be required in order to transfer and/or occupy the Property. If a Local Requirement is required for the Property to be transferred to or occupied by Buyer, Buyer waives such Local Requirements to the extent waivable. To the extent any such Local Requirement is not waivable by Buyer, Buyer shall comply with the Local Requirement at Buyer's sole cost, including, without limitation, the correction of any violations or performance of other work which may be required in connection therewith. Seller makes no representation as to whether a Local Requirement applies. Buyer shall indemnify, defend

EXHIBIT A

and hold Seller harmless from and against all fines, penalties, costs, expenses, claims and liabilities arising out of or relating to any Local Requirements. This paragraph shall survive Closing indefinitely.

(F) <u>Counterparts, Electronic Signatures, and Complete Agreement</u>. This Agreement and any addenda or other document necessary for Closing of the transactions contemplated by this Agreement may be signed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one document. Facsimile and electronic signatures shall have the same legal effect as original signatures. This Agreement and any addenda or other document necessary for Closing of the transactions contemplated by this Agreement may be accepted, signed or agreed to through the use of an electronic signature in accordance with the Electronic Signatures in Global and National Commerce Act (E-Sign Act), Title 15, United States Code, Sections 7001 et seq., the Uniform Electronic Transaction Act (UETA) and any applicable state law. This Agreement constitutes the entire agreement of Buyer and Seller with respect to the subject matter of this Agreement and supersedes any other instruments purporting to be an agreement of Buyer and Seller relating to that subject matter. No modification of this Agreement will be effective unless it is in writing and signed by both parties.

(G) <u>Severability</u>. If any portion of this Agreement is judicially determined to be invalid or unenforceable, that portion shall be deemed severable from this Agreement and the remainder of this Agreement shall remain in full force and effect and be construed to fulfill the intention of the parties.

(H) <u>Time is of the Essence</u>. Time is of the essence for the performance of each and every covenant under this Agreement and the satisfaction of each and every condition under this Agreement.

(I) <u>Governing Law and Venue</u>. This Agreement shall be interpreted, construed, applied and enforced in accordance with the laws of the state in which the Property is located. The state and federal courts located in the county in which the Property is located shall be proper forums for any legal controversy between the parties arising in connection with this Agreement, which courts shall be the exclusive forums for all such suits, actions or proceedings.

(J) <u>Attorneys' Fees</u>. In any action, proceeding or arbitration arising out of this Agreement, the prevailing party (defined as the party who prevails as to a substantial part of the litigation or claim) shall be entitled to reasonable attorneys' fees and costs.

(K) <u>Further Assurances</u>. The parties agree to execute such other documents, and to take such other actions as may reasonably be necessary, to further the purposes of this Agreement.

(L) <u>Notices</u>. All notices and other communications contemplated under this Agreement shall be in writing and shall be deemed given and received upon receipt if: (i) delivered personally; or (ii) mailed by registered or certified mail return receipt requested, postage prepaid; (iii) sent by a nationally recognized overnight courier; and/or (iv) sent by email. Notice to Buyer and Seller shall be given as set forth on the first page of this Agreement or to such other address or addresses as may from time to time be designated by either party by written notice to the other.

(M) <u>Prohibited Persons and Transactions</u>. Each party represents and warrants to the other that neither it, nor any of its affiliates, nor any of their members, directors or other equity owners (excluding holders of publicly traded shares), and none of their principal officers and employees: (i) is listed as a "specifically designated national and blocked person" on the most current list published by the U.S. Treasury Department Office of Foreign Asset Control ("<u>OFAC</u>"); (ii) is a person or entity with whom U.S. persons or entities are restricted from doing business under OFAC regulations or any other statute or executive order (including the September 24, 2001 "Executive Order Blocking Property and Prohibiting Transactions with Persons Who Commit, Threaten to Commit, or Support Terrorism"); and (iii) is engaged in prohibited dealings or transactions with any such persons or entities.

(N) <u>Brokers</u>. In connection with the transactions contemplated by this Agreement, Seller is represented by Listing Broker identified on the signature page hereto, Buyer is represented by Buyer's Broker identified on the signature page hereto, Ten-X is acting as the marketing firm and marketplace provider, and Seller and Buyer each represents and warrants that it has not dealt with any other broker, finder or other agent who would be entitled to any fee from Seller or Buyer. Seller and Buyer shall each indemnify and hold harmless the other from and against any claims, losses, costs, damages, liabilities or expenses, including reasonable attorneys' fees, arising in connection with any breach by the indemnifying party of the representations and warranties in this paragraph. This paragraph shall survive Closing indefinitely.

(O) <u>Form of Agreement</u>. Buyer and Seller acknowledge that no representation, recommendation or warranty is made by Ten-X or any broker relating to the legal sufficiency or tax consequences of this Agreement or any attachments hereto, and Buyer and Seller each represent and warrant that it has consulted with, had the opportunity to consult with or waived the right to consult with counsel in connection with this Agreement.

EXHIBIT A

DocuSign Envelope ID: 46E4C99D-1F67-4814-9497-F15440BE7A17

**14. CLOSING COST ALLOCATIONS.**

| Closing Costs (as applicable) | Seller Pays | Buyer Pays | 50% Seller/ 50% Buyer |
|---|---|---|---|
| Title Search Fee | ☒ | | |
| Owner's Title Insurance Policy (Standard Coverage) | ☒ | | |
| Additional Title Coverage or Endorsements Requested by Buyer | | ☒ | |
| Lender's Title Insurance Policy | | ☒ | |
| Closing Agent Fees | | | ☒ |
| State and/or Local Transfer Taxes | | | ☒ |
| Credit Reports, Loan Fees, Loan Points, Reports and Inspections Required by Buyer's Lender, Appraisal Fees, Mortgage Notarization and Recording Fees, and All Other Costs In Connection With Buyer's Loan | | ☒ | |
| Seller's Loan Prepayment Fees and All Other Costs In Connection With Seller's Existing Loan | ☒ | | |
| Deed Notarization and Recording Fees | ☒ | | |
| Real Estate Broker/Agent Commissions Due Listing Broker | ☒ | | |
| Offered Cooperating Real Estate Broker/Agent Commissions Due Buyer's Broker | ☒ | | |
| Additional Real Estate Broker/Agent Commissions Due Buyer's Broker (If Any) | | ☒ | |
| Any Reports and Inspections Requested by Buyer | | ☒ | |
| Seller's Attorney Fees | ☒ | | |
| Buyer's Attorney Fees | | ☒ | |
| All Other Closing Costs | | ☒ | |
| | | | |
| | | | |
| | | | |

**SELLER'S INITIALS** _____          **BUYER'S INITIALS** _____

**15. STATE-SPECIFIC PROVISIONS.** See state-specific rider attached hereto and incorporated herein by reference (if applicable).

*(Remainder of Page Intentionally Blank)*

EXHIBIT A

DocuSign Envelope ID: 720C7ACC-8124-483D-AABB-4E75B5345B23
DocuSign Envelope ID: 46E4C99D-1F67-4814-9497-F15440BE7A17

**SELLER:**
Emerald Grande, LLC, a Georgia limited liability company

**BUYER:**
Pritpal Dhindsa and Harbhajan Ghotra, as individuals

(and its permitted assigns under Section 13(B))

Pritpal Dhindsa

Printed Name: William Abruzzino
Title (if applicable): Managing Member

Printed Name: Pritpal Dhindsa
Title (if applicable): _____

Harbhajan Ghotra

Printed Name: Harbhajan Ghotra
Title (if applicable): _____

Printed Name: _____
Title (if applicable): _____

Dated: 3-25-2021

Dated: 3/25/2021    3/25/2021

**LISTING BROKER (If any):**
Broker Printed Name: Eric Belfrage
Brokerage Printed Name: CBRE - Columbus
Brokerage License Number: WVS190300625   State: WV

**BUYER'S BROKER (If any):**
Broker Printed Name: None
Brokerage Printed Name: None
Brokerage License Number: _____  State: ____

(Brokers must be licensed in the state where the Property is located.)

**DISCLOSURE AND CONFIRMATION OF AGENCY RELATIONSHIP**

Buyer and Seller acknowledge that, unless otherwise set forth in this Agreement, Ten-X is not acting as Seller's real estate agent or Buyer's real estate agent, and Ten-X is acting as a marketing firm and marketplace provider only.

**SELLER'S INITIALS** _____ / _____    **BUYER'S INITIALS** _____ / HG

**CLOSING AGENT ACKNOWLEDGEMENT**

Closing Agent acknowledges receipt of a copy of this Agreement and the Earnest Money Deposit set forth in Section 1(D) and agrees to act as Closing Agent in accordance with this Agreement.

Novare NSS, a division of Fidelity National Title

By: Maria Mena

EXHIBIT A

DocuSign Envelope ID: 720C7ACC-8124-483D-AABB-4E75B5345B23
DocuSign Envelope ID: 46E4C99D-1F67-4814-9497-F15440BE7A17

**EXHIBIT A**

## LEGAL DESCRIPTION OF THE PROPERTY

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE COUNTY OF KANAWHA, STATE OF WEST VIRGINIA, AND IS DESCRIBED AS FOLLOWS:

BEGINNING AT A 1/2 INCH BY 36 INCH REINFORCING ROD WITH A YELLOW PLASTIC CAP STAMPED "SLS INC., 462-5634" HEREINAFTER REFERRED TO AS A REBAR, SET, CORNER TO INTERSTATE PROPERTIES, INC. FROM WHICH A 1/2 INCH REBAR, SET AT A CORNER OF PARCEL 2, BEARS S. 62-42- 20 E. AT 72.03 FEET; THENCE WITH SAID PARCEL S. 62-42-20 E, 27.22 FEET TO A POINT, CORNER TO PARCEL 2; THENCE WITH A NEW LINE ALONG PARCEL 2 S. 18-49-00 W. 221.88 FEET TO A POINT; THENCE N. 84-18-40 W 65.49 FEET TO A RAILROAD SPIKE, SET; THENCE N. 27-30-40 E. 25.30 FEET TO A 1/2 INCH REBAR, SET, CORNER TO 84 LUMBER, INC.; THENCE WITH SAID 84 LUMBER, INC. FOR THE NEXT FIVE (5) LINES; N. 66-47-40 W. 146.79 FEET TO A POINT; THENCE N. 76-38-30 W. 64.76 FEET TO A RAILROAD SPIKE, SET; THENCE N. 39-16-40 E. 19.97 FEET TO A RAILROAD SPIKE, SET; THENCE N. 23- 29-40 E. 106.39 FEET TO A 1/2 INCH REBAR, FOUND AT A PREVIOUS COMMON CORNER OF MOLES & ARTHUR; THENCE N. 23-29-40 E. 201.26 FEET TO A REBAR, SET, CORNER TO SAID 84 LUMBER TRACT AND IN A LINE OF INTERSTATE PROPERTIES TRACT; THENCE S. 42-45-20 E. 240.78 FEET TO THE PLACE OF BEGINNING, CONTAINING 1.558 ACRES, MORE OR LESS, AS SURVEYED BY SMITH LAND SURVEYING, INC. IN AUGUST, 1999, AND AS SHOWN ON THE REVISED SITE PLAN AND PLAT OF ASBUILT SURVEY OF THE CROSSINGS OF ELKVIEW DATED OCTOBER 7, 1998, AND LAST REVISED SEPTEMBER 1, 1999.

APN: 20-15-0018-0053-0004

EXHIBIT A

DocuSign Envelope ID: 46E4C99D-1F67-4814-9497-F15440BE7A17

**EXHIBIT B**

ASSIGNMENT AND ASSUMPTION OF LEASES AND CONTRACTS

# ASSIGNMENT AND ASSUMPTION OF LEASES AND CONTRACTS

**Seller:** Emerald Grande, LLC, a Georgia limited liability company

**Buyer:** Pritpal Dhindsa and Harbhajan Ghotra, as individuals

**Property (Address):** 101 Crossings Mall Road, Elkview, WV 25071

This Assignment and Assumption of Leases and Contracts, dated effective as of _____, is entered into between Buyer and Seller in connection with the transfer of the Property from Seller to Buyer concurrently herewith.

Seller is the landlord under those certain leases identified on Schedule 1 attached hereto (collectively, "Leases") relating to the Property. Seller desires to assign to Buyer, and Buyer desires to assume from Seller, all of Seller's right, title and interest in and to the Leases and all other transferable licenses, contracts, permits and agreements affecting the Property (collectively, "Contracts").

For valuable consideration, the receipt and sufficiency of which is acknowledged, Buyer and Seller agree as follows:

**1.   ASSIGNMENT.** Seller hereby assigns, transfers and conveys to Buyer all of Seller's right, title and interest in and to (a) the Leases and Contracts and (b) all security deposits, letters of credit and guarantees given in connection with the Leases.

**2.   ASSUMPTION.** Buyer hereby assumes all of Seller's obligations and liabilities under the Leases and Contracts and agrees to perform all of the landlord's obligations under the Leases, and Seller's obligations under the Contracts, arising from and after the date hereof. Buyer shall be solely responsible for notifying any tenants or occupants a) that Seller has transferred ownership of the Property to Buyer, (b) regarding any change in place for payment of rentals, and (c) that Buyer is responsible for the security deposits of such tenants or occupants.

**3.   INDEMNIFICATION BY SELLER.** Seller hereby indemnifies Buyer and agrees to hold Buyer harmless from and against all claims, expenses, losses or damages to the extent arising out of (a) the landlord's obligations and liabilities under the Leases accruing prior to the date hereof, and/or (b) Seller's obligations and liabilities under the Contracts accruing prior to the date hereof.

**4.   INDEMNIFICATION BY BUYER.** Buyer hereby indemnifies Seller and agrees to hold Seller harmless from and against all claims, expenses, losses or damages to the extent arising out of (a) the landlord's obligations and liabilities under the Leases accruing from and after the date hereof, and/or (b) Seller's obligations and liabilities under the Contracts accruing from and after the date hereof.

**SELLER:**

Emerald Grande, LLC, a Georgia limited liability company

**BUYER:**

Pritpal Dhindsa and Harbhajan Ghotra, as individuals

Printed Name: William Abruzzino
Title (if applicable): Managing Member

Printed Name: Pritpal Dhindsa
Title (if applicable): _____

Printed Name: _____
Title (if applicable): _____

Printed Name: Harbhajan Ghotra
Title (if applicable): _____

Dated: 3-25-2021

Dated: _____

EXHIBIT A

DocuSign Envelope ID: 46E4C99D-1F67-4814-9497-F15440BE7A17

**Schedule 1 to Assignment and Assumption of Leases and Contracts**

**Leases**

EXHIBIT A

DocuSign Envelope ID: 46E4C99D-1F67-4814-9497-F15440BE7A17

**EXHIBIT C**

**LEASES**

**All leases posted to the Property's listing page on Ten-X's website (a) after the date of the attached list, and (b) before Buyer signs this Agreement are hereby incorporated herein by reference.**

NOT APPLICABLE

EXHIBIT A

DocuSign Envelope ID: 46E4C99D-1F67-4814-9497-F15440BE7A17

## WEST VIRGINIA AGENCY DISCLOSURE

By signing the agreement to which this page is attached, the parties acknowledge receipt of the agency disclosure located at https://www.ten-x.com/company/westvirginia/

(*Remainder of Page Intentionally Blank*)

EXHIBIT A



## Certificate Of Completion

Envelope Id: 46E4C99D1F6748149497F15440BE7A17                                                    Status: Sent
Subject: Contract for Digital Signature for item  1000014279 - La Quinta Inn & Suites - Elkview, WV (VR)
Source Envelope:
Document Pages: 25                              Signatures: 1                    Envelope Originator:
Certificate Pages: 6                            Initials: 0                      Commercial Contracts
AutoNav: Enabled                                                                 15295 Alton Parkway
EnvelopeId Stamping: Enabled                                                     Irvine, CA  92618
Time Zone: (UTC-08:00) Pacific Time (US & Canada)                                commercialcontracts@ten-x.com
                                                                                 IP Address: 4.71.107.226

## Record Tracking

Status: Original                    Holder: Commercial Contracts              Location: DocuSign
        3/25/2021 4:15:29 PM                commercialcontracts@ten-x.com

| Signer Events | Signature | Timestamp |
|---|---|---|
| Maria Mena<br>novareescrow@novarenss.com<br>Senior Escrow officer<br>Novare National Settlement Service<br>Security Level: Email, Account Authentication (None) | *Maria Mena*<br>1C2E8B1CCC92444...<br><br>Signature Adoption: Pre-selected Style<br>Using IP Address: 170.88.12.190 | Sent: 3/25/2021 4:20:09 PM<br>Viewed: 3/25/2021 4:21:11 PM<br>Signed: 3/26/2021 12:45:10 PM |
| **Electronic Record and Signature Disclosure:**<br>  Accepted: 6/24/2020 5:45:46 PM<br>  ID: 2e7ce606-573c-48f6-aa96-46c71f30a408 | | |

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

| Carbon Copy Events | Status | Timestamp |
|---|---|---|
| Harbhajan Ghotra<br>hghotra@msn.com<br>FranciseJohn ghotra<br>Security Level: Email, Account Authentication (None) | COPIED | Sent: 3/25/2021 4:20:09 PM<br>Viewed: 3/26/2021 12:08:01 PM |
| **Electronic Record and Signature Disclosure:**<br>  Accepted: 3/25/2021 2:00:30 PM<br>  ID: c052880b-cabb-408d-ad24-113cbbeb1ef5 | | |
| Pritpal Dhindsa<br>pritpal.dhindsa@hotmail.com<br>Owner/Manager<br>PHB Operations LLC<br>Security Level: Email, Account Authentication (None) | COPIED | Sent: 3/25/2021 4:20:09 PM<br>Viewed: 3/25/2021 4:26:54 PM |
| **Electronic Record and Signature Disclosure:**<br>  Accepted: 3/25/2021 1:24:51 PM<br>  ID: d2e6048f-4fe7-4c20-8c80-72ae19e12b54 | | |

EXHIBIT A

Sandra Mendoza
smendoza@ten-x.com
Operation Ten-X
Security Level: Email, Account Authentication
(None)

**COPIED**

Sent: 3/26/2021 12:45:15 PM

**Electronic Record and Signature Disclosure:**
   Not Offered via DocuSign

Joseph Cuomo
jcuomo@ten-x.com
Security Level: Email, Account Authentication
(None)
**Electronic Record and Signature Disclosure:**
   Not Offered via DocuSign

Brittany Degrassi
bdegrassi@ten-x.com
Security Level: Email, Account Authentication
(None)
**Electronic Record and Signature Disclosure:**
   Not Offered via DocuSign

Eric Belfrage
eric.belfrage@cbre.com
Security Level: Email, Account Authentication
(None)
**Electronic Record and Signature Disclosure:**
   Not Offered via DocuSign

Michael Shirey
michael.shirey@cbre.com
Security Level: Email, Account Authentication
(None)
**Electronic Record and Signature Disclosure:**
   Not Offered via DocuSign

Nicole Kostiuk
nicole.kostiuk@cbre.com
Security Level: Email, Account Authentication
(None)
**Electronic Record and Signature Disclosure:**
   Not Offered via DocuSign

Vanessa Ramirez
VanessaR@ten-x.com
Security Level: Email, Account Authentication
(None)
**Electronic Record and Signature Disclosure:**
   Accepted: 2/24/2021 4:27:58 PM
   ID: 5accbe81-74b9-47b2-aa61-7f46c79e3b71

William Abruzzino
sthomas@kaycasto.com
Security Level: Email, Account Authentication
(None)
**Electronic Record and Signature Disclosure:**
   Not Offered via DocuSign

TenX Finance
FinanceRevenueInvoicing@ten-x.com
Security Level: Email, Account Authentication
(None)
**Electronic Record and Signature Disclosure:**

EXHIBIT A

Not Offered via DocuSign

| Witness Events | Signature | Timestamp |
|---|---|---|

| Notary Events | Signature | Timestamp |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 3/25/2021 4:20:09 PM |
| Certified Delivered | Security Checked | 3/25/2021 4:21:11 PM |
| Signing Complete | Security Checked | 3/26/2021 12:45:10 PM |

| Payment Events | Status | Timestamps |
|---|---|---|

**Electronic Record and Signature Disclosure**

EXHIBIT A

Electronic Record and Signature Disclosure created on: 6/16/2020 8:29:32 AM
Parties agreed to: Maria Mena, Harbhajan Ghotra, Pritpal Dhindsa, Vanessa Ramirez

No. 1:17-bk-00021   Doc 915   Filed 04/02/21   Entered 04/02/21 13:39:53   Page 56 of 64

**ELECTRONIC RECORD AND SIGNATURE DISCLOSURE**

From time to time, Ten-X (we, us or Company) may be required by law to provide to you certain written notices or disclosures. Described below are the terms and conditions for providing to you such notices and disclosures electronically through the DocuSign system. Please read the information below carefully and thoroughly, and if you can access this information electronically to your satisfaction and agree to this Electronic Record and Signature Disclosure (ERSD), please confirm your agreement by selecting the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

**Getting paper copies**

At any time, you may request from us a paper copy of any record provided or made available electronically to you by us. You will have the ability to download and print documents we send to you through the DocuSign system during and immediately after the signing session and, if you elect to create a DocuSign account, you may access the documents for a limited period of time (usually 30 days) after such documents are first sent to you. After such time, if you wish for us to send you paper copies of any such documents from our office to you, you will be charged a $0.00 per-page fee. You may request delivery of such paper copies from us by following the procedure described below.

**Withdrawing your consent**

If you decide to receive notices and disclosures from us electronically, you may at any time change your mind and tell us that thereafter you want to receive required notices and disclosures only in paper format. How you must inform us of your decision to receive future notices and disclosure in paper format and withdraw your consent to receive notices and disclosures electronically is described below.

**Consequences of changing your mind**

If you elect to receive required notices and disclosures only in paper format, it will slow the speed at which we can complete certain steps in transactions with you and delivering services to you because we will need first to send the required notices or disclosures to you in paper format, and then wait until we receive back from you your acknowledgment of your receipt of such paper notices or disclosures. Further, you will no longer be able to use the DocuSign system to receive required notices and consents electronically from us or to sign electronically documents from us.

**All notices and disclosures will be sent to you electronically**

EXHIBIT A

Unless you tell us otherwise in accordance with the procedures described herein, we will provide electronically to you through the DocuSign system all required notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you during the course of our relationship with you. To reduce the chance of you inadvertently not receiving any notice or disclosure, we prefer to provide all of the required notices and disclosures to you by the same method and to the same address that you have given us. Thus, you can receive all the disclosures and notices electronically or in paper format through the paper mail delivery system. If you do not agree with this process, please let us know as described below. Please also see the paragraph immediately above that describes the consequences of your electing not to receive delivery of the notices and disclosures electronically from us.

**How to contact Ten-X:**

You may contact us to let us know of your changes as to how we may contact you electronically, to request paper copies of certain information from us, and to withdraw your prior consent to receive notices and disclosures electronically as follows:
To contact us by email send messages to: legal-notice@ten-x.com

**To advise Ten-X of your new email address**

To let us know of a change in your email address where we should send notices and disclosures electronically to you, you must send an email message to us at legal-notice@ten-x.com and in the body of such request you must state: your previous email address, your new email address.  We do not require any other information from you to change your email address.

If you created a DocuSign account, you may update it with your new email address through your account preferences.

**To request paper copies from Ten-X**

To request delivery from us of paper copies of the notices and disclosures previously provided by us to you electronically, you must send us an email to legal-notice@ten-x.com and in the body of such request you must state your email address, full name, mailing address, and telephone number. We will bill you for any fees at that time, if any.

**To withdraw your consent with Ten-X**

To inform us that you no longer wish to receive future notices and disclosures in electronic format you may:

EXHIBIT A

i. decline to sign a document from within your signing session, and on the subsequent page, select the check-box indicating you wish to withdraw your consent, or you may;

ii. send us an email to legal-notice@ten-x.com and in the body of such request you must state your email, full name, mailing address, and telephone number. We do not need any other information from you to withdraw consent.. The consequences of your withdrawing consent for online documents will be that transactions may take a longer time to process..

**Required hardware and software**

The minimum system requirements for using the DocuSign system may change over time. The current system requirements are found here: https://support.docusign.com/guides/signer-guide-signing-system-requirements.

**Acknowledging your access and consent to receive and sign documents electronically**

To confirm to us that you can access this information electronically, which will be similar to other electronic notices and disclosures that we will provide to you, please confirm that you have read this ERSD, and (i) that you are able to print on paper or electronically save this ERSD for your future reference and access; or (ii) that you are able to email this ERSD to an email address where you will be able to print on paper or save it for your future reference and access. Further, if you consent to receiving notices and disclosures exclusively in electronic format as described herein, then select the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

By selecting the check-box next to 'I agree to use electronic records and signatures', you confirm that:

- You can access and read this Electronic Record and Signature Disclosure; and
- You can print on paper this Electronic Record and Signature Disclosure, or save or send this Electronic Record and Disclosure to a location where you can print it, for future reference and access; and
- Until or unless you notify Ten-X as described above, you consent to receive exclusively through electronic means all notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you by Ten-X during the course of your relationship with Ten-X.

EXHIBIT A

# EXHIBIT B

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| In re: | Case No.  1:17-bk-00021 |
| EMERALD GRANDE, LLC, | Chapter 11 |
| Debtor. | |

### NOTICE TO COUNTERPARTIES TO POTENTIALLY
### <u>ASSUMED EXECUTORY CONTRACTS AND UNEXPIRED LEASES</u>

**PLEASE TAKE NOTICE** that on January 7, 2021, Emerald Grande, LLC, as debtor and debtor-in-possession (the **"Debtor"**) in the above-captioned case, filed a motion (the **"Sale Motion"**) with the United States Bankruptcy Court for the Northern District of West Virginia (the **"Bankruptcy Court"**) seeking approval of the Sale by auction of the Property[1] pursuant to the Ten-X Marketing Agreement and PSA, of the assets set forth therein).

The United States Bankruptcy Court for the Northern District of West Virginia (the **"Bankruptcy Court"**) will conduct a hearing to consider the relief requested in the Sale Motion on January 14, 2021 at 9:30 a.m. (the "Sale Hearing"), or at such later date and time as may be scheduled by further Order of the Bankruptcy Court upon motion or application by the Debtor.** The Sale Hearing may be continued from time to time without further notice to creditors or parties in interest other than by announcement of the continuance in open court on the date scheduled for the Sale Hearing.

**YOU ARE RECEIVING THIS NOTICE BECAUSE YOU OR ONE OF YOUR AFFILIATES IS A COUNTERPARTY TO AN EXECUTORY CONTRACT OR UNEXPIRED LEASE WITH THE DEBTOR AS SET FORTH ON <u>EXHIBIT A</u> HERETO.**[2]

**PLEASE TAKE FURTHER NOTICE** that the Debtor may assume and assign to the Purchaser the executory contracts or unexpired leases listed on Exhibit A attached hereto (each, a **"Scheduled Contract"**) to which you are a counterparty. **If you object to the proposed assignment to the Purchaser of the Scheduled Contract(s) or object to the Purchaser's ability to provide adequate assurance of future performance with respect to any Scheduled Contracts, you must file an objection with the Bankruptcy Court prior to the hearing scheduled for January 14, 2021 at 9:30 a.m. (the "Objection Deadline"), and serve such objection on (i) counsel to the Debtor, KAY CASTO & CHANEY, PLLC, Attn: Steven L. Thomas, P.O. Box 2031, Charleston, West Virginia 25327 (sthomas@kaycasto.com); (ii) counsel to Carter Bank, TROUTMAN PEPPER HAMILTON SANDERS LLP, Attn: Matthew R. Brooks, 600 Peachtree St NE, Suite 3000, Atlanta, GA 30308**

---

[1] All capitalized terms not defined herein shall have the meaning given thereto in the Sale Motion.
[2] This Notice is being sent to counterparties to Executory Contracts and Unexpired Leases. This Notice is not an admission by the Debtor that such contract or lease is executory or unexpired.

**EXHIBIT B**

(matthew.brooks@troutman.com); and (iii) the OFFICE OF THE UNITED STATES TRUSTEE, U.S. Department of Justice, Attn: Debra Wertman, 300 Virginia Street East, Room 2025, Charleston WV 25301 (debra.a.wertman@usdoj.gov) in each case so as to be **actually received by no later than the Objection Deadline**.

**PLEASE TAKE FURTHER NOTICE** that if no objection to (a) the Cure Amount(s), if any; (b) the proposed assignment of the Scheduled Contract(s) to the Purchaser or (c) adequate assurance of the Purchaser's ability to perform, is filed by the Objection Deadline, you will be (i) deemed to have stipulated that the Cure Amount(s), if any, as determined by the Debtor is correct, (ii) forever barred, estopped and enjoined from asserting any additional cure amount under the Scheduled Contract(s) and (iii) forever barred from objecting to the assignment of the Scheduled Contract(s) to the Purchaser.

**PLEASE TAKE FURTHER NOTICE** that with respect to any Scheduled Contract assumed and assigned to the Purchase, all Cure Amounts shall be satisfied by payment of the Cure Amounts as soon as reasonably practicable after Bankruptcy Court approval of the Sale of the Transferred Property to the Purchaser or on such other terms as the parties to each such Scheduled Contract may otherwise agree without any further notice to or action, order or approval of the Bankruptcy Court. In addition, the assumption of each such Scheduled Contract may be conditioned upon the disposition of all issues with respect to such Scheduled Contract.

**PLEASE TAKE FURTHER NOTICE** that pursuant to the Sale Procedures Order, in the event of a dispute regarding: (a) any Cure Amount with respect to any Scheduled Contract or; (b) the ability of the Purchaser to provide adequate assurance of future performance as required by section 365 of the Bankruptcy Code, if applicable, under such Scheduled Contract; or (c) any other matter pertaining to assumption and assignment, the Cure Amounts shall be paid as soon as reasonably practicable after the Closing and following the entry of a final order resolving the dispute and approving the assumption of such Scheduled Contract; provided, however, that the Debtor, with the consent of the Purchaser, are authorized to settle any dispute regarding the amount of any Cure Amount or assignment to the Purchaser without any further notice to or action, order or approval of the Court.

**PLEASE TAKE FURTHER NOTICE THAT** notwithstanding anything herein, this Notice shall not be deemed to be an assumption, adoption, rejection or termination of the Scheduled Contracts. Moreover, the Debtor explicitly reserves its rights to reject or assume each Scheduled Contract pursuant to section 365(a) of the Bankruptcy Code, and nothing herein (a) alters in any way the prepetition nature of the Scheduled Contracts or the validity, priority or amount of any claims of a counterparty to a Scheduled Contract against the Debtor that may arise under such Scheduled Contract; (b) creates a post-petition contract or agreement; or (c) elevates to administrative expense priority any claims of a counterparty to a Scheduled Contract against the Debtor that may arise under such Scheduled Contract.

**PLEASE TAKE FURTHER NOTICE THAT** this Notice is subject in all respects to the terms and conditions of the Sale Motion, the Sale Procedures Order, the PSA and the Sale Procedures, which shall control in the event of any conflict; and the Debtors encourage parties in interest to review such documents in their entirety. Copies of the Sale Motion, the PSA (including

**EXHIBIT B**

exhibits thereto), the Sale Procedures, and the Sale Procedures Order, may be obtained free of charge by request in writing, by telephone, or via email from counsel to the Debtor, KAY CASTO & CHANEY, PLLC, Attn: Steven L. Thomas, P.O. Box 2031, Charleston, West Virginia 25327 (sthomas@kaycasto.com).  Alternatively, the documents may be retrieved for a small fee from PACER, at https://ecf.wvnb.uscourts.gov/.

/s/ Steven L. Thomas
Steven L. Thomas (WVSB # 3738)
Kay Casto & Chaney PLLC
P.O. Box 2031
Charleston, West Virginia 25327
Tel:  (304) 345-8900
Fax:  (304) 345-8909
sthomas@kaycasto.com
 *Counsel for Emerald Grande, LLC*

3

**EXHIBIT B**

## EXHIBIT A

| [Counterparty Name] | [Contract / Lease] | [Cure Amount] |
|---|---|---|
| **Allbridge/Bulk TV** | **Lease #16797** | **$ 0.00** |
| **Frontier Communications** | **Account #304-197-0266-051314-4** | **$4,526.87** |
| **Frontier Communications** | **Account #304-965-9200-053111-4** | **$ 0.00** |
| **Frontier Communications** | **Account #304-141-0022-050614-4** | **$5,660.43** |
| **Johnson Controls** | **Contract # 78004170** | **$ 0.00** |
| **W. Va. Division of Labor** | **Cert. of Operation (Elevator) EV0002583** | **$ 0.00** |
| **Kanawha Chas Health Dept.** | **Invoice # Qual202028535** | **$ 0.00** |
| **Kanawha Chas Health Dept.** | **Invoice # Qual202027979** | **$ 0.00** |
| **W.Va Dept, of Transportation** | **Account # EMECOA03** | **$ 0.00** |

4

EXHIBIT B

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

In re:

**EMERALD GRANDE, LLC**

   **Debtor,**             **Chapter 11**

                   **Case No. 1:17-bk-00021**

<u>**CERTIFICATE OF SERVICE**</u>

   I do hereby certify that on **January 7, 2021**, I filed the ***Notice to Counterparties to Potentially Assumed Executory Contracts and Unexpired Leases*** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all participating CM/ECF parties.

   I further hereby certify that on **January 7, 2021**, I mailed a true copy of the Notice via United States Postal Service to the following parties:

Allbridge/Bulk TV       Kanawha County Health Department
6880 Perry Creek Road      108 Lee St E.
Raleigh, NC 27616        Charleston, WV 25301


West Virginia Dept. of Transportation   Johnson Controls
Building 5            5757 N. Green Bay Ave.
1900 Kanawha Blvd E       P.O. Box 591
Charleston, WV 25305      Milwaukee, WI 53201


              /s/  Steven L. Thomas
              Steven L. Thomas (WVSB # 3738)
              Kay Casto & Chaney PLLC
              P.O. Box 2031
              Charleston, West Virginia 25327
              sthomas@kaycasto.com

**EXHIBIT B**