SIGNED: October 7th, 2021
THIS ORDER HAS BEEN ENTERED ON THE DOCKET.
PLEASE SEE DOCKET FOR ENTRY DATE.

_____
Paul M. Black
UNITED STATES BANKRUPTCY JUDGE

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| IN RE: | ) |
| | ) CHAPTER 11 |
| EMERALD GRANDE, LLC | ) |
| | ) Case No. 1:17-bk-00021 |
| Debtor. | ) |

## MEMORANDUM OPINION

This matter comes before the Court on the Application of KM Hotels, LLC ("KM Hotels") for Order Allowing Administrative Expense Claim (the "Application") seeking to have the Court classify its allowed claim for attorneys' fees as an administrative expense.[1] The Debtor, Emerald Grande, LLC (the "Debtor"), objects to the Application. For the reasons stated below, the Court will overrule the Debtor's objection and grant the Application.

### Factual Background

This case concerns the failed sale and purchase of a hotel. Prior to its petition under Chapter 11, the Debtor owned a hotel operated as a La Quinta Inn & Suites in Kanawha County, West Virginia (the "Hotel"). AP ECF 70.[2] In the summer of 2016, catastrophic flooding destroyed the culvert bridge providing the only access to the Hotel. Access to the Hotel was not

---

[1] United States Bankruptcy Court Chief Judge Paul M. Black, Western District of Virginia, sitting by designation.
[2] Citations to "AP ECF" refer to the Adversary Proceeding *Emerald Grande, LLC v. KM Hotels, LLC*, No. 1:20-ap-00028 (Bankr. N.D. W. Va.).

1

restored for over a year.  AP ECF 68.  The Debtor subsequently filed a voluntary Chapter 11 petition in this Court on January 11, 2017.  ECF 1.

In the course of its bankruptcy case, the Debtor sought to sell the Hotel.  The Debtor and KM Hotels entered into a Purchase and Sale Agreement ("PSA") to transfer the Hotel for the sum of $3,600,000.00.  AP ECF 70.  Under the PSA, KM Hotels required the Debtor to deliver insurable access to the Hotel.  *See Emerald Grande, LLC v. KM Hotels, LLC (In re Emerald Grande, LLC)*, No. 1:20-ap-00028, 2021 Bankr. LEXIS 1470, at *6–7 (Bankr. N.D. W. Va. May 28, 2021).  To deliver insurable access, the title company required the Debtor's secured lender to release or subordinate its deed of trust on the property.  *Id.* at *3.  The secured lender refused to do so and the Debtor could not deliver insurable title.  *Id.*  Once the Debtor demonstrated that it could not deliver insurable title, KM Hotels terminated the PSA and requested the release of its escrow deposit.  *Id.* at *3–4.

Upon the termination of the PSA and return of the escrow deposit, the Debtor filed an adversary proceeding (the "Adversary Proceeding") against KM Hotels and Safe Harbor Title Company, LLC ("Safe Harbor") alleging breach of contract and breach of escrow agreement, respectively, on June 25, 2020.  *Id.* at *4.  This Court ruled in favor of KM Hotels and Safe Harbor, finding the Debtor had failed to deliver insurable title and therefore KM Hotels was not obligated to purchase the Hotel.  *Id.* at *10.  After the Court granted summary judgment in favor of KM Hotels, it petitioned the Court for incurred attorneys' fees and expenses in accordance with the PSA's fee-shifting provision.  AP ECF 84.  This Court issued an opinion on July 28, 2021 granting KM Hotels an allowed claim for attorneys' fees of $114,723.70 and expenses of $8,908.74.  AP ECF 95.

As the parties agree the estate is now administratively insolvent and administrative expense claimants will be the only creditors to recover on their claims, KM Hotels filed the Application seeking to have its allowed claim classified as an administrative expense under 11 U.S.C. § 503(b)(1).  ECF 960.  The Debtor filed its Response to the Application (the "Response") on September 16, 2021.  ECF 985.  The Court held a hearing on September 23, 2021 at which the parties appeared and gave oral argument.  At the conclusion of the hearing, the Court took the matter under advisement.  The matter is now fully briefed, argued, and ripe for disposition.  For the reasons set forth below, the Application will be granted.

## Jurisdiction

This Court has jurisdiction over this matter by virtue of the provisions of 28 U.S.C. §§ 1334(a) and 157(a) and the delegation made to this Court by the Amended Standing Order of Reference entered by the United States District Court for the Northern District of West Virginia on April 2, 2013.  This Court further concludes that this matter is a "core" bankruptcy proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), (B).

## Discussion

The sole issue before the Court is whether KM Hotels' allowed claim should be granted priority as an administrative expense.  KM Hotels, having fully briefed the issue, raised two principal arguments: (1) the allowed claim is an actual and necessary expense under 11 U.S.C. § 503(b)(1); and (2) the allowed claim should be considered an administrative expense under the fundamental fairness doctrine espoused in *Reading Co. v. Brown*, 391 U.S. 471 (1968).  The Court, finding that the allowed claim is an actual and necessary expense as contemplated in Section 503(b)(1), does not reach KM Hotels' *Reading Co.* argument.

Parties seeking to take part in the distribution of a bankruptcy estate are often, as here, sitting on a melting ice cube.  The debtor's assets are dwindling as its liabilities grow and at a

3

certain point the debtor will not have enough assets to satisfy some, if not all, of its claims in full. To that end, the Bankruptcy Code established a priority system of distribution in 11 U.S.C. § 507. Under Section 507, one of the highest priority claims available is that for administrative expenses allowed under Section 503(b). *See* 11 U.S.C. § 507(a)(2). Section 503 defines administrative expenses to include the actual and necessary costs and expenses of preserving the estate.

Here, the motivation behind each parties' respective position is that the Debtor is administratively insolvent. As the Debtor's bankruptcy has stretched on for over four years, the administrative claims against the estate now exceed the assets available to pay those claims. As administrative claim holders have a higher priority than general unsecured claim holders, only those creditors with administrative claims will be paid. KM Hotels, therefore, will only recover on its allowed claim if it is classified as an administrative expense. If the claim is accorded the same status as other general unsecured claims, it will fail to receive a distribution.

    A.    <u>Actual and Necessary Expense Under Section 503(b)(1)</u>

First, the Court notes that the allowed claim at issue arises entirely from the PSA for the sale of the Debtor's Hotel. Critically, the parties entered into this contract after the Debtor filed its petition.

Under Section 503(b), the party seeking an administrative expense has the burden to demonstrate that the claim was an actual and necessary expense. *In re Merry-Go-Round Enters.*, 180 F.3d 149, 157 (4th Cir. 1999). Furthermore, claims for Section 503 administrative expenses must be narrowly construed. *Id.* In the Fourth Circuit, to qualify as an actual and necessary administrative expense, "(1) the claim must arise out of a post-petition transaction between the creditor and the debtor-in-possession (or trustee) and (2) the consideration supporting the

claimant's right to payment must be supplied to and beneficial to the debtor-in-possession in the operation of the business." *Id.* (citing *In re Stewart Foods, Inc.*, 64 F.3d 141, 145 n.2 (4th Cir. 1995)).

A claim satisfies the first prong of the test if it "arose out of a postpetition transaction" between the parties. *Id.* Here, the claim arose out of the PSA, a contract signed by the parties on August 9, 2019, well after the Debtor filed its Chapter 11 petition on January 11, 2017. The claim, therefore, easily satisfies the first prong.

A claim satisfies the second prong of the test if the consideration supporting its right to payment was supplied to and beneficial to the other party. *Id.* Herein lies the heart of the parties' dispute. KM Hotels argues that its claim for attorneys' fees and expenses is a necessary cost for the bankruptcy estate because the Debtor incurred the debt from litigation based on a post-petition sale contract and that contract was entered into for the benefit of the estate. The Debtor, on the other hand, presents two arguments on this point: first that the PSA did not provide any actual benefit to the estate and second that the PSA was not entered into in the ordinary course of the Debtor's business.

As a preliminary matter, the Court notes that the test set forth in *In re Stewart Foods, Inc.* does not require that the claim be in "the ordinary course of business." The test states, in relevant part, "the consideration supporting the claimant's right to payment must be supplied to and beneficial to the debtor-in-possession *in the operation of the business*." *In re Stewart Foods, Inc.*, 64 F.3d at 145 n.2 (emphasis added). Whether a claim is in the operation of the business is not equivalent to whether it occurs in the ordinary course of business. Furthermore, while the Debtor argues that selling one of its two hotels was not in the operation of its business, the Debtor entered into the purchase and sale agreement for the purpose of reorganizing its business

to continue operating as a going concern. While the Debtor's usual business included the ownership of hotels, in this instance the sale of the Hotel was intended to help ensure the business' long-term survival. Entering into a purchase and sale agreement, even for a major asset of a debtor, can be within the operation of the business and in this case was within such operation. Finally, the Debtor relies upon *In re Res. Tech. Corp.*, 662 F.3d 472 (7th Cir. 2011), to distinguish this case from *In re Merry-Go-Round Enters.* by arguing the PSA was not entered into in the ordinary course of business and therefore no presumption that the transaction benefitted the estate could exist. This reliance is misplaced not only because *In re Res. Tech. Corp.* does not discuss such a presumption, but also because the transaction does not need to be in the ordinary course of business, merely within the operation of the business. The Debtor's arguments regarding the ordinary course of business, therefore, miss the mark.

Next, the benefit to the estate must have more than mere potential, it must be a "concrete benefit" for the estate. *See Ford Motor Credit Co. v. Dobbins*, 35 F.3d 860 (4th Cir. 1994). The Debtor argues that KM Hotels' claim for attorneys' fees from a post-petition contract cannot be beneficial to the estate, but was rather for its "unilateral benefit, after it developed a clear case of 'buyer's remorse.'" ECF 985, at 6. KM Hotels, on the other hand, argues that the contract as a whole benefitted the estate because it offered the Debtor a stalking horse bid from which the Debtor could further market the property to other potential buyers at a higher price. The Court agrees with KM Hotels. While a mere opportunity to benefit the estate is insufficient to qualify a claim as an administrative expense, *see Ford Motor Credit Co.*, 35 F.3d at 866–67 (finding the chance to market a creditor's collateral was not a benefit under Section 503(b)(1)(A)), here KM Hotels entered into a valid, court-approved contract to purchase the Hotel from the Debtor. Had the Debtor complied with the contract provisions, KM Hotels would have been obligated to

purchase the Hotel at a price nearly $1 million over its eventual sale price. There was a concrete benefit to the estate at the time the transaction was entered into and approved by the Court, and therefore KM Hotels satisfies the *In re Stewart Foods, Inc.* test's second prong.

The Court is loath to speak in absolutes. Nevertheless, were the Court to follow the Debtor's argument that separate provisions within a single contract could be individually determined to benefit or harm the estate, no contractual provision with adverse consequences against a debtor likely could ever be afforded administrative expense priority. Any fee-shifting provision or liquidated damages clause would be considered detrimental to the estate when triggered against a debtor and therefore could not satisfy the *In re Stewart Foods, Inc.* test. The Debtor, prior to entering into the PSA, had the opportunity to negotiate its terms before presenting it to the Court for approval. Indeed, in the Order approving the Debtor's motion to sell the Hotel to KM Hotels, the Court found, among other things, that "[t]he PSA represents a fair and reasonable offer to purchase the Transferred Property under the circumstances of this Chapter 11 case . . . . [and that] [a]pproval of the Sale Motion and the PSA and the consummation of the transactions contemplated therein, are in the best interest of the Debtor, its creditors, its estate and other parties in interest." Sale Order, ¶¶ Q, R, ECF 712. The Sale Order found the entire agreement to be in the best interests of the parties above, not just portions of it. Carving out the fee-shifting provision of the PSA would be contrary to the Order approving the transaction as a whole. The Court finds, therefore, the Debtor must accept all provisions of the contract *cum onere*. The Debtor cannot separate it into individual beneficial and detrimental portions based on hindsight.

As noted in COLLIER ON BANKRUPTCY, "[i]f the trustee enters into a contract or lease after entry of the order for relief and subsequently breaches the contract or lease, the other party

7

will have a claim for damages. The amount of those damages will be determined under the contract or lease, and the full amount of the damages arising from the trustee's breach will constitute an administrative expense." 4 COLLIER ON BANKRUPTCY ¶ 503.06[6][a] (Richard Levin & Henry J. Sommer, eds., 16th ed. 2021). The same principle applies to a debtor-in-possession. *See* 11 U.S.C. § 1108 (granting the trustee the power to operate the debtor's business); *see also id.* § 1107 (granting a debtor in possession "all the rights . . . and powers . . . of a trustee serving in a case under this chapter"). That is precisely the case here. The Debtor, as a debtor-in-possession, entered into a contract with KM Hotels. This Court previously determined that KM Hotels did not breach the contract. *See In re Emerald Grande, LLC*, No. 1:20-ap-00028, 2021 Bankr. LEXIS 1470 (Bankr. N.D. W. Va. May 28, 2021). Under that contract, KM Hotels, as the prevailing party in the adversary proceeding filed by the Debtor, is entitled to its reasonable attorneys' fees and expenses. KM Hotels' allowed claim for attorneys' fees and expenses, therefore, is allowed as an administrative expense.

Finally, "[o]ne of the main purposes behind granting administrative priority to certain expenses under § 503(b)(1)(A) is to provide an incentive for creditors and landlords to continue or commence doing business with a bankrupt party." *In re Merry-Go-Round Enters.*, 180 F.3d at 158. Here, were KM Hotels unable to assert administrative priority for its reasonable attorneys' fees granted by a fee-shifting provision in a post-petition contract, other creditors may be chilled from conducting business with debtors in bankruptcy for fear they will be subject to suits from debtors without recourse. The Court finds the policy behind Section 503(b)(1)(A), therefore, also supports granting KM Hotels administrative priority for its allowed claim.

    B.    *Reading Co.* Fundamental Fairness Doctrine

Next, KM Hotels argues that *Reading Co.* provides an avenue for its attorneys' fees and expenses to qualify as an administrative expense outside the confines of 11 U.S.C. §

503(b)(1)(A). *See Reading Co. v. Brown*, 391 U.S. 471 (1968).[3] As the Court finds that KM Hotels' claim is an administrative expense under Section 503(b)(1)(A), it need not address the *Reading Co.* arguments.

## Conclusion

For all of the foregoing reasons, KM Hotels' Application for its allowed claim of $114,723.70 in attorneys' fees and $8,908.74 in expenses is granted administrative expense priority status under Section 503(b)(1)(A). A separate Order will issue.

---

[3] In *Reading Co.*, a corporation with an industrial structure as its sole asset filed for Chapter 11 bankruptcy. *Reading Co.*, 391 U.S. at 473. During the pendency of its bankruptcy case, a fire destroyed the industrial structure and claimants from the accident sought to have their claims considered as administrative expenses. *Id.* at 473–74. Finding the fire claimants' claims should not be subordinated to other claims, the Supreme Court held that "actual and necessary costs" was not limited to only those costs necessary to rehabilitate the business, but could include those within the operation of the business. *Id.* at 484–85.